## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BURBRAN PIERRE, on behalf of himself and others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, TD BANK N.A., DUANE READE INC., B & H PHOTO VIDEO PRO AUDIO LLC, BLOOMBERG L.P., WHOLE FOODS MARKET GROUP, INC., TRIHOP 14TH STREET LLC, and DOES NOS. 1-10,<br><br>        Defendants. | Civil Action No.: 1:20-cv-05116<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Burbran Pierre ("Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendants City of New York, New York Police Department (collectively, the "NYPD"), TD Bank N.A. ("TD Bank"), Duane Reade Inc. ("Duane Reade"), B & H Photo Video Pro Audio LLC ("B&H"), Bloomberg L.P. ("Bloomberg"), Whole Foods Market Group, Inc. ("Whole Foods"), Trihop 14th Street LLC ("Trihop"), and Does Nos. 1-10 (collectively, the "Vendors") (together with the NYPD, "Defendants"):

### NATURE OF THE CLAIMS

1. Pursuant to its Paid Detail Program, the NYPD staffs Police Officers, Detectives, Sergeants, and Lieutenants at private businesses throughout New York City – including those owned and operated by the Vendors – to perform off-duty uniformed security work for hourly pay.

2. The NYPD and the Vendors together control the compensation and terms and conditions of employment of the officials assigned to the Vendors' places of business.

1

3.      The NYPD and the Vendors engage in a pattern and practice of failing to compensate Police Officers, Detectives, Sergeants, and Lieutenants for the work they perform through the Paid Detail Program, routinely failing to pay their wages until weeks or even months after their regularly scheduled pay days.

4.      Further, the NYPD and TD Bank engage in a pattern and practice of failing to pay Police Officers, Detectives, Sergeants, and Lieutenants at all for the work they perform through the Paid Detail Program.

5.      Additionally, the Vendors fail to provide their employees with Notices of Pay Rate and accurate wage statements, as required by law.

6.      When Plaintiff complained to the NYPD regarding Defendants' late payment and non-payment of his wages, the NYPD immediately removed him from the Paid Detail Program.

7.      Plaintiff brings claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and all other similarly situated Officers (defined *infra* ¶ 70) employed by the NYPD who participated in the Paid Detail Program at any time during the full statute of limitations period.

8.      Plaintiff also brings claims against the Vendors under the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL") and the Freelance Isn't Free Act, N.Y.C. Admin. Code §§ 20-927, *et seq.* ("FIFA") as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of himself and all other similarly situated Officers (defined *infra* ¶ 70) employed by the NYPD who participated in the Paid Detail Program at any time during the full statute of limitations period.

9.      Plaintiff also brings an individual claim against the NYPD for retaliation.

## JURISDICTION AND VENUE

10.     Pursuant to 28 U.S.C. §§ 1331, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

11.     Pursuant to 28 U.S.C § 1367, this Court has supplemental jurisdiction over Plaintiff's related claims arising under State and City law.

12.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

### A.     Plaintiff Burbran Pierre

13.     Plaintiff is a resident of the State of New York and has been employed by Defendants from July 10, 2010 through the present.

14.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

### B.     Defendant City of New York

15.     The City of New York is a municipal corporation that controls and oversees, *inter alia*, the operations of the NYPD throughout its five boroughs.

16.     At all relevant times, the City of New York controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

17.     At all relevant times, the City of New York established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task

supervision, monitoring work product, payroll applicable to Plaintiff and all persons similarly situated.

18.     At all relevant times, the City of New York maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

19.     At all relevant times, the City was an "employer" within the meaning of all relevant statutes and regulations.

**C.**     <u>**Defendant New York City Police Department**</u>

20.     The NYPD is a public administrative agency that controls and oversees the police throughout the City of New York's five boroughs.

21.     The NYPD maintains its principal office at One Police Plaza, New York, NY 10007.

22.     At all relevant times, the NYPD controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

23.     At all relevant times, the NYPD established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff and all persons similarly situated.

24.     At all relevant times, the NYPD maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

25.     At all relevant times, the NYPD was an "employer" within the meaning of all relevant statutes and regulations.

**D.**     **Defendant TD Bank N.A.**

26.     TD Bank is a domestic corporation with its principal place of business located at 1801 Route 70 East, Cherry Hill, New Jersey 08034.

27.     TD Bank participates in the NYPD's Paid Detail Program.

28.     At all relevant times, TD Bank controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

29.     At all relevant times, TD Bank established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff and all persons similarly situated.

30.     At all relevant times, TD Bank maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

31.     At all relevant times, TD Bank was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**E.**     **Defendant Duane Reade Inc.**

32.     Duane Reade is a domestic corporation with its principal place of business located at 108 Wilmot Road, Deerfield, Illinois 60015.

33.     Duane Reade participates in the NYPD's Paid Detail Program.

34.     At all relevant times, Duane Reade controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

35.     At all relevant times, Duane Reade established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated,

including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff and all persons similarly situated.

36.     At all relevant times, Duane Reade maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

37.     At all relevant times, Duane Reade was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**F.     Defendant B & H Photo Video Pro Audio LLC**

38.     B&H is a domestic limited liability company located at 420 9th Avenue, New York, New York 10001.

39.     B&H participates in the NYPD's Paid Detail Program.

40.     At all relevant times, B&H controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

41.     At all relevant times, B&H established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff and all persons similarly situated.

42.     At all relevant times, B&H maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

43.     At all relevant times, B&H was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**G.     Defendant Bloomberg L.P.**

44.     Bloomberg is a foreign limited partnership with its principal place of business located at 731 Lexington Avenue, New York, New York 10022.

45.     Bloomberg participates in the NYPD's Paid Detail Program.

46.     At all relevant times, Bloomberg controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

47.     At all relevant times, Bloomberg established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff and all persons similarly situated.

48.     At all relevant times, Bloomberg maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

49.     At all relevant times, Bloomberg was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**H.     Defendant Whole Foods Market Group, Inc.**

50.     Whole Foods is a foreign corporation with its principal place of business located at 550 Bowie Street, Austin, Texas 78703.

51.     Whole Foods participates in the NYPD's Paid Detail Program.

52.     At all relevant times, Whole Foods controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

53.     At all relevant times, Whole Foods established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff and all persons similarly situated.

54.     At all relevant times, Whole Foods maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

55.     At all relevant times, Whole Foods was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**I.**     **Defendant Trihop 14th Street LLC**

56.     Trihop is a limited liability company located at 235 East 14th Street, New York, New York 10003.

57.     Trihop participates in the NYPD's Paid Detail Program.

58.     At all relevant times, Trihop controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

59.     At all relevant times, Trihop established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff and all persons similarly situated.

60.     At all relevant times, Trihop maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

61.     At all relevant times, Trihop was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**J.**     **Defendants Does Nos. 1 through 10**

62.     Plaintiff does not know the true names and capacities, whether individual, partners, or corporate, of Does Nos. 1 through 10, and for that reason sues Does Nos. 1 through 10 under fictitious names.

63.     Upon information and belief, Does Nos. 1 through 10 participate in the NYPD's Paid Detail Program.

64.     Upon information and belief, at all relevant times, Does Nos. 1 through 10 controlled and directed the terms of employment and compensation of Plaintiff and all persons similarly situated.

65.     Upon information and belief, at all relevant times, Does Nos. 1 through 10 established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff and all persons similarly situated.

66.     Upon information and belief, at all relevant times, Does Nos. 1 through 10 maintained and exercised authority to hire, fire, discipline, and promote Plaintiff and all persons similarly situated.

67.     Upon information and belief, at all relevant times, Does Nos. 1 through 10 were "employers" and/or "hiring parties" within the meaning of all relevant statutes and regulations.

## FACTS

**A.     Background**

68.     In or around the Spring of 1998, the NYPD created the Paid Detail Program ("PDP") to allows employees of the NYPD to perform off-duty uniformed security work within New York City.

69.     The primary purpose of the PDP is to provide a highly visible police presence at participating businesses.

70.     NYPD personnel who hold any of the following titles may participate in the PDP: (i) Police Officer; (ii) Detective; (iii) Sergeant; or (iv) Lieutenant (collectively, "Officers").

71.   The PDP is the only authorized program for businesses to employ uniformed off-duty Officers.

72.   The PDP allows, with limited exceptions, any event planner, corporation, or interested organization approved by the NYPD to employ Officers part-time to provide uniformed security work.

73.   Officers are assigned to work at various businesses through the PDP, including, *inter alia*: (i) retail chains; (ii) department stores; (iii) supermarkets; (iv) houses of worship; (v) sports complexes; (vi) banks; and (vii) office buildings.

74.   The NYPD and the various Vendors work in concert to control all aspects of Officers' employment through the PDP.

**B.   <u>NYPD's Administration of the PDP and Employment of Officers</u>**

   **i.   Approval and Denial of Businesses**

75.   The NYPD must approve a business before it is permitted to employ Officers through the PDP.

76.   The NYPD sets the parameters for business participation in the PDP.

77.   The NYPD allows, with limited exceptions, any event planner, corporation, or interested organization to qualify for the PDP, subject to the NYPD's approval.

78.   The NYPD excludes, *inter alia*, government and quasi-governmental entities, security companies, and personal protection or bodyguard companies from participating in the PDP.

79.   To qualify, businesses are required to provide various information requested by the NYPD.

80.   The NYPD also performs a general background and credit check of each business.

81.     After the NYPD reviews a business's responses, background information, and credit information, it requires the business to sign a "Participation Agreement" and submit a certificate of insurance.

82.     Finally, the Commissioner of the NYPD reviews the signed Participation Agreement and certificate of insurance before granting or denying final approval for the business to participate in the PDP.

**ii.     Approval or Denial of NYPD Employees to Qualify as Officers**

83.     The NYPD also sets the parameters for Officers to participate in the PDP.

84.     To qualify, an Officer must meet various criteria, including, *inter alia*, possessing greater than one year of service in the NYPD and maintaining full duty status throughout the duration of the Officer's participation in the PDP.

85.     The NYPD excludes employees who are considered chronically sick, on performance monitoring, or in possession of "position limitations."

86.     Further, the NYPD limits participation in the PDP to personnel holding specific titles and ranks.  *See supra* ¶ 70.

87.     NYPD employees must obtain approval from their commanders and submit a written application, as well as tax documentation, to be considered for participation in the PDP.

88.     Further, the NYPD's Paid Detail Unit reviews each applicant's work record before approving him or her to participate in the PDP.

89.     The NYPD maintains authority to unilaterally remove an Officer from the PDP if he or she is promoted or transferred to a position that disqualifies him or her, or is placed on performance monitoring.

11

### iii.     Direction and Control of PDP Details

90.     The NYPD maintains direction, control, and supervision of the assignment of Officers to PDP details.

91.     Further, the NYPD maintains and operates an online portal through which participating businesses may schedule Officers to perform off-duty uniformed security work.

92.     The NYPD controls when businesses may schedule Officers for details and requires that details last from four to 12 hours.

93.     The NYPD evaluates each requested detail and, based on its assessment of safety and security concerns, determines the minimum number of Officers necessary for assignment, as well as the number of Officers required to supervise.

94.     The NYPD also controls and determines when Officers may accept details and the number of hours per month Officers may work the same.

95.     The NYPD limits Officers with more junior ranks, such as Police Officer or Detective, to a maximum of 80 hours of PDP work per month.

96.     The NYPD limits Officers with the more senior ranks, such Sergeant or Lieutenant, to a maximum of 30 hours of PDP work per month.

97.     The NYPD prohibits Officers from working PDP assignments within three hours of the start of their regularly scheduled non-PDP tours.

98.     Similarly, the NYPD prohibits Officers from working PDP assignments within one hour of the end of their regularly scheduled non-PDP tours.

99.     The NYPD requires Officers to complete Paid Detail Cards for each PDP detail they work.  *See, e.g.,* Exhibit A.

100.     The NYPD prohibits Officers from trading PDP details with one another.

101.   Per its policies, the NYPD suspends Officers who request PDP details on behalf of other Officers or perform PDP details originally assigned to another Officer without the NYPD's prior authorization.

102.   The NYPD also requires that Officers provide documentation to their NYPD supervisors in the event they have to cancel a previously scheduled PDP detail.

103.   Officers who fail to provide such documentation risk being deemed ineligible for future PDP assignments.

104.   The NYPD prohibits Officers from working for participating businesses, including the Vendors, outside of the PDP.

105.   Officers who schedule details directly with a participating business are disciplined and deemed ineligible for future PDP assignments.

**iv.   Control Over Officers' Uniforms and Physical Appearance on PDP Details**

106.   The NYPD maintains control and direction over the uniforms and physical appearance of Officers on PDP details.

107.   The NYPD establishes and enforces a dress code for all Officers on PDP details.

108.   The NYPD mandates that Officers wear NYPD-approved clothing on PDP details, including full uniforms, vests, and eight-point caps.

109.   The NYPD prohibits Officers from wearing, *inter alia*, baseball caps, raid jackets, and other non-uniform apparel.

110.   The NYPD requires Officers to conform to the same grooming and appearance standards applicable to Officers on regularly scheduled non-PDP tours.

111.   The NYPD directs Officers to bring NYPD-issued radios, batons, and activity logs on PDP assignments.

112.    The NYPD subjects Officers to inspection by NYPD supervisors to ensure compliance with PDP uniform and physical appearance requirements.

**v.    Control Over Officers' Work During PDP Details**

113.    The NYPD maintains direction, control, and supervision of the work performed by Officers during PDP details.

114.    Upon arrival at a participating business, the NYPD commands Officers to report to the business's representative or to the ranking Officer supervising the detail.

115.    Additionally, the NYPD directs Officers to sign in on a Paid Detail Attendance Sheet when they arrive.

116.    The NYPD cautions Officers that they are subject at all times to NYPD rules and regulations while working on PDP details.

117.    The NYPD assigns high-ranking officials, such as Sergeants, Lieutenants, and Captains, to perform daily rounds of PDP details to monitor Officers' work.

118.    The NYPD mandates that Officers report to the NYPD any arrests or Officer injuries that occur on PDP details.

119.    At the conclusion of a PDP detail, the NYPD directs Officers to sign out on a Paid Detail Attendance Sheet and present a Paid Detail Card to the participating business's representative or the ranking Officer for signature.

120.    The NYPD instructs participating businesses to report any Officer who breaches NYPD standards.

121.    The NYPD also instructs participating businesses to report any Officer who breaches the business's own internal policies.

122.     The NYPD disciplines Officers who breach NYPD standards or a business's policies on a PDP detail by, *inter alia*: (i) removing the given Officer from the detail; (ii) banning the Officer from future details with a specific business; (iii) suspending an Officer's PDP eligibility; or (iv) expelling an Officer from participation in the PDP completely.

**vi.    Control Over Officers' Wages**

123.     The NYPD directs and controls the manner in which Officers are paid through the PDP.

124.     The NYPD establishes uniform hourly rates based on each Officer's rank.  *See* Exhibit B (Paid Detail Guidelines); Exhibit C (Paid Details Pamphlet).

125.     The NYPD has set an hourly rate of $41.00 for Officers with the rank of Police Officer or Detective.

126.     The NYPD also charges participating businesses an administrative fee of $4.10 for each hour of PDP work performed by a Police Officer or Detective.

127.     The NYPD has set an hourly rate of $51.00 for Officers with the rank of Sergeant.

128.     The NYPD also charges participating businesses an administrative fee of $5.10 for each hour of PDP work performed by a Sergeant.

129.     The NYPD has set an hourly rate of $57.00 for Officers with the rank of Lieutenant.

130.     The NYPD also charges participating businesses an administrative fee of $5.70 for each hour of PDP work performed by a Lieutenant.

131.     The NYPD directs and controls the employment status of Officers, mandating that Officers are classified (incorrectly) as independent contractors for PDP details.

132.     The NYPD requires payment to Officers on an IRS Form 1099, as opposed to an IRS Form W-2.

133.     The NYPD directs Officers to list 1 Police Plaza, New York, New York 10038 (rather than the Officers' home addresses) when completing tax forms for PDP details.

134.     The NYPD administers payment to Officers through the NYPD's Paid Detail Unit.

135.     The NYPD does not permit participating businesses to pay Officers directly.

**C.**     **Businesses' Participation in the PDP and Employment of Officers**

136.     Once a business such as one of the Vendors obtains approval to employ Officers, it coordinates with the NYPD to assess how many Officers the business needs to staff a particular PDP detail.

137.     Businesses, including the Vendors, direct and control the dates Officers work on PDP details.

138.     Businesses post solicitations on the PDP portal for Officers to view and ultimately accept.

139.     Participating businesses, including the Vendors, each agree to pay Officers at the uniform hourly rates set forth in the PDP.

140.     Once an Officer is hired, participating businesses direct and control the Officer throughout the PDP detail.

141.     Businesses direct Officers to the exact location where they are to work throughout the PDP detail.

142.     Participating businesses, including the Vendors, determine the meal and break policies for Officers and dictate the circumstances under which an Officer may intervene, such as by detaining a customer suspected of theft.

143.     Participating businesses also require Officers to report their work in Activity Logs at pre-determined intervals.

144.    For example, TD Bank requires Officers to make entries in their activity log every 30 minutes throughout their PDP detail.

145.    Participating businesses also subject Officers to discipline and report Officers to the NYPD for failing to follow the business's policies.

146.    Participating businesses enforce NYPD standards in the same manner, by reporting Officers for failing to comply with the same.

147.    Participating businesses control the staffing of Officers insofar as they may decline an Officer who accepts a detail through the PDP portal.

148.    Participating businesses possess the power to extend an Officer's PDP detail past its schedule end time.

149.    Participating businesses direct and control when Officers are paid for work performed on PDP details.

**D.    Failure to Timely Pay Wages**

150.    Defendants engage in a pattern and practice of delaying payment of wages to Plaintiff and all other Officers beyond their regularly scheduled paydays.

151.    Plaintiff and all other Officers' pay periods cover a 14-day time frame, with their regularly scheduled pay day being every other Friday.

152.    However, Defendants routinely fail to pay Plaintiff and all other Officers for PDP details for weeks, and even months, after Officers complete PDP details.

**E.    Failure to Pay Minimum and All Earned Wages**

153.    Similarly, the NYPD and TD Bank each engage in a pattern and practice of denying Plaintiff and all other Officers minimum wages and all earned wages at their regular rates of pay.

154.     For PDP details, the NYPD and TD Bank agree to pay Plaintiff and all other Officers at established hourly rates based on the Officer's respective NYPD rank.  *See* Exhibit B; Exhibit C.

155.     The established hourly rates are communicated by the NYPD and TD Bank on the PDP portal where Plaintiff and all other Officers accept PDP details.

156.     However, the NYPD and TD Bank sometimes fail to pay any wages at all to Plaintiff and other Officers for completed PDP details.

157.     Upon information and belief, the other Vendors engage in a similar pattern and practice.

**F.     Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

158.     The NYLL requires that employers, including the Vendors, provide employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer [ ];  the name of the employer;  any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer;  plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

159.     Throughout the statutory period, the Vendors have never provided Plaintiff or any other Officer with Notices of Pay Rate.

160.     The NYLL also requires that employers, including the Vendors, issue or provide employees with accurate wage statements with each payment of wages.

161.    The Vendors never furnished Plaintiff or any of the other Officers with accurate wage statements during the statutory period.

**G.**    **Plaintiff Burbran Pierre**

**i.**    **Background**

162.    Plaintiff was hired by the NYPD as a Police Officer on or around July 10, 2010.

163.    In or around February 2012, Plaintiff applied to participate in the PDP.

164.    On or around March 30, 2012, Plaintiff worked his first PDP detail at TD Bank.

165.    In total, Plaintiff has worked approximately 63 PDP details for Defendants at a number of different businesses, including each of the Vendors.

**ii.**    **Wage Violations**

166.    Defendants failed to properly pay Plaintiff for his hours worked on PDP details in several ways.

167.    Defendants failed to timely pay Plaintiff for his hours worked on PDP details.

168.    Throughout the statutory period, Plaintiff was paid his wages in pay periods spanning a 14-day timeframe, with his regularly scheduled pay day being every other Friday.

169.    However, Defendants routinely failed to pay Plaintiff for his PDP tours on his regularly scheduled pay day.

170.    For example, on May 22, 2018, Plaintiff completed a PDP detail at B&H for a total of 11.5 hours.  *See* Exhibit D (Record of Plaintiff's Completed PDP details).

171.    The NYPD and B&H did not pay Plaintiff any compensation at all for the hours Plaintiff worked at B&H until approximately June 30, 2018.

172.    Indeed, Plaintiff was not paid for approximately 6 weeks after the completion of the PDP detail at B&H.

173.    On January 19, 2019, Plaintiff completed a PDP detail at Trihop for a total of 5.5 hours.  *See id.*

174.    The NYPD and Trihop did not pay Plaintiff any compensation at all for the hours Plaintiff worked at Trihop until approximately February 9, 2019.

175.    Indeed, Plaintiff was not paid for 3 weeks after the completion of the PDP detail at Trihop.

176.    On January 31, 2019, Plaintiff completed a PDP detail at Whole Foods for a total of approximately 9 hours.  *See id.*

177.    The NYPD and Whole Foods did not pay Plaintiff any compensation at all for the hours Plaintiff worked at Whole Foods until June 18, 2019.

178.    Indeed, Plaintiff was not paid for approximately 20 weeks after the completion of the PDP detail at Whole Foods.

179.    On September 25, 2019, Plaintiff completed a PDP detail at Bloomberg for a total of 8 hours.  *See id.*

180.    The NYPD and Bloomberg did not pay Plaintiff any compensation at all for the hours Plaintiff worked at Bloomberg until December 27, 2019.

181.    Indeed, Plaintiff was not paid for approximately 13 weeks after the completion of the PDP detail at Bloomberg.

182.    In October 2019, Plaintiff completed five PDP details at TD Bank for a total of 26.5 hours.  *See id.*

183.    Plaintiff completed his last PDP detail at TD Bank on October 11, 2019.

184.    The NYPD and TD Bank did not pay Plaintiff any compensation at all for these hours worked until January 2, 2020.  *See* Exhibit E.

185.    Indeed, Plaintiff was not paid for approximately 12 weeks after completing the final detail at TD Bank.

186.    Plaintiff completed two PDP details at Duane Reade on January 20, 2020 and January 22, 2020, for a total of 16 hours.  *See* Exhibit D.

187.    The NYPD and Duane Reade did not pay Plaintiff any compensation at all for these hours worked until March 5, 2020.  *See* Exhibit F.

188.    Indeed, Plaintiff was not paid for six weeks after the completion of the January 22, 2020 PDP detail.

189.    Several other Officers have confirmed to Plaintiff that Defendants also failed to timely pay their wages.

190.    The NYPD and TD Bank also paid Plaintiff below the federal and State minimum wage rates and below his regular rate of pay for all hours worked.

191.    For example, on September 28, 2019, Plaintiff worked a PDP detail at TD Bank for five-and-a-half (5.5) hours.  *See* Exhibit D.

192.    To this day, the NYPD and TD Bank have failed to pay Plaintiff any compensation at all for the hours Plaintiff worked on September 28, 2019 PDP detail.

193.    Several other Officers who have worked PDP details at TD Bank and other Vendors have confirmed to Plaintiff that these Vendors also failed to timely pay their wages.

194.    Additionally, the Vendors for whom Plaintiff worked did not provide Plaintiff with accurate wage statements for any of the PDP details that he completed.

195.    Nor did any of the Vendors provide Plaintiff with a Notice of Pay Rate.

### iii.    Retaliation

196.    On January 2, 2020, Plaintiff finally received compensation for the five PDP details he worked at TD Bank in October 2019.

197.    However, TD Bank and the NYPD had still failed to pay Plaintiff for the PDP detail that Plaintiff worked on September 28, 2019.

198.    On or around March 6, 2020, Plaintiff worked a PDP detail at Duane Reade.

199.    While performing his duties, Captain Carlos Fernandez of the NYPD arrived at Duane Reade to perform an inspection of Officers working the PDP detail at Duane Reade.

200.    Following the inspection, Plaintiff complained to Captain Fernandez that he had not been receiving his wage for TD Bank PDP details on time and, in some instances, not been paid at all for his PDP work.

201.    Captain Fernandez instructed Plaintiff to call the Sergeant in charge of the TD Bank PDP detail, Sergeant Angelos Marketos.

202.    Plaintiff called Sergeant Marketos, left a voice mail, and later emailed Sergeant Marketos to complain in writing about the late payment and non-payment of his wages.

203.    Sergeant Marketos called Plaintiff back later that day, angry that Plaintiff had complained to Captain Fernandez.

204.    Sergeant Marketos suspended Plaintiff for 30 days for complaining to Captain Fernandez about the late payment and non-payment of his wages.

205.    Shortly thereafter, Plaintiff discovered that the NYPD had removed his access to the PDP portal, thereby preventing him from being assigned to future PDP details.

206.    To this day, Plaintiff remains unable to access the PDP portal or participate in the PDP.

207.    Among other PDP details for which Defendants owe Plaintiff compensation, Plaintiff still has yet to receive payment for the PDP Detail that he worked for NYPD and TD Bank on September 28, 2019.

## FLSA COLLECTIVE ACTION ALLEGATIONS

208.    Plaintiff brings his FLSA claims as a collective action on behalf of himself and all other similarly situated persons who have been employed by the NYPD and participated in the PDP at any time during the full statute of limitations period (the "FLSA Collective").

209.    At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' practices of: (i) failing to compensate Plaintiff and the FLSA Collective at the federal minimum wage for all hours worked in a workweek; and (ii) failing and refusing to timely pay all wages owed.

210.    At all relevant times, Defendants have been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that those duties are not exempt from the provisions of the FLSA.

211.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

212.    As a result of their unlawful conduct, Defendants are liable to Plaintiff and the FLSA Collective for the full amount of their unpaid and late wages, with interest, plus an additional equal amount as liquidated damages, plus reasonable attorneys' fees and costs incurred by Plaintiff and the FLSA Collective.

213.    While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 4,500 members of the FLSA Collective.

214.    Plaintiff is currently unaware of the identities of the individual members of the FLSA Collective.

215.    Accordingly, the Court should require Defendants to provide Plaintiff with a list of all members of the proposed FLSA Collective, along with their last known home addresses, telephone numbers, and email addresses, so that Plaintiff may provide the members of the FLSA Collective with notice of this action and an opportunity to make an informed decision regarding whether to participate in the same.

## CLASS ACTION ALLEGATIONS

216.    Plaintiff brings this action, in part, as a class action under the NYLL and FIFA, as well as all applicable regulations thereunder.

**A.    Class Definition**

217.    Plaintiff seeks to maintain claims, pursuant to FRCP 23, on behalf of himself and a class of all other Officers who worked for the NYPD and participated in the PDP at any time during the full statute of limitations period (the "Class").

218.    Plaintiff alleges, on behalf of himself and the Class, that the Vendors violated the NYLL and FIFA by, *inter alia*: (i) failing to compensate Plaintiff and the Class at the State minimum wage for all hours worked; (ii) failing to compensate Plaintiff and the Class at their established regular rates of pay and in accordance with their agreed terms of employment; (iii) failing to timely pay all wages owed; (iv) failing to provide Plaintiff and the Class with Notices of Pay Rate; and (v) failing to furnish accurate wage statements to Plaintiff and the Class.

219.    Plaintiff and the Class have standing to seek such relief because of the adverse effects that Vendors' wage practices have had on them individually and as a group.

220.    The wage practices described herein are part of Vendors' normal course of conduct.

221.    Pursuant to FRCP 23, Plaintiff's NYLL and FIFA claims may be pursued by all similarly situated persons who do not opt out of the Class.

**B.    Numerosity and Impracticability of Joinder**

222.    The members of the Class are so numerous that joinder is impracticable.

223.    While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 6,750 members of the Class.

224.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C.    Common Questions of Law and Fact**

225.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and predominate over any questions only affecting the members of the Class individually.

226.    Indeed, there are few, if any, purely individual issues in this action.

227.    The questions of law and fact that are common to Plaintiff and the Class include, without limitation:

(a)    Whether the Vendors failed to pay Plaintiff and the Class all minimum wages owed;

(b)    Whether the Vendors failed to pay Plaintiff and the Class all wages owed at their regular rates of pay and in accordance with their agreed terms of employment;

(c)     Whether the Vendors failed to timely pay Plaintiff and the Class their wages;

(d)     Whether the Vendors failed to provide Plaintiff and the Class with Notices of Pay Rate;

(e)     Whether the Vendors failed to furnish accurate wage statements to Plaintiff and the Class; and

(f)     Whether Plaintiff and the Class are entitled to liquidated damages and injunctive relief.

228.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**D.     Typicality of Claims and Relief Sought**

229.    Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent.

230.    Plaintiff and the Class work, or have worked, for the Vendors and are, or were, subject to the same compensation policies and practices.

231.    The wage practices suffered by Plaintiff, and the damages resulting therefrom, are typical of the Vendors' treatment of Officers assigned to them through the PDP, generally, and of the Class specifically.

232.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E.     Adequacy of Representation**

233.    Plaintiff will fairly and adequately protect the interests of the Class because his interests are coextensive and aligned with those of the Class.

234.    Plaintiff has no interests adverse to the Class he seeks to represent.

235.     Plaintiff is willing and able to represent the Class as fairly and vigorously as he pursues his similar individual claims.

236.     Plaintiff has retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

237.     The combined interests, experience, and resources of Plaintiff and his counsel to competently litigate the individual and Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**F.     Requirements of Rule 23(b)(1)**

238.     Without certification of the Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

239.     Accordingly, certification of the Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the Class, and the Vendors.

240.     By filing this Complaint, Plaintiff preserves the rights of the members of the Class with respect to the statute of limitations on their claims.

241.     Therefore, not certifying the Class would substantially impair and/or impede the ability of the members thereof to protect their interests.

**G.     Requirements of Rule 23(b)(2)**

242.     The Vendors acted on grounds, described herein, generally applicable to Plaintiff and the Class by denying Plaintiff and the Class minimum wages, failing to pay them in accordance with their agreed terms of employment, failing to pay wages on time, failing to pay wages at their

regular rates of pay, and failing to provide Notices of Pay Rate and furnish accurate wage statements.

243.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff and the Class as a whole.

244.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, minimum wages, wages paid at their regular rates of pay, timely payment of wages, Notices of Pay Rate and accurate wage statements.

245.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiff and the Class's entitlement to monetary and non-monetary remedies for such wage violations.

246.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H.**    **Requirements of Rule 23(b)(3)**

247.    The common issues of fact and law affecting Plaintiff's claims and those of the Class – including, without limitation, the common issues identified above – predominate over issues affecting only individual claims.

248.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and those of the Class.

249.    The cost of proving the Vendors' pattern and practice of denying minimum and other wages makes it impractical for the members of the Class to pursue their claims individually.

250.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of the members of the Class (they must have worked

for the NYPD and participated in the PDP during the statutory period), as well as the common questions of law and fact described herein.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FLSA: LATE PAYMENT OF WAGES
*(On Behalf of Plaintiff and the FLSA Collective against all Defendants)*

251.   Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

252.   During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and all applicable regulations thereunder.

253.   The FLSA requires covered employers, including Defendants, to pay Officers all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

254.   Plaintiff and the FLSA Collective were not exempt from the requirement that Defendants timely pay them their wages.

255.   During the statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

256.   As a result of Defendants' failure to pay Plaintiff and the FLSA Collective all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendants have violated the FLSA and/or applicable regulations thereunder.

257.   Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

258.     Defendants' violations of the FLSA have significantly harmed Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE
### *(On Behalf of Plaintiff and the FLSA Collective against the NYPD and TD Bank)*

259.     Plaintiff, on behalf of himself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

260.     During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

261.     The FLSA requires covered employers, including the NYPD and TD Bank, to compensate employees at a rate not less than the federal minimum wage for all hours worked in a workweek.

262.     Plaintiff and the FLSA Collective were not exempt from the requirement that their employer pay them minimum wages under the FLSA.

263.     During the statute of limitations period, the NYPD and TD Bank each have engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek.

264.     As a result of the NYPD and TD Bank's failures to compensate Plaintiff and the FLSA Collective at a rate not less than the federal minimum wage for all hours worked in a workweek, the NYPD and TD Bank have violated the FLSA and/or applicable regulations thereunder.

265.    The NYPD and TD Bank have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA.

266.    The NYPD and TD Bank's violations of the FLSA have significantly damaged Plaintiff and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES
*(On Behalf of Plaintiff and the Class against the Vendors)*

267.    Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

268.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

269.    The NYLL requires covered employers, including the Vendors, to pay Plaintiff and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

270.    Plaintiff and the Class were not exempt from the requirement that the Vendors timely pay them their wages.

271.    Throughout the statute of limitations period, the Vendors have engaged in a policy and practice of failing to pay Plaintiff and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

272.     As a result of the Vendors' failure to pay Plaintiff and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, Defendants have violated the NYLL and/or applicable regulations thereunder.

273.     The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

274.     The Vendors' violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE**
*(On Behalf of Plaintiff and the Class against TD Bank)*

275.     Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

276.     During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

277.     The NYLL requires covered employers, including TD Bank, to compensate Officers at a rate not less than the applicable State minimum wage for all hours worked in a workweek.

278.     Plaintiff and the Class were not exempt from the requirement that TD Bank pay them minimum wages under the NYLL.

279.     During the statute of limitations period, TD Bank has engaged in a policy and practice of failing to compensate Plaintiff and the Class at a rate not less than the applicable State minimum wage for all hours worked in a workweek.

280.    As a result of the TD Bank's failure to compensate Plaintiff and the Class at a rate not less than the applicable State minimum wage for all hours worked in a workweek, TD Bank has violated the NYLL and/or applicable regulations thereunder.

281.    TD Bank has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

282.    TD Bank's violation of the NYLL has significantly damaged Plaintiff and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED**
*(On Behalf of Plaintiff and the Class against TD Bank)*

283.    Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

284.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

285.    The NYLL requires covered employers, including TD Bank, to compensate Officers at their established regular rates of pay for all hours worked.

286.    Plaintiff and the Class were not exempt from the requirement that TD Bank pay them at their established regular rates of pay for all hours worked under the NYLL.

287.    During the statute of limitations period, TD Bank has engaged in a common policy and practice of failing to compensate Plaintiff and the Class at their established regular rates of pay for all hours worked in a workweek.

288.    As a result of TD Bank's failures to compensate Plaintiff and the Class at their established regular rates of pay for all hours worked in a workweek, TD Bank has violated the

NYLL and/or applicable regulations thereunder.

289.    TD Bank has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

290.    TD Bank's violation of the NYLL has significantly damaged Plaintiff and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PROVIDE NOTICES OF PAY RATE**
***(On Behalf of Plaintiff and the Class against the Vendors)***

291.    Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

292.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

293.    The NYLL requires covered employers, including the Vendors, to provide employees, "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

294.    Plaintiff and the Class were not exempt from the requirement that the Vendors provide them with Notices of Pay Rate.

295.     During the statute of limitations period, the Vendors have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiff and the Class.

296.     As a result of the Vendors' failure to provide Notices of Pay Rate to Plaintiff and the Class, Vendors have violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 195.

297.     The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiff and the Class in accordance with the NYLL.

298.     The Vendors' violations of the NYLL entitle Plaintiff and each member of the Class to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS**
***(On Behalf of Plaintiff and the Class against the Vendors)***

299.     Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

300.     During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

301.     The NYLL requires covered employers, including the Vendors, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

302.    Plaintiff and the Class were not exempt from the requirement that the Vendors furnish them proper wage statements.

303.    During the statute of limitations period, the Vendors have engaged in a policy and practice of unlawfully failing to provide accurate wage statements to Plaintiff and the Class.

304.    As a result of the Vendors' failure to furnish accurate wage statements to Plaintiff and the Class, the Vendors have violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 195.

305.    The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiff and the Class in accordance with the NYLL.

306.    The Vendors' violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE FIFA: LATE PAYMENT OF COMPENSATION**
***(On Behalf of Plaintiff and the Class against the Vendors)***
***(Brought in the Alternative to Plaintiff and the Class' Claims under the FLSA and NYLL)***

307.    Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

308.    In the alternative to their claims brought under the FLSA and NYLL, Plaintiff and the Class allege violations of the FIFA, N.Y.C. Admin. Code §§ 20-927, *et seq.*, and all applicable regulations thereunder.

309.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the FIFA and all applicable regulations thereunder.

310.    The FIFA requires hiring parties, including the Vendors, to pay freelance workers all contracted compensation on or before the date such contracted compensation is due under the terms of a contract or, if the contract does not specify when the contracted compensation is due or the mechanism by which such due date shall be determined, no later than 30 days after completion of the freelance worker's services under the contract.

311.    Plaintiff and the Class were not exempt from the requirement that the Vendors timely pay them their contracted compensation under the FIFA.

312.    During the statute of limitations period, the Vendors have engaged in a policy and practice of hiring Plaintiff and the Class to complete services without specifying when contracted compensation is due or the mechanism by which such due date shall be determined.

313.    As a result, Plaintiff and the Class are owed all contracted compensation within 30 days of the completion of services by Plaintiff and the Class.

314.    Throughout the full statute of limitations periods, the Vendors have engaged in a policy and practice of failing to pay Plaintiff and the Class all contracted compensation within 30 days of the completion of services performed by Plaintiff and the Class under their contracts.

315.    As a result of the Vendors' failure to pay Plaintiff and the Class all contracted compensation within 30 days of completion of services, the Vendors have violated the FIFA and/or applicable regulations thereunder.

316.    The Vendors have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the FIFA.

317.    The Vendors' violations of the FIFA have significantly damaged Plaintiff and the Class and entitle them to recover the total amount of their unpaid compensation, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**VIOLATIONS OF THE FIFA: FAILURE TO PAY ALL COMPENSATION**
(*On Behalf of Plaintiff and the Class against TD Bank*)
(*Brought in the Alternative to Plaintiff and the Class' Claims under the FLSA and NYLL*)

318.    Plaintiff, on behalf of himself and the Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

319.    In the alternative to their claims brought under the FLSA and NYLL, Plaintiff and the Class allege violations of the FIFA, N.Y.C. Admin. Code §§ 20-927, *et seq.*, and all applicable regulations thereunder.

320.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the FIFA and all applicable regulations thereunder.

321.    The FIFA requires hiring parties, including TD Bank, to pay freelance workers all contracted compensation on or before the date such contracted compensation is due under the terms of a contract or, if the contract does not specify when the contracted compensation is due or the mechanism by which such due date shall be determined, no later than 30 days after completion of the freelance worker's services under the contract.

322.    Plaintiff and the Class were not exempt from the requirement that TD Bank pay them their contracted compensation under the FIFA, and they are entitled to be paid all contracted compensation for all services completed for TD Bank.

323.    During the statute of limitations period, TD Bank has engaged in a policy and practice of hiring Plaintiff and the Class to complete services without specifying when contracted compensation is due or the mechanism by which such due date shall be determined.

324.    As a result, TD Bank owes all contracted compensation to Plaintiff and the Class within 30 days of the completion of services by Plaintiff and the Class.

325.    During the statute of limitations periods, TD Bank has engaged in a policy and practice of failing to pay Plaintiff and the Class all contracted compensation for the completion of services by Plaintiff and the Class.

326.    As a result of TD Bank's failure to pay Plaintiff and the Class all contracted compensation for completion of services by Plaintiff and the Class, TD Bank has violated the FIFA and/or applicable regulations thereunder.

327.    TD Bank has acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the FIFA.

328.    TD Bank's violation of the FIFA have significantly damaged Plaintiff and the Class and entitle them to recover the total amount of their unpaid compensation, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA: RETALIATION**
*(On Behalf of Plaintiff Individually against the NYPD)*

329.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

330.    During the full statutory period, Plaintiff was protected by the provisions of the FLSA, 29 U.S.C §§ 201, *et seq.*, and applicable regulations thereunder.

331.    As set forth above, Plaintiff complained to the NYPD regarding Defendants' violations of the FLSA, including, *inter alia,* failing to timely pay wages.

332.    The NYPD retaliated against Plaintiff for his protected activity by, *inter alia*, terminating his eligibility to participate in the PDP immediately following his complaint, withholding earned wages, and refusing to employ Plaintiff for PDP details.

333.    As a direct and proximate result of the NYPD's unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages.

334.    Plaintiff is further entitled to an award of liquidated damages, prejudgment interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective, and the Class, respectfully requests that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.    Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiff with a list of all members of the Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.      Designate Plaintiff as the representative of the Class, and his counsel of record as class counsel;

F.      Determine the damages sustained by Plaintiff and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiff and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.      Determine the damages sustained by Plaintiff and the Class as a result of the Vendors' violations of the NYLL and FIFA, and award those damages against the Vendors and in favor of Plaintiff and the Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Determine the damages sustained by Plaintiff as a result of the NYPD's retaliation following Plaintiff's protected complaints in violation of the FLSA, and award those damages against the NYPD and in favor of Plaintiff, plus such pre-judgement and post-judgment interest as may be allowed by law;

I.      Award Plaintiff, the FLSA Collective, and/or the Class an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

J.      Award Plaintiff, the FLSA Collective, and/or the Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

K.      Grant Plaintiff, the FLSA Collective, and/or the Class such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, the FLSA Collective and the Class, hereby demand a trial

by jury on all issues of fact and damages.

Dated:  July 3, 2020                    **FARUQI & FARUQI, LLP**
       New York, New York

                                        By:  _____*/s/ Innessa M. Huot*_____
                                          Innessa M. Huot
                                          Alex J. Hartzband
                                          Patrick J. Collopy

                                        685 Third Avenue, 26th Floor
                                        New York, New York 10017
                                        Telephone: 212-983-9330
                                        Facsimile: 212-983-9331
                                        ihuot@faruqilaw.com
                                        ahartzband@faruqilaw.com
                                        pcollopy@faruqilaw.com

                                        *Attorneys for Plaintiff, the Proposed FLSA*
                                        *Collective, and the Proposed Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BURBRAN PIERRE, on behalf of himself and others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, TD BANK N.A., DUANE READE INC., B & H PHOTO VIDEO PRO AUDIO LLC, BLOOMBERG L.P., WHOLE FOODS MARKET GROUP, INC., TRIHOP 14TH STREET LLC, and DOES NOS. 1-10,<br><br>       Defendants. | Civil Action No.: 1:20-cv-05116<br><br>**CONSENT TO SUE** |

I, Burbran Pierre, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Pierre v. City of New York., et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firm of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, as my attorneys.

DocuSigned by:

*Burban Pierre*

CD597C418775466...

Signature: _____

Date: _____

7/3/2020 | 11:20 AM PDT