

EPSTEIN
BECKER
GREEN

Attorneys at Law

Paul DeCamp
t  202-861-1819
f  202-861-3571
PDeCamp@ebglaw.com

September 18, 2020

**By ECF and E-Mail**

    **(ALCarterNYSDChambers@nysd.uscourts.gov)**

Hon. Andrew L. Carter, Jr.
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, New York 10007

    Re:    ***Pierre v. City of New York,* et al., 20-Civ-5116 (ALC) (DF)**
          **Request To Move for Full or Partial Dismissal**
          **By Defendants Bloomberg L.P., Whole Foods Market Group, Inc.,**
          **Duane Reade Inc., TD Bank N.A., and B&H Foto Electronics Corp.**

Dear Judge Carter:

    We represent Defendant, Bloomberg, L.P. ("Bloomberg") in the above-identified matter. We write jointly with counsel for Defendants Whole Foods Market Group, Inc. ("Whole Foods"), Duane Reade Inc. ("Duane Reade"), TD Bank N.A. ("TD Bank"), and B&H Foto Electronics Corp. incorrectly named in the Complaint as B & H Photo Video Pro Audio LLC ("B&H") (together, "Defendants"), to respectfully request a pre-motion conference in connection with Defendants' respective anticipated Rule 12 motions seeking full or partial dismissal of the claims asserted against them by Plaintiff Burbran Pierre ("Plaintiff") in the Collective and Class Action Complaint ("Complaint"), pursuant to the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and Freelance Isn't Free Act ("FIFA").[1]

**Factual Background**

    The City of New York and the New York City Police Department (collectively, "NYPD") operate a Paid Detail Program ("PDP") through which Police Officers, Detectives, Sergeants, and

---

    [1]    In accordance with the stipulated agreement between and among the parties, so ordered by the Court on July 31, 2020 (DE 26), this joint pre-motion letter sets forth the factual background common to all Defendants as pleaded in the Complaint and drawn from documents referenced therein, followed by a separate recitation of the specific bases for each defendant's anticipated motion.  The facts in the Complaint that are restated here are assumed to be true for the purpose of the present motion only and Defendants do not admit that they are true for any other purpose.

Hon. Andrew L. Carter, Jr.
September 18, 2020
Page 2

Lieutenants employed by the NYPD select available assignments to provide off-duty uniformed security at private businesses throughout New York City, including retail chains, department stores, supermarkets, houses of worship, sports complexes, banks, and office buildings. (Compl. ¶¶ 1, 73). The primary purpose of the PDP is to provide a highly visible police presence at participating businesses. (*Id.* at ¶ 69). The PDP is the "only authorized program for uniformed NYPD off-duty employment." (*See* Compl., Ex. C at 3). The NYPD employs Plaintiff as a Police Officer and Plaintiff has completed PDP shifts for various private employers from time to time since March 2012. (*Id.* at ¶¶ 162-65).

The NYPD maintains complete control over administering the PDP and officers may voluntarily select shifts made available through the PDP. (*See* Compl., Ex. C (noting "the Paid Detail Unit makes specific assignments," of officers who participate in the PDP)). Specifically, the NYPD must approve a business and sets parameters for business participation in the PDP (*id.* at ¶¶ 75-80) and requires each business to sign a Participation Agreement and to submit a certificate of insurance (*id.* at ¶¶ 81-82). The NYPD also sets rules for officer participation in the PDP, including rank and title, length of service, full duty status, health, work record, and performance (*id.* at ¶¶ 83-88), requires officers to submit a formal application for participation in the PDP signed by their commanding officer that includes a signed W-9 form (Compl., Ex. B), and "maintains the authority to unilaterally remove an Officer from the PDP" (*id.* at ¶ 89). The Participation Agreement that each participating business must sign expressly states, "[t]he [NYPD] . . . makes no representations, or guarantees, that an officer will in fact appear at a paid detail." (*See* Exhibit 1, Participation Agreement at ¶ 4).[2]

"The NYPD maintains direction, control, and supervision of the assignment of Officers to PDP details" (Compl. at ¶ 90), in the following ways:

- NYPD controls the scheduling of officers through the PDP and determines the number of officers and supervisors assigned to each requested detail;
- NYPD controls and determines when officers may accept details and the number of hours per month officers may work paid detail;
- NYPD requires officers to complete Paid Detail Cards for each detail they work;
- NYPD prohibits officers from trading details and requires that officers provide documentation to their NYPD supervisors in the event they have to cancel a previously scheduled detail;
- NYPD prohibits officers from working for participating businesses outside of the PDP and disciplines officers who schedule details directly with a participating business;
- NYPD directs and controls the uniforms and physical appearance of officers on PDP details by establishing and enforcing a mandatory dress code and the same

---

[2]    *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (on a Rule 12 motion to dismiss, a court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents integral to, or explicitly referenced in, the pleading) (citing *I. Meyer Pincus & Assocs. V. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991); *2 Broadway L.L.C. v. Credit Suisse First Boston*, No. 00 Civ. 5773, 2001 WL 410074, *5 (S.D.N.Y. Apr. 20, 2001)).

Hon. Andrew L. Carter, Jr.
September 18, 2020
Page 3

> grooming and appearance standards applicable to officers on regularly scheduled non-PDP tours; and

- NYPD directs officers to bring NYPD-issued equipment such as radios, batons, and activity logs on PDP assignments.

(*Id.* at ¶¶ 91-112).  Attached to the Complaint is a five-page document from the NYPD's Paid Detail Unit that establishes in detail the terms and conditions of officer's participation in the PDP. (Compl., Ex. B).

The NYPD also directs, controls, and supervises the work officers perform during PDP details by: commanding officers where to report upon arriving at the participating business, enforcing and monitoring compliance with NYPD rules and regulations while officers are on PDP assignments, mandating that officers report to the NYPD any arrests or officer injuries that occur on PDP assignments, directing officers to sign in and out on a Paid Detail Attendance Sheet and complete Paid Detail Cards for each PDP assignment, and disciplining officers who breach NYPD standards while on a PDP detail.  (Compl. at ¶¶ 113-22).  Finally, the NYPD directs and controls the manner in which officers receive pay through the PDP by establishing uniform hourly rates based on rank and administering payment to officers through the NYPD's Paid Detail Unit. (*Id.* at ¶¶ 123-25, 127, 129, 134).  NYPD prohibits direct payment by participating businesses to officers and sets the method of payment for PDP details.  (*Id.* at ¶ 135; Ex. B (stating PDP vendors must submit "check . . . made payable in [the officers'] name . . . to the Paid Detail Unit").).  If an officer has any trouble receiving payment, the NYPD directs the officer to "call the Paid Detail Unit who will address the matter with the vendor."  (Compl., Ex. B).

All of the above facts pleaded in the Complaint establish that NYPD—and not any vendor, including the corporate defendants named in this action—hired and employed Plaintiff and other officers to perform paid detail work outside of their regularly scheduled tours.

* * *

Hon. Andrew L. Carter, Jr.
September 18, 2020
Page 4

**Bloomberg**

Plaintiff's claims against Bloomberg pursuant to the Freelance Isn't Free Act rest on the faulty premise that Bloomberg was a "hiring party" required to pay him as a freelance worker within a specified time for the single occasion on which he completed a PDP detail at Bloomberg. (*See* Compl. ¶¶ 49, 179). The facts pleaded in the Complaint fail to establish that Bloomberg was a hiring party under FIFA. Bloomberg, therefore, requests permission to move to dismiss Plaintiff's claims against it for failure to make timely payment (Claim VIII).[3]

FIFA defines "hiring party" as "any person who retains a freelance worker to provide any service." N.Y.C. Admin Code § 20-927. The Complaint shows that Bloomberg did not "retain" Plaintiff to provide any service. Rather, Bloomberg entered into a Participation Agreement with the NYPD to receive security services from uniformed NYPD officers. (Compl. ¶¶ 68, 69, 81; Ex. 1). Bloomberg never entered into any agreement with Plaintiff or any other police officer. Nor did Bloomberg engage Plaintiff or any other officer to provide services, because the Participation Agreement expressly prohibits contacting officers to fill or augment a paid detail assignment or scheduling assignments outside of the Paid Detail Unit. (Ex. 1 at ¶ 5.) Further, Bloomberg has no control over whether officers will appear at any given paid detail; on the contrary, the NYPD controls scheduling and has sole discretion to determine the number of officers assigned to each detail. (Compl. ¶¶ 90-98, 100-01; Ex. 1 at ¶¶ 4, 11). The NYPD established Plaintiff's and other officers' rate of pay, administered and distributed payment to officers through its Paid Detail Unit, and charged Bloomberg an administrative fee for doing so. (Compl. ¶¶ 123-30, 133-35; *see also* Ex. 1 at ¶¶ 2, 14, 15, 17). The Complaint and the Participation Agreement confirm that Bloomberg could not pay any officer directly. (*Id.* at ¶ 135; Ex. 1 at ¶¶ 14, 17.)

Plaintiff's conclusory allegation that Bloomberg was a "'hiring party' within the meaning of all relevant statutes and regulations" (Compl. ¶ 49) is insufficient to state a plausible FIFA claim. The Complaint demonstrates that a contract existed only between Bloomberg and the NYPD, pursuant to which the NYPD exercised exclusive control and discretion over the selection, scheduling, assignment, work performance, payment, and monitoring of its officers through the PDP. That Bloomberg benefitted from the services Plaintiff provided on the NYPD's behalf does not create contractual privity between Bloomberg and Plaintiff that would support his FIFA claims. *See In re Loomis*, 273 N.Y. 76, 82 (1937) ("The fact that others were benefited does not, in the absence of agreement by them, impose a liability upon them to pay."); *Grennan v. Well Built Sales, Inc.*, 35 Misc. 2d 905, 907 (Sup. Ct. Nassau Cty. 1962) (party not entitled to recover from another who did not retain him even though the other party benefited by the services rendered); *Maini v. Syscore Consulting Corp.*, 13 Misc. 1215(A) (Sup. Ct. Nassau Cty. 2006) (rejecting consultant's claim for fees for services because he was not in privity with the defendant). Under these circumstances, Claim VIII is subject to dismissal as against Bloomberg.

---

[3] Bloomberg contends that all of Plaintiff's claims against it have no factual or legal merit, and preserves all of its defenses as to those claims. Bloomberg reserves its right to move for judgment in Bloomberg's favor on Plaintiff's claims pursuant to the Fair Labor Standards Act and New York Labor Law (First, Third, Sixth, and Seventh Causes of Action) at a later stage of this litigation.

Hon. Andrew L. Carter, Jr.
September 18, 2020
Page 5

**TD Bank**

TD Bank intends to move to dismiss Plaintiff's complaint as to TD Bank in its entirety for failure to state a claim. First, Plaintiff fails to establish TD Bank is his employer under the FLSA and New York Labor Law, and thus Claims I-VII fail. Second, because the NYPD is Plaintiff's employer, he is not an "independent contractor" under FIFA, and TD Bank is not a "hiring party" that owes any obligation to Plaintiff under that law. Thus, Claims VIII-IX also fail.

Second Circuit courts utilize two tests to determine whether a defendant exercised sufficient control over a plaintiff to be considered his employer under FLSA and the NYLL. *See Martin v. Sprint United Mgmt. Co*., 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017).[4] Both show the NYPD is Plaintiff's sole employer. *See Bojaj v. Moro Food Corp*., 2014 WL 6055771, at *4 (S.D.N.Y. Nov. 13, 2014). First, Plaintiff fails to allege that TD Bank has *formal* control over his employment. The NYPD hires and fires officers from the PDP and supervises and controls them on PDP detail. (*See* Exs. B and C); *see Martin*, 273 F. Supp. 3d at 424. It also sets the rate of pay for officers on PDP detail and controls their manner of payment. (*See* Compl. ¶¶ 123-124; Ex. B.). Plaintiff does not even allege TD Bank was responsible for maintaining his employment records. (*See* Compl. ¶¶ 136-149.) Rather, TD Bank exercises only ancillary control typical of subcontracting relationships, such as requiring PDP officers to sign attendance sheets. *See Martin*, 273 F. Supp. 3d at 427; *Hugee v. SJC Grp.*, 2013 WL 4399226, at *5 (S.D.N.Y. Aug. 14, 2013).

Plaintiff also fails to allege TD Bank exercises *functional* control. *See Martin*, 273 F. Supp. 3d at 424. First, Plaintiff admits officers on PDP detail are staffed "throughout New York City," not exclusively at TD Bank and use NYPD uniforms and equipment. (Compl. ¶¶ 1, 108); *see Hugee*, 2013 WL 4399226, at *8. Second, the NYPD offered PDP services as a unit to businesses other than TD Bank. (*See* Compl. ¶¶ 1, 72); *see Martin*, 273 F. Supp. 3d at 431. Third, "[a]s a security guard, Plaintiff was a service provider and did not perform a discrete line job." *Hugee*, 2013 WL 4399226, at *9. Fourth, any officer participating in the PDP could "do the *same* work in the *same* place." *Martin*, 273 F. Supp. 3d at 432. Indeed, TD Bank had no control over what officer was assigned through the PDP. (Ex. C at 3); *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 135 (S.D.N.Y. 2011). Fifth, the NYPD, not TD Bank, supervised Plaintiff's employment. Sixth, Plaintiff admits he worked for numerous vendors other than TD Bank. *See Thomas v. River Greene Constr. Grp. LLC*, 2018 WL 6528493, at *9 (S.D.N.Y. Dec. 11, 2018).

Finally, since Plaintiff is solely an employee of the NYPD, he is not an independent contractor protected by FIFA, and TD Bank is not a "hiring party" that owes any obligation to him under that law. *See* N.Y.C Code § 20-927 (defining "freelance worker" protected by the statute as "any natural person . . . hired or retained as an independent contractor by a hiring party").

---

[4]    Under the formal control test, courts consider whether a purported employer: (1) has the power to hire and fire; (2) supervises and controls the employees; (3) determines rate and method of pay; and (4) maintains employment records. *Martin*, 273 F. Supp. 3d at 424. Under the functional control test, courts consider whether: (1) the defendant's premises and equipment were used to perform work; (2) the primary employer's business shifted as a unit from one business to another; (3) plaintiffs performed a discrete line job integral to defendant's business; (4) responsibility could pass from one subcontractor to another without material changes; (5) the defendant supervised plaintiffs' work; and (6) whether plaintiff worked predominantly for defendant. *Id.*

Hon. Andrew L. Carter, Jr.
September 18, 2020
Page 6

**Whole Foods**

Like Bloomberg, Whole Foods intends to move to dismiss Claim VIII, in which Plaintiff claims that Whole Foods violated the Freelance Isn't Free Act.  To prevail on this claim, Plaintiff bears the burden of demonstrating that Whole Foods was a "hiring party" required to pay him as a freelance worker within a specified time for the single occasion on which he completed a PDP detail at Whole Foods.  (*See* Compl. ¶¶ 55, 176).  The Complaint fails to establish that Whole Foods was a hiring party under FIFA, however, and Whole Foods respectfully requests permission to move to dismiss Plaintiff's claims against it for failure to make timely payment under FIFA (Claim VIII).[5]

Under FIFA, a "hiring party" is "any person who retains a freelance worker to provide any service."  N.Y.C. Admin Code § 20-927.  Plaintiff's allegations in the Complaint fail to show that Whole Foods retained Plaintiff, or any other NYPD officer, to provide services to it.  Although the Complaint alleges that Whole Foods entered into an agreement with the NYPD (Compl. ¶¶ *Id.* at ¶¶ 91-112; Ex. 1), it does *not* allege that Whole Foods entered into any agreement with Plaintiff or any other police officer to provide services.  To the contrary, documents attached to Plaintiff's Complaint demonstrate that Whole Foods was specifically *prohibited* from entering into an agreement with him.  (Ex. 1 at ¶ 5.).  Furthermore, Plaintiff's allegations show that Whole Foods did not complete any of the tasks associated with a hiring entity.  The Complaint specifically alleges that Whole Foods has *no* control over: (1) whether officers will appear at any given paid detail; (2) how to pay the officers who do appear; and (3) what amounts to pay the officers who do appear.  (Compl. ¶¶ 90-98, 100-01; Ex. 1 at ¶¶ 4, 11).

Plaintiff's conclusory allegation that Whole Foods was a "'hiring party' within the meaning of all relevant statutes and regulations" (Compl. ¶ 49) fails to state a plausible FIFA claim, and Claim VIII should be dismissed against Whole Foods.  *See Maini v. Syscore Consulting Corp.*, 13 Misc. 1215(A) (Sup. Ct. Nassau Cty. 2006) (rejecting consultant's claim for fees for services because he was not in privity with the defendant).

---

[5]    Whole Foods contends that all of Plaintiff's claims against it have no factual or legal merit, and preserves all of its defenses as to those claims.  Whole Foods also reserves its right to move for judgment in Whole Foods' favor on Plaintiff's claims pursuant to the Fair Labor Standards Act and New York Labor Law (First, Third, Sixth, and Seventh Causes of Action) at a later stage of this litigation.

Hon. Andrew L. Carter, Jr.
September 18, 2020
Page 7

**Duane Reade**

      As to Duane Reade, the entirety of Plaintiff's allegations in his 334-paragraph Complaint consist of a few conclusory sentences that merely parrot part of the legal test for determining whether or not an entity is an employer under the FLSA and NYLL. (Compl. ¶¶ 33-37, 186-87). For substantially the same reasons noted by other Defendants, Plaintiff's claims that Duane Reade employed and/or hired him are rebutted by the very documents attached to and incorporated by reference in the Complaint. In all events, Plaintiff's allegations are not sufficient to state any claim for relief against Duane Reade.

      Duane Reade, therefore, respectfully requests permission to move to dismiss Plaintiff's Complaint in its entirety based on the same grounds set forth above by Bloomberg, Whole Foods, and TD Bank. First, Plaintiff fails to plead any plausible, factual allegations establishing that Duane Reade employed him under the FLSA or the NYLL, which means Plaintiff's First, Third, Sixth, and Seventh Causes of Action against Duane Reade should be dismissed. Second, Plaintiff's Complaint fails to show that Duane Reade is a "hiring party" that owes any obligation to Plaintiff under the FIFA. For this reason, Plaintiff's Eighth Cause of Action also fails.

Hon. Andrew L. Carter, Jr.
September 18, 2020
Page 8

**B & H Foto**

Like Bloomberg and Whole Foods, B & H intends to move to dismiss Claim VIII, in which Plaintiff asserts that B & H violated the Freelance Isn't Free Act.  Plaintiff bears the burden of demonstrating that B & H was a "hiring party" required to pay him as a freelance worker within a specified time from his completion of one PDP detail at B & h.  (*See* Compl. ¶¶ 43, 170).  The Complaint does not in any way establish that B & H Foods was a hiring party under FIFA. Accordingly, B & H respectfully requests permission to move to dismiss Plaintiff's claims against it for failure to make timely payment under FIFA (Claim VIII).[6]

Under FIFA, a "hiring party" is "any person who retains a freelance worker to provide any service."  N.Y.C. Admin Code § 20-927.  Plaintiff's allegations in the Complaint fail to show that B & H retained Plaintiff, or any other NYPD officer, to provide services.  In fact, the Complaint alleges that B & H entered into an agreement with the NYPD (Compl ¶ 81; Ex. 1), but it does *not* allege that B & H entered into any agreement with Plaintiff or any other police officer to provide services.   The documents attached to Plaintiff's Complaint demonstrate that B & H was specifically *prohibited* from entering into any such agreement with Plaintiff.  (Ex. 1 at ¶ 5.). Furthermore, Plaintiff's allegations demonstrate that B & H did not perform any tasks that are generally performed by a business that is retaining a freelance worker.  And the Complaint specifically acknowledges that B & H has *no* control over: (1) whether officers will appear at any given paid detail; (2) how to pay the officers who do appear; and (3) what amounts to pay the officers who do appear.  (Compl. ¶¶ 90-98, 100-01; Ex. 1 at ¶¶ 4, 11).

In sum, Plaintiff's allegation that B & H was a "'hiring party' within the meaning of all relevant statutes and regulations" (Compl. ¶ 43) fails to state a plausible FIFA claim, and Claim VIII should be dismissed against B & H.  The Complaint demonstrates that the contract that existed related to B & H's participation in the PDP program was solely between B & H and the NYPD. And that pursuant to such contract, the NYPD exercised exclusive control and discretion over the selection, scheduling, assignment, work performance, payment, and monitoring of its officers through the PDP.  There is no contractual privity between B & H and Plaintiff that would support his FIFA claims.  *See In re Loomis*, 273 N.Y. 76, 82 (1937) ("The fact that others were benefited does not, in the absence of agreement by them, impose a liability upon them to pay."); *Grennan v. Well Built Sales, Inc.*, 35 Misc. 2d 905, 907 (Sup. Ct. Nassau Cty. 1962) (party not entitled to recover from another who did not retain him even though the other party benefited by the services rendered); *Maini v. Syscore Consulting Corp.*, 13 Misc. 1215(A) (Sup. Ct. Nassau Cty. 2006) (rejecting consultant's claim for fees for services because he was not in privity with the defendant).

---

[6]     Like, Whole Foods, B & H preserves all of its defenses as to all other claims asserted against B & H and reserves its right to move for judgment in B & H's favor on Plaintiff's claims pursuant to the Fair Labor Standards Act and New York Labor Law (First, Third, Sixth, and Seventh Causes of Action) at a later stage of this litigation.

Hon. Andrew L. Carter, Jr.
September 18, 2020
Page 9

Thank you for Your Honor's consideration of this joint request.

Very truly yours,

Paul DeCamp


EPSTEIN BECKER & GREEN, P.C.

By: */s/ Paul DeCamp*
    Paul DeCamp (*admitted pro hac vice*)
    1227 25th Street, N.W., Suite 700
    Washington, D.C.  20037
    Tel:  202-861-1819
    Fax:  202-861-3571
    PDeCamp@ebglaw.com

    Adriana S. Kosovych
    875 Third Avenue
    New York, New York 10022
    Tel: 212-351-4500
    Fax: 212-878-8600
    akosovych@ebglaw.com

    *Counsel for Defendant Bloomberg L.P.*


cc:    Pamela A. Miller
       Sloane Ackerman
       Charles Mahoney
       *Counsel for Defendant TD Bank, N.A.*

       Daniel Kadish
       Liliya Kramer
       Lincoln Bisbee
       *Counsel for Defendant Whole Foods Market Group, Inc.*

       Richard I. Greenberg
       *Counsel for Defendant B & H Foto Electronics Corp., incorrectly named in the Complaint as B&H Photo Video Pro Audio LLC*

       Jason Burns
       Chris Parlo
       *Counsel for Defendant Duane Reade Inc.*