**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BURBRAN PIERRE, on behalf of himself and others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, TD BANK N.A., DUANE READE INC., B & H PHOTO VIDEO PRO AUDIO LLC, BLOOMBERG L.P., WHOLE FOODS MARKET GROUP, INC., TRIHOP 14TH STREET LLC, and DOES NOS. 1-10,<br><br>                  Defendants. | Civil Action No.: 1:20-cv-05116(ALC)(DCF) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL, AND APPROVAL OF PLAINTIFF'S NOTICE OF SETTLEMENT AND CLAIM FORM**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    THE SETTLEMENT ........................................................................................... 3

    A.    Settlement Terms ....................................................................................... 3

    B.    Allocation to the Class ............................................................................. 3

    C.    Specific Release ....................................................................................... 4

    D.    Attorneys' Fees and Costs ........................................................................ 4

    E.    Service Award .......................................................................................... 5

III.   CLASS ACTION SETTLEMENT PROCEDURE ............................................. 5

ARGUMENT ................................................................................................................. 6

I.     THE COURT SHOULD GRANT PLAINTIFF'S REQUEST TO PRELIMINARILY CERTIFY THE SETTLEMENT CLASS UNDER RULE 23 ........................................... 6

    A.    Numerosity ................................................................................................ 6

    B.    Commonality ............................................................................................. 7

    C.    Predominance ........................................................................................... 8

    D.    Typicality .................................................................................................. 9

    E.    Adequacy ................................................................................................ 10

    F.    Superiority ............................................................................................... 12

II.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .............. 13

    A.    The Settlement is Procedurally Fair ....................................................... 15

    B.    The Settlement is Substantively Fair, Reasonable, and Adequate .......................... 16

        i.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) ...................................................................... 17

        ii.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ........... 18

        iii.  Discovery Has Advanced Far Enough for the Parties to Evaluate  the Strengths and Weaknesses of the Case (*Grinnell* Factor 3) ..................... 18

    iv.    Plaintiff Would Face Significant Risks if the Case Proceeded (*Grinnell* Factors 4 & 5) ........................................................................ 19

    v.    Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6) ..................................................................................... 21

    vi.    Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7) ........................................................... 21

    vii.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 & 9) .......................................................................... 22

III.    THE NOTICE PLAN, THE DISTRIBUTION PROCESS, AND THE RELEASES SHOULD BE APPROVED .............................................................................. 24

IV.    APPROVAL OF THE SETTLEMENT IS APPROPRIATE UNDER THE FLSA ......... 25

V.    THE COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING ......... 25

CONCLUSION ................................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................... 17

*Bourlas v. Davis Law Assocs.*,
   237 F.R.D. 345 (E.D.N.Y. 2006) ......................................................................... 14

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) ................................................................................. 8

*Bryant v. Potbelly Sandwich Works, LLC*,
   No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) ...................... 25

*Caballero v. Senior Health Partners, Inc.*,
   No. 16-cv-00326(CLP), 2018 WL 6435900 (E.D.N.Y. Dec. 7, 2018) ................................. 18

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .................................................................... 15, 16, 17

*Clark v. Ecolab, Inc.*,
   No. 04 Civ. 4488(PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ............................. 14

*Cohetero v. Stone & Tile, Inc.*,
   No. 16-CV-4420 (KAM)(SMG), 2018 WL 565717 (E.D.N.Y. Jan. 25, 2018) ...................... 23

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) .............................................................................................. 8

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ................................................................................... 8

*Dorn v. Eddington Sec., Inc.*,
   No. 08 Civ. 10271 LTS, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ................................ 19

*Eldred v. Comforce Corp.*,
   No. 3:08-cv-1171(LEK/DEP), 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010) ..................... 7, 9

*Elliot v. Leatherstocking Corp.*,
   No. 3:10-CV-0934, 2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) ................................. *passim*

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 CIV 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .............................. 15

*Felix v. Breakroom Burgers & Tacos*,
   No. 15 Civ. 3531 (PAE), 2016 WL 3791149 (S.D.N.Y. Mar. 8, 2016) ............................... 23

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................................*passim*

*Griffin v. Aldi, Inc.*,
   No. 5:16-cv-00354-LEK-ATB, ECF No. 109 (N.D.N.Y. Nov. 15, 2018) ............................ 23

*Hadel v. Gaucho, LLC*,
   No. 15 Civ. 3706 (RLE), 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016) ................................ 6

*Handschu v. Special Servs. Div.*,
   787 F.2d 828 (2d Cir. 1986) ................................................................................................ 24

*Hernandez v. Fresh Diet, Inc.*,
   No. 12-cv-4339 (ALC)(JLC), 2014 WL 5039431 (S.D.N.Y. Sept. 29, 2014) ...................... 20

*Hernandez v. Merrill Lynch & Co.*,
   No. 11 Civ. 8472(KBF)(DCF), 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) .................... 15

*Hill v. City of N.Y.*,
   No. 13-CV-6147 (PKC) (JO), 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) ......................... 7

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ...................................................................................... 19

*Jianmin Jin v. Shanghai Original, Inc.*,
   No. 16-cv-5633 (ARR) (JO), 2018 WL 1597389 (E.D.N.Y. Apr. 2, 2018) ......................... 20

*Long v. HSBC USA Inc.*,
   No. 14 Civ. 6233(HBP), 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) ................................ 6

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
   No. 5:15-cv-00441, 2016 WL 3406111 (N.D.N.Y. June 17, 2016) ...............................*passim*

*Mayhew v. KAS Direct, LLC*,
   No. 16 CV 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018) .................................. 10

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) ......................................................................................... 13, 14

*McEarchen v. Urban Outfitters, Inc.*,
   No. 13-CV-3569 (RRM) (JO), 2017 WL 3912345 (E.D.N.Y. Sept. 6, 2017) ...................... 20

*Mercado v. Metro. Transp. Auth.*,
   No. 20 Civ. 6533, 2021 WL 2593462 (S.D.N.Y. June 24, 2021) ........................................... 6

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................................... 25

*N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*,
    477 F. App'x 809 (2d Cir. 2012)................................................................. 9

*In re Nasdaq Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997)................................................................. 14

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997)....................................................... 19, 21, 22

*Palacio v. E*Trade Fin. Corp.*,
    No. 10 Civ. 4030(RJH)(DCF), 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012)..................... 15

*Parker v. City of N.Y.*,
    No. 15-cv-6733(CLP), 2018 WL 6338775 (E.D.N.Y. Dec. 4, 2018) ........................... 18

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................... 18

*Pino v. Harris Water Main & Sewer Contractors Inc.*,
    No. 17-cv-5910 (KAM)(RER), 2021 WL 3675148 (E.D.N.Y. Aug. 19, 2021) ...................... 7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995)............................................................... 14

*Quow v. Accurate Mech. Inc.*,
    No. 1:15-CV-09852 (KHP), 2018 WL 3368673 (S.D.N.Y. July 10, 2018)........................ 18

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015)............................................................... 23

*Reyes v. Altamarea Grp., LLC*,
    No. 10-CV-6451(RLE), 2011 WL 4599773 (S.D.N.Y. June 3, 2011) ............................ 15

*Rivas v. Dinex Grp., LLC*,
    No. 20-cv-03117, 2021 WL 2850627 (S.D.N.Y. July 8, 2021) ................................ 16

*Rodriguez-Hernandez v. K Bread & Co., Inc.*,
    No. 15-cv-6848 (KBF), 2017 WL 2266874 (S.D.N.Y. May 23, 2017) ........................... 23

*Ruiz v. Citibank, N.A.*,
    93 F. Supp. 3d 279 (S.D.N.Y. 2015) ......................................................... 20

*Scott v. Chipotle Mexican Grill, Inc.*,
    No. 12-cv-8333(ALC)(SN), 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017)........................ 20

*Surdu v. Madison Glob., LLC*,
    No. 15-CV-6567 (HBP), 2017 WL 3842859 (S.D.N.Y. Sept. 1, 2017) .......................... 23

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) .................................................................. 10

*In re Traffic Exec. Ass'n E. R.Rs.*,
    627 F.2d 631 (2d Cir. 1980) ................................................................ 14

*Vargas v. Cap. One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ........................................................... 24

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ..................... 19

*Vogel v. City of N.Y.*,
    No. 14 Civ. 9171(RMB), 2017 WL 4712791 (S.D.N.Y. Sept. 19, 2017) ................................ 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) .................................................................. 13

*Wang v. Masago Neo Asian Inc.*,
    No. 14-6249(DRH)(ARL), 2016 WL 7177514 (E.D.N.Y. Sept. 26, 2016) ........................... 23

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................ 13

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................... *passim*

William B. Rubenstein, *Newberg on Class Actions* §§ 13:10 (5th ed. 2021) ................... 5, 14, 16

Plaintiff Burbran Pierre ("Plaintiff"), on behalf of himself and the proposed Class (defined *infra*), and with the consent of Defendant Whole Foods Market Group, Inc. ("Whole Foods" or "Defendant") (together with Plaintiff, the "Parties"), hereby submits this memorandum of law in support of his motion for: (i) preliminary approval of Plaintiff's proposed settlement with Whole Foods; (ii) certification of the proposed settlement class; (iii) appointment of Faruqi & Faruqi, LLP as class counsel; and (iv) approval of Plaintiff's proposed Notice of Settlement and Claim Form.

## I.   **INTRODUCTION**

On July 3, 2020, following a thorough pre-suit investigation, Plaintiff commenced a class and collective action on behalf of himself and all similarly situated New York City Police Officers, Sergeants, Lieutenants, and Detectives ("Officers") against the City of New York ("CNY"), the New York City Police Department ("NYPD"), and several private businesses for which Officers performed uniformed security services through the NYPD's Paid Detail Program ("PDP").   Declaration of Innessa M. Huot ("Huot Decl.") ¶¶ 5-8, 13; ECF No. 1 ("Complaint").   Among these private businesses is Whole Foods, who Plaintiff alleges engaged in a common policy and practice of denying him and 395 other Officers timely payment of wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").   *Id.*[1]   Thereafter, Whole Foods and other Defendants moved to dismiss Plaintiff's claims against them. ECF No. 60.   On August 31, 2021, the Court denied the motion to dismiss in its entirety.   ECF No. 72.

While the motion to dismiss was pending, Plaintiff and Whole Foods engaged in substantial and arm's-length settlement discussions. Huot Decl. ¶ 15.   Negotiations were extensive and lasted several months, during which the Parties exchanged and analyzed discovery concerning every single Officer who worked at a Whole Foods location through the PDP at any time throughout the statutory

---

[1] Plaintiff also brings analogous claims in the alternative under the NYC Freelance Isn't Free Act ("FIFA").   *Id.*

period, who together comprise the settlement class Plaintiff seeks to represent (the "Class").  *Id.* ¶¶ 16-17.  After a detailed review of comprehensive time and compensation data, Class Counsel was able to calculate the precise alleged damages for each Officer.  *Id.* ¶ 18.

Following these extensive negotiations, Plaintiff and Whole Foods reached a settlement of Plaintiff's class and collective claims against Whole Foods,[2] and are pleased to present it to this Court for approval.  *Id.* ¶ 19, Exhibit A ("Settlement Agreement").[3]  The Parties have agreed to resolve all claims against Whole Foods for $185,000, which represents a ***remarkable 73% recovery*** of the entire Class's potential wage damages.  Huot Decl. ¶ 20.  The settlement payment also covers attorneys' fees and litigation expenses, as well as a service award to Plaintiff for all services rendered on the Class's behalf in connection with the action, negotiations resulting in this Agreement, and acts performed in furtherance of this Agreement.  *Id.* ¶ 23; *see also* Settlement Agreement § II(A).

Approval of the class action settlement at bar requires two steps: (1) preliminary approval of the proposed settlement and Court authorization to disseminate notice of the same to all members of the proposed class; and (ii) final approval following a fairness hearing, at which time Class Members will have been afforded an opportunity to opt out of or object to the settlement.  Here, Plaintiff requests that this Court preliminarily approve the settlement and authorize the dissemination of settlement notices and claim forms, through which Class Members can choose whether to participate.  As detailed more fully below, the proposed settlement Class comports with Federal Rule of Civil Procedure 23 ("Rule 23").  Moreover, preliminary approval is appropriate because the settlement is both procedurally and substantively fair and satisfies each of the nine so-called "*Grinnell* factors."  Finally, the Parties' proposed settlement notices comport with requirements of due process and Rule

---

[2] The Settlement Agreement also covers certain claims against the City of New York and the NYPD, but only with respect to claims regarding PDP shifts worked at a Whole Foods location.
[3] Unless otherwise noted, all exhibits to the Huot Decl. are hereinafter cited as "Ex. __."

23, as they adequately advise Class Members of their rights under the proposed settlement and provide simple instructions on how to submit a claim, as well as the consequences of failing to do so, in addition to clearly instructing them regarding their rights and the process by which to opt out or object.

Accordingly, Plaintiff respectfully requests that the Court preliminarily certify the proposed settlement class, appoint Faruqi & Faruqi, LLP as Class Counsel, authorize the dissemination of settlement notices and claim forms, and set a date for a fairness hearing.

## II.   THE SETTLEMENT

### A.   Settlement Terms

The proposed settlement provides for a settlement payment of $185,000, which includes all fees and costs payable to Class Counsel and a service award to the named Plaintiff. *See* Settlement Agreement § II(A). After deduction of all fees, costs, and service awards, the amount each Authorized Claimant[4] will receive is based on his or her actual alleged damages, as determined by time and compensation data produced by Whole Foods for settlement purposes.

### B.   Allocation to the Class

Per the Settlement Agreement, Class Members are considered Authorized Claimants and are eligible to receive settlement payments if they: (i) provided services at any Whole Foods location in New York through the PDP at any time from July 3, 2014 through the date of a Preliminary Approval Order; (ii) do not affirmatively opt out of the settlement; and (iii) timely submit a Claim Form.

After the payment of the Fee & Cost Payments and the Service Award from the Gross Settlement Fund ("GSF"), an amount of $114,383.18 will be allocated to the Net Allocation Fund, from which payment will ultimately be issued to the Authorized Claimants. *See* Settlement Agreement § II(A)-(B). Settlement payments to each Authorized Claimant are based on their actual

---

[4] Unless otherwise noted, all capitalized terms have the same meanings set in § I of the Settlement Agreement.

damages, as calculated from their specific time and compensation data. *Id.* § I(NN). If any amounts remain in the Net Settlement Fund following the disbursements described above, those amounts shall be used to pay the Settlement Administration Fee, which the Parties and proposed Settlement Administrator have agreed to cap at $10,000. *See Id.* § II(A)(3)(b). If amounts remaining in the Net Settlement Fund are not sufficient to cover the Settlement Administration Fee, then Whole Foods will pay such additional fees, up to a cap of $10,000, over and above the $185,000 GSF. *See id.*

Defendant reserves the right to declare the settlement null and void if 10% or more of the Class Members opt out of the settlement after the Court has issued a Preliminary Approval Order. *See* Settlement Agreement § II(F).

### C.     Specific Release

In consideration for Defendant's payment to the GSF, by operation of the Court issuing a Final Approval Order, Plaintiff and all Class Members who do not submit opt-out statements will release their "Released State Law Claims" (defined *id.* § I(HH). Further, by submitting a Claim Form in exchange for the settlement payment, Plaintiff and each Authorized Claimant shall release their "Released Federal Claims" (defined *id.* § I(II)). Significantly, both the Released State Law Claims and the Released Federal Claims are specifically limited to claims related to services provided at any Whole Foods location in New York through the PDP. *Id.* §§ I (HH-II). The Settlement Agreement explicitly provides that both the Released State Law Claims and the Released Federal Claims "are not intended to be a general release of any claim that is unrelated to Plaintiffs' provision of services through the PDP at any Whole Foods location in New York State." *Id.*

### D.     Attorneys' Fees and Costs

Pursuant to the Settlement Agreement, and subject to Court approval, Class Counsel shall be paid a total of $61,666.67 as reasonable attorneys' fees ("Fee Payment"), which represents one third of the GSF. The amount paid to Class Counsel as reimbursement of reasonable and actual costs and

expenses incurred in furtherance of the instant action and settlement is to be $3,950.15 ("Cost Payment").  Together, the Fee & Cost Payments represent attorneys' fees, and costs for services rendered on Plaintiff's and the Class's behalf in connection with this action, the negotiations resulting in the settlement with Whole Foods, and other acts performed in furtherance of this settlement, the Settlement Agreement, and obtaining Court approval of the same.  *See id.* § II(A)(3)(c).

**E.**      **Service Award**

Additionally, Plaintiff will apply to the Court to receive a Service Award of up to $5,000 in recognition of the services he rendered on behalf of the Class.  Defendant has agreed not to oppose this application.  *See id*. § II(A)(3)(d).

**III.**    **CLASS ACTION SETTLEMENT PROCEDURE**

The class action settlement procedure in this action includes the following three steps:

(i)    Preliminary approval of the proposed settlement;

(ii)   Dissemination of the Settlement Notice and Claim Form to all Class Members; and

(iii)  A final settlement approval hearing at which Class Members may be heard regarding the settlement and arguments concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* William B. Rubenstein, *Newberg on Class Actions* ("*Newberg*") §§ 13:10, *et seq.* (5th ed. 2021).  Plaintiff respectfully requests that the Court now take the first step— granting preliminary approval of the Settlement Agreement, which includes approval of Plaintiff's proposed Settlement Notice and Claims Form—and authorize the Claims Administrator to take the second step of mailing the Settlement Notice and Claims Form to all Class Members. *See* Ex. B.

Plaintiff respectfully submits for the Court's consideration the following proposed schedule, which was formulated in consultation with Whole Foods, for approval of the settlement and final resolution of Plaintiff's and the Class's claims against Whole Foods:

(i)    Within three days of the Preliminary Approval Order, Defendant's counsel shall provide in electronic form: (a) the Class List to the Settlement Administrator; and (b) the Limited

Class List to Class Counsel.  *See* Settlement Agreement § III(G)(1).

(ii) Within ten days of the Preliminary Approval Order, the Settlement Administrator shall mail to all Class Members, via First Class U.S. Mail, the Settlement Notice and Claim Form (pending Court approval of the same).  *See id.* § III(D); *see also* Ex. B.

(iii) Class Members shall have 45 days after the mailing of the Settlement Notice to submit a Claim Form, opt out of the settlement, or to object to the settlement (the "Bar Date").  *See id.* § III(F)(2).  Class Members who do not timely receive the Settlement Notice or are unable to file the Claim Form within 45 days due to such factors as military service, hospitalization, or other extraordinary circumstances shall have an additional 15 days from the initial mailing to submit their Claim Forms.  *See id.* § III(G)(2).

(iv) Within 60 days after the Bar Date, Plaintiff shall file a motion for final approval of the proposed settlement.  *See id.* § III(J)(1).

Plaintiff respectfully submits with the instant motion a proposed Order setting forth the above-summarized schedule.  *See* Ex. C.

## ARGUMENT[5]

## I.   THE COURT SHOULD GRANT PLAINTIFF'S REQUEST TO PRELIMINARILY CERTIFY THE SETTLEMENT CLASS UNDER RULE 23

Plaintiff respectfully requests that the Court preliminarily certify the Class for settlement purposes.  As detailed below, all requirements of Rule 23 are satisfied.[6]  Defendant, for settlement purposes only, does not oppose Plaintiff's request for class certification.

### A.   Numerosity

The Class is comprised of 396 members, which is more than sufficient to satisfy numerosity. *See* Rule 23(a)(1).  Courts in the Second Circuit have consistently held that "numerosity is presumed

---

[5] Unless otherwise noted, all internal quotation marks and citations are omitted.

[6] In addition to meeting the criteria to proceed as a class action under Rule 23, Plaintiff has also satisfied the criteria to proceed as a collective action under the FLSA.  For a collective action to proceed under 29 U.S.C. § 216(b), two requirements must be met: (i) all members must affirmatively consent to join, and (ii) all members must be "similarly situated."  *Mercado v. Metro. Transp. Auth.*, No. 20 Civ. 6533, 2021 WL 2593462, at *1 (S.D.N.Y. June 24, 2021).  Because the requirements of Rule 23 are more stringent than FLSA § 216(b), Plaintiff has also met the criteria for certification of the FLSA Collective as "similarly situated" under 29 U.S.C. § 216(b).  *See Hadel v. Gaucho, LLC*, No. 15 Civ. 3706 (RLE), 2016 WL 1060324, at *4 (S.D.N.Y. Mar. 14, 2016) (certifying the FLSA collective "[b]ecause the standard for conditional certification as an FLSA collective is less stringent than the standard for certification of a class action pursuant to Rule 23[.]") (citing *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *12 (S.D.N.Y. Sept. 11, 2015)).

at a level of 40 members[.]"  *Eldred v. Comforce Corp.*, No. 3:08-cv-1171(LEK/DEP), 2010 WL 812698, at *15 (N.D.N.Y. Mar. 2, 2010) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  Given that the proposed Class here contains far more than 40 individual members, numerosity is satisfied.

### B.   Commonality

The Court should certify the Class for settlement purposes because common questions of law and fact predominate over questions affecting only individual members.  *See* Rule 23(a)(2).  This element is easily met because the commonality requirement may be satisfied by a single common issue.  *See Hill v. City of N.Y.*, No. 13-CV-6147 (PKC) (JO), 2019 WL 1900503, at *6 (E.D.N.Y. Apr. 29, 2019) ("Even a single common legal or factual question will suffice to prove commonality.").  Here, Plaintiff alleges against Whole Foods that he and his fellow Officers should have been paid timely wages.  *See generally* Complaint.  These claims also raise legal and factual questions regarding Whole Foods's status as an "employer" under the FLSA and NYLL.  *See id.*  Plaintiff's alternative claims under FIFA raise similar factual and legal questions—specifically, whether he and other Officers qualify as "freelancer workers" and whether Whole Foods qualifies as a "hiring part[y]." *See id.* ¶¶ 307-17.  Accordingly, common questions in this case include: (i) whether Whole Foods employed Plaintiff and the Class; (ii) whether Whole Foods was a "hiring party" with respect to Plaintiff and the Class; (iii) whether Plaintiff and the Class Members were "freelance workers;" and (iv) whether Defendant timely paid members of the Class their earned wages.

Given that this action necessitates several common factual and legal questions, as opposed to the requisite single common question, commonality under Rule 23(a)(2) is satisfied.  *See Pino v. Harris Water Main & Sewer Contractors Inc.*, No. 17-cv-5910 (KAM)(RER), 2021 WL 3675148, at *6 (E.D.N.Y. Aug. 19, 2021) (finding commonality where "Plaintiffs and the Class members share[d] common questions as to whether they received accurate pay rate notices and wage statements and

whether any wage notices received were compliant with the NYLL"); *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-cv-00441 (MAD/TWD), 2016 WL 3406111, at *2 (N.D.N.Y. June 17, 2016) (commonality in wage-and-hour settlement) (citing *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162-63 (S.D.N.Y. 2014) (commonality where workers were allegedly not paid proper overtime); *Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934 (MAD/DEP), 2012 WL 6024572, at *2 (N.D.N.Y. Dec. 4, 2012) (commonality where "class members raise common issues concerning defendant's failure to pay overtime, minimum wages and properly distribute service charges.").

**C.     Predominance**

Overlapping with Rule 23(a)(2)'s commonality standard, Rule 23(b)(3) requires, *inter alia*, that "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]"  "The predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007).  To be clear, Rule 23(b)(3) "scarcely demands commonality as to all questions.  In particular, when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." *Comcast Corp. v. Behrend*, 569 U.S. 27, 41 (2013).  Put differently, Rule 23(b)(3) requires only "a sufficient constellation of common issues [that] bind[s] class members together" and may be satisfied despite "variations in the sources and application of a defense[.]"  *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010).

Here, "Class-wide issues predominate [because] resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [ ] these particular issues are more substantial than the issues subject only to

individualized proof." *N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809, 812 (2d Cir. 2012) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010). Indeed, the core issues in this case focus on Defendant's policies and practices with respect to Officers who work at Whole Foods through the PDP program.  Plaintiff contends that the Officers perform similar tasks and have similar responsibilities.  *See generally* Complaint.  In addition, Plaintiff alleges that Defendant does not timely pay Officers all wages earned on their regularly scheduled paydays. *See id.*  Each of these core issues involves a common nucleus of operative facts based on Defendant's common management policies and procedures which applied to all Class Members.  *See, e.g.*, *Marroquin Alas*, 2016 WL 3406111, at *3 (finding predominance in wage-and-hour case where questions concerning overtime pay were "universal" to workers); *Eldred*, 2010 WL 812698, at *19 (certifying litigation class and finding "[t]he predominant question raised is whether such a policy existed, and not whether any individual suffered its consequences on a particular job").  Also, damages in this case have been calculated by applying the same mechanical formula based on each Class Members' actual work time and compensation data.  Because common issues in this action predominate over individualized issues (if any) and damages are, in fact, provable in the aggregate, predominance has been established.

### D. <u>Typicality</u>

Plaintiff's claims are typical to the Class Members' claims.  *See* Rule 23(a)(3).  "Typicality 'does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Vogel v. City of N.Y.*, No. 14 Civ. 9171(RMB), 2017 WL 4712791, at *4 (S.D.N.Y. Sept. 19, 2017) (quoting *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 508 (S.D.N.Y. 2011)).  Plaintiff and the Class Members are all current and former Officers who worked at Whole Foods through the PDP,

were subject to Defendant's uniform policies, and who were harmed by Defendant in the same manner in that they were not paid timely wages.  *See Marroquin Alas*, 2016 WL 3406111, at *2 (typicality satisfied since plaintiffs' claims are based on same factual and legal theories as the class members). Since Plaintiff's claims are identical to those of the members of the Class he seeks to represent, typicality is easily satisfied.

E.    **Adequacy**

"Under Rule 23(a)(4) . . . adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class."  *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015).  "Plaintiffs must also have attorneys who are qualified, experienced, and generally able to conduct the litigation." *Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059, at *5 (S.D.N.Y. June 26, 2018).

In this case, Plaintiff does not have any interests that conflict with his fellow Officers.  *See* Huot Decl. ¶ 9; *Elliot*, 2012 WL 6024572, at *2 (adequacy satisfied where there was "no evidence that plaintiffs' and the class members' interests are at odds").  In addition, Plaintiff has worked extensively on behalf of the Class to achieve this settlement. *See* Huot Decl. ¶ 24.  By way of example, Plaintiff searched for and provided documents and spent many hours with his attorneys reviewing filings, records, and Defendant's documents, explaining his experiences working for Whole Foods through the PDP, responding to inquiries from his colleagues, and assisting with this litigation in myriad other ways, including by submitting a declaration in opposition to Defendants' motion to dismiss. *See id.*; ECF No. 66-8.

Next, Plaintiff's counsel are "qualified, experienced, and generally able to conduct the litigation." *Mayhew,* 2018 WL 3122059, at *5.  Counsel from Faruqi & Faruqi, LLP have extensive experience representing employees and have served as lead and co-lead counsel in numerous wage-and-hour and other class and collective actions across the country.  Huot Decl. ¶¶ 3-4.  Some of the

firm's more recent notable recoveries include, *inter alia*: *Feliciano, et al. v. Metropolitan Transp. Auth., et al.*, No. 18-cv-00026-VSB, ECF No. 99 at 2 (S.D.N.Y. May 6, 2020) ($5.4 million collective action settlement for unpaid wages and overtime); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, NYSCEF Nos. 70 at 3; 80 (N.Y. Sup., Queens Cty. June 24, 2020) (approving a $550,000 class action settlement for unpaid wages and noting Plaintiffs' counsels' substantial experience in wage and hour litigation and their skill and commitment to representing the settlement class's interests); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918-PKC-VMS, ECF No. 129 at 2 (E.D.N.Y. May 8, 2019) ($700,000 class and collective settlement for unpaid wages and overtime); *Izzio, et al. v. Century Golf Partners Mgmt., L.P.*, No. 3:14-cv-03194-M, ECF No. 153 at 2, 14 (N.D. Tex. Feb. 13, 2019) ($1.45 million class and collective settlement for unpaid wages and overtime); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354 (LEK/ATB), ECF No. 109 at 9 (N.D.N.Y. Nov. 15, 2018) ($9.8 million class and collective action settlement for unpaid wages and overtime); *Run Them Sweet, LLC v. CPA Global LTD, et al.*, No. 1:16-cv-1347-TSE-TCB, ECF Nos. 110 at 5, 15; 115 (E.D. Va. Oct. 6, 2017) ($5.6 million class settlement); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 6:15-cv-03519-BCW, ECF Nos. 129 at 2; 155 (W.D. Mo. July 7, 2017) ($51 million class settlement); *Molina, et al. v. Huaxcuaxtla Rest. Corp., et al*., 1:20-cv-02481-RWL ECF Nos. 74 at 2; 77 (S.D.N.Y. Feb. 25, 2021) ($160,000 collective action settlement of minimum wage and overtime claims); *Sanchez, et al. v. Stonehouse Rest LLC, et al.*, No. 1:18-cv-01397-ST, ECF Nos. 74 at 2; 77 (E.D.N.Y. Feb. 4, 2021) ($425,000 collective action settlement for unpaid wages and overtime); *Strong, et al. v. Safe Auto Ins. Grp., Inc., et al.*, Case No. 2:16-cv-765, ECF Nos. 30 at 2; 32 (S.D. Ohio Aug. 28, 2017) ($250,000 class action settlement for unpaid overtime and statutory damages).  Huot Decl. ¶ 4.

Faruqi & Faruqi, LLP is well qualified to prosecute this action and has successfully done so,

as evidenced—even at this early stage of the litigation—by the firm's successful opposition to Defendants' motion to dismiss (*see* ECF No. 72) and the favorable settlement with Whole Foods, of which Plaintiff now seeks approval.  Therefore, adequacy has been satisfied and the Court should appoint Faruqi & Faruqi, LLP as Class Counsel.

### F.   <u>Superiority</u>

In addition to imposing a predominance standard (*see supra* § I(C)), Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy."  In assessing superiority, the Court must consider: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action.  Rule 23(b)(3).  Here, each of these factors weighs in favor of finding superiority.

First, the number of Officers who joined the litigation as opt-in plaintiffs demonstrates that Class Members do not have a strong interest in conducting separate actions.  *Id.* ¶ 10.  Second, despite this action being well-known among Class Members, to Plaintiff's and counsel's knowledge, no similar actions have been filed by individual Officers.  *Id.* ¶ 11.  Accordingly, settlement on a class basis is superior to other available methods for the fair and efficient resolution of this action.  The alternative would be the potential filing of hundreds of individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's or the Parties' time and resources.  *See Elliot*, 2012 WL 6024572 at *2 (finding settlement in wage-and-hour case would conserve judicial resources and is more efficient for class members).  Although Plaintiff seeks approval of a settlement with Whole Foods, certification of the Class would also avoid the possibility of conflicting determinations and the imposition of different and perhaps incompatible standards of

conduct on Defendant.

Third, Plaintiff, Class Members, and many of Defendant's stores are located in this District, so venue is appropriate. Indeed, the PDP exists only within the confines of the CNY—and largely in Manhattan—making the Southern District of New York the most sensible, convenient, and appropriate venue for this dispute and approval of this settlement. *See* Complaint ¶¶ 1, 68.

Fourth, because this action is being settled as to the claims against Whole Foods, the CNY, and the NYPD involving work performed through PDP shifts at Whole Foods locations, there will be no difficulties in managing this case as a class action. Moreover, the Parties have formulated a thorough, detailed procedure for the administration of their settlement and have selected a competent Settlement Administrator to assist with this same. *See supra* at 3-6; Settlement Agreement.

Class treatment will create uniform resolution of the issues, and achieve judicial economy, convenience and fairness to all Parties. Accordingly, Plaintiff respectfully requests that the Court preliminarily certify the Class pursuant to Rule 23 to effectuate this settlement.

## II.   <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (discussing the "strong judicial policy in favor of settlements, particularly in the class action context"); *Marroquin Alas*, 2016 WL 3406111, at *4 ("Generally, class actions are complex and consume a tremendous amount of time and resources."); *Elliot*, 2012 WL 6024572, at *3 (stating in the wage-and-hour context, "Class actions are generally complex and preparing and putting evidence to support plaintiffs' position would consume tremendous time and financial resources."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

The approval of a proposed class action settlement is a matter of discretion. *See Maywalt v.*

*Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation[.]" *Clark v. Ecolab, Inc.*, No. 04 Civ. 4488(PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009).

Under Rule 23, a court's review of a proposed class settlement is a "two-step process." *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Initially, the court decides whether the settlement should be preliminarily approved and, if so, "notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id.* At the preliminary approval stage—the present stage in this matter—the Court's review is relatively lenient, as it is difficult to adjudge the appropriateness of a class action settlement prior to the dissemination of notice and an opportunity for "the proposed settlement . . . to be tested in a fairness hearing[.]" *See, e.g.*, *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006). Indeed, to grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 13:13 (noting that "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (court's first-stage analysis consists of a review for "obvious deficiencies").

Further, "[f]airness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their]

judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 CIV 10240(CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g.*, *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472(KBF)(DCF), 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E*Trade Fin. Corp.*, No. 10 Civ. 4030(RJH)(DCF), 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451(RLE), 2011 WL 4599773, at *1 (S.D.N.Y. June 3, 2011) (same).

Here, as detailed below, the settlement is procedurally fair, substantively fair, and satisfies each of the nine factors delineated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Accordingly, the Court should grant preliminary approval and authorize the Parties to distribute the Settlement Notices and Claim Forms to all Class Members.

### A.     The Settlement is Procedurally Fair

The Parties' settlement is procedurally fair, thus warranting preliminary approval. To make this determination, "courts examine the settlement's terms and the negotiating process leading to settlement." *Elliot*, 2012 WL 6024572, at *3. Here, Plaintiff engaged in a thorough investigation, with the assistance of Class Counsel, even before filing his claims against Defendant. *See* Huot Decl. ¶¶ 5-8; 12-13; 16-19. The settlement was the result of several months of extensive negotiations wherein the Parties exchanged numerous demands, offers, counter-demands, and counter-offers. *Id.* ¶¶ 15-19. More importantly, prior to the exchange of any settlement proposals, Defendant provided Plaintiff with comprehensive discovery for every single Class Member who worked at a Whole Foods location through the PDP, including time records and earnings data. *Id.* ¶ 16. The substantial

discovery allowed Class Counsel to calculate precise alleged damages for every single Class Member and negotiate vigorously on their behalf to secure a settlement that represents a ***remarkable 73% recovery*** of all of their potential wage damages.  *Id.* ¶ 20.

Under these circumstances, a presumption in favor of procedural fairness arises.  *See Rivas v. Dinex Grp., LLC*, No. 20-cv-03117, 2021 WL 2850627, at *2 (S.D.N.Y. July 8, 2021) (finding that the proposed settlement was procedurally fair "because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims through factual and legal investigation.") (citing *Visa U.S.A.*, 396 F.3d at 117); *see also Elliot*, 2012 WL 6024572, at *3 (finding procedural fairness where the parties exchanged discovery).  In addition to the reasons detailed *infra* § II(B), the settlement terms themselves support a finding of procedural fairness because the settlement is for a reasonable and substantial sum, allocation thereof is based on Class Members' actual damages, and the settlement procedure provides Class Members with an opportunity to opt out of or object to the terms.  *See* Settlement Agreement §§ II(A)-(D), III(A)-(I).

### B.      The Settlement is Substantively Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the factors set forth in *Grinnell*.  *E.g.*, *Marroquin Alas*, 2016 WL 3406111, at *4-5 (reviewing *Grinnell* factors and approving wage-and-hour settlement).  Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation" (*Newberg* § 13.13) to determine whether the settlement falls within "the range of reasonableness" (*id*. at § 13.15), it is useful for the Court to consider the criteria on which it will ultimately adjudge the settlement.

The *Grinnell* factors are: (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages;  (vi) the risks of maintaining the class action through the trial;  (vii) the ability of the defendant to withstand

a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.  The *Grinnell* factors weigh in favor of approval of the settlement, and certainly in favor of preliminary approval.

>    **i.      Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to summary judgment motions or trial, the Parties avoid significant expense and delay.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Marroquin Alas*, 2016 WL 3406111, at *4 (approving $282,500 settlement and stating "[h]ere, significant discovery and statistical experts would be required followed by a fact-intensive trial.  Preparing and presenting evidence to support Plaintiffs' position would consume tremendous time and resources"); *Frank*, 228 F.R.D. at 184-85 (finding a $75,000 wage-and-hour matter complex, noting that "the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved").

This case is no exception, with a $185,000 fund and 396 Class Members with both federal and State claims, further litigation here would cause substantial expenses and delay.  Indeed, additional pre-class certification and potential post-certification discovery would need to be completed.  Plaintiff would file a motion for class certification under Rule 23 and, prior to that, a separate motion for conditional certification under the FLSA.  Further, Defendant would likely oppose both motions and, if the proposed FLSA Collective were conditionally certified, also file a motion to decertify the same.  In addition, the Parties would need to complete document discovery, including the search for and production of electronically stored information, and several (if not dozens of) depositions, after which

the Parties would likely file competing motions for summary judgment. If the Court denied the Parties' summary judgment motions, a fact-intensive trial would necessarily follow. A trial would be lengthy and complex, and would consume significant time and resources from both the Parties and the Court. Any judgment might also be appealed, further extending the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

### ii.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Because Settlement Notice has not yet been issued, the Court should more fully analyze this factor after Class Members have been notified of the settlement and given the opportunity to opt out or object. *See Caballero v. Senior Health Partners, Inc.*, No. 16-cv-00326(CLP), 2018 WL 6435900, at *4 (E.D.N.Y. Dec. 7, 2018) ("The second *Grinnell* factor – the reaction of the Class – could not be evaluated at the time of the preliminary approval stage[.]"); *Parker v. City of N.Y.*, No. 15-cv-6733(CLP), 2018 WL 6338775, at *4 (E.D.N.Y. Dec. 4, 2018) (same); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (second *Grinnell* factor is considered only "to the limited extent possible at the preliminary approval stage").

That said, it should be noted that Plaintiff strongly supports the settlement and, even at this early stage in the process – before any FLSA or settlement notices have been issued – 22 Officers have already joined this action as opt-in plaintiffs. Huot Decl. ¶ 10.

### iii.   Discovery Has Advanced Far Enough for the Parties to Evaluate the Strengths and Weaknesses of the Case (*Grinnell* Factor 3)

The Parties completed extensive enough discovery to recommend settlement. *Id.* ¶¶ 5-8; 12-13; 16-19. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Quow v. Accurate Mech. Inc.*, No. 1:15-CV-09852 (KHP), 2018 WL 3368673, at *3 (S.D.N.Y. July 10, 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d

516, 537 (3d Cir. 2004)).  The Parties' discovery here meets this standard.

Class Counsel conducted a thorough investigation and legal research on the underlying merits of the potential class claims, the likelihood of obtaining liquidated damages and the proper measure of damages.  Huot Decl. ¶¶ 6-7.  They also researched Defendant's likely affirmative defenses.  *Id.* After filing, Class Counsel conducted further investigations including, but not limited to, interviewing Plaintiff and certain Class Members, some of whom joined this action as opt-in plaintiffs.  *Id.* ¶ 12. While the Parties did not engage in formal discovery, they exchanged voluminous discovery in connection with their months-long settlement negotiations, as well as time records and compensation data related to each Class Member who worked at a Whole Foods location through the PDP.  *Id.* ¶¶ 16-18.  Before any negotiations took place, Class Counsel analyzed all records and prepared detailed damage calculations for each individual Class Member.  *Id.* ¶ 16.  Armed with this data and analysis, Class Counsel was able to vigorously negotiate on behalf of the Class Members to secure a settlement that represents a 73% recovery of their best-case scenario wage damages.  *Id.* ¶¶ 19-20.

These facts strongly favor preliminary approval.  *See Marroquin Alas*, 2016 WL 3406111, at *4 (sampling of pay records, employee handbooks, and company policies sufficient to evaluate settlement); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

### iv. Plaintiff Would Face Significant Risks if the Case Proceeded (*Grinnell* Factors 4 & 5)

"Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.*,  171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783,

at *6 (S.D.N.Y. June 25, 2007).   Although Plaintiff believes his case is strong, it is subject to considerable risk, particularly in light of some decisions in the Second Circuit in which courts have declined to grant Rule 23 class certification or have decertified FLSA collectives.  *See, e.g.*, *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-cv-5633 (ARR) (JO), 2018 WL 1597389, at *1 (E.D.N.Y. Apr. 2, 2018) (decertifying collective action); *McEarchen v. Urban Outfitters, Inc.*, No. 13-CV-3569 (RRM) (JO), 2017 WL 3912345, at *3 (E.D.N.Y. Sept. 6, 2017) (adopting report recommending decertification of collective action due to need for individualized determinations as to class members' exempt or non-exempt statuses); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-cv-8333(ALC)(SN), 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017) (decertifying FLSA class of management trainees and denying class certification); *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 282, 299 (S.D.N.Y. 2015) (decertifying FLSA class of personal bankers and denying class certification); *Hernandez v. Fresh Diet, Inc.*, No. 12-cv-4339 (ALC)(JLC), 2014 WL 5039431, at *2, *9 (S.D.N.Y. Sept. 29, 2014) (decertifying FLSA class of allegedly misclassified workers and denying class certification).

Even if successful on his anticipated class certification and conditional certification motions, as well as in opposing Defendant's likely motion for decertification of the FLSA Collective, further litigation would present significant risks to Plaintiff.  In fact, this is true even if this case proceeded to a trial on the merits.  To the extent a class is certified under Rule 23, the class will be comprised of former and presently employed Officers, a number of whom may not wish to participate in pre-trial discovery and trial of this action.  Moreover, Plaintiff would have to overcome Defendant's defenses, including its contentions that Plaintiff and Class Members are not entitled to protections under the FLSA and NYLL because they are supposedly not Defendant's employees, that Plaintiff does not qualify as a "freelancer worker" under FIFA, and that Defendant does not qualify as a "hiring party" under FIFA, either.  While Class Counsel believe that they could ultimately establish both liability

and damages, Defendant is equally confident in its defenses.   Proceeding to trial would require

significant additional factual development and perhaps expert testimony.   *See, e.g.*, *Marroquin Alas*,

2016 WL 3406111, at *5 (noting that "establishing liability would be a time-consuming and costly

process" and approving settlement).   Class Counsel are experienced and realistic, and understand that

the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are

inherently uncertain in terms of outcome and duration.   The proposed settlement alleviates these

uncertainties.   This factor therefore weighs in favor of approval.

### v.   Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6)

Should the case proceed, Defendant would likely oppose Plaintiff's applications for Rule 23

class certification of the NYLL claims and for conditional certification of a collective action under

the FLSA.   Also, even if the FLSA collective were conditionally certified, Defendant would seek

decertification.   If Defendant's efforts were unsuccessful, Whole Foods would likely appeal the

Court's determinations.   *See Frank*, 228 F.R.D. at 186 ("If settlement were disapproved, it is likely

that [defendant] would challenge the class certification.   While plaintiffs might indeed prevail, the

risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement.");

*see also Elliot*, 2012 WL 6024572, at *4 (risk of maintaining certification weighed in favor of

settlement approval where plaintiff would face vigorous opposition).   Settlement eliminates the risks

and delay inherent in this process.   As such, this factor weighs in favor of approval.

### vi.   Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)

Defendant is a large corporation and could withstand a greater judgment.   However,

Defendant's ability to withstand a greater judgment "standing alone, does not suggest that the

settlement is unfair."   *Frank*, 228 F.R.D. at 186 (quoting *In re Holocaust Litig*, 80 F. Supp. 2d at 178

n.9).   As the Honorable Sidney H. Stein explained in *Painewebber*:

> [E]vidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, since the prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures. However, the converse is not necessarily true; *i.e.*, the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate. . . . PaineWebber has the ability to withstand a judgment in this action of greater than [the settlement amount]. Accordingly, this element of the *Grinnell* test weighs neither for nor against approval of the Settlement.

171 F.R.D. at 129, *aff'd by* 117 F.3d 721 (2d Cir. 1997).

Thus, this factor is neutral and does not weigh against granting preliminary approval.

### vii.     The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 & 9)

Here, the total potential wage damages for all 396 Class Members amount to $253,591.84. Huot Decl. ¶ 21. Defendants have agreed to settle this case for $185,000, which amounts to an impressive 73% recovery of all such damages. *See id.* ¶ 20; *see* also Settlement Agreement § II(A)(1). The proposed settlement represents substantial value for Class Member's best case scenario damages, especially given the attendant risks of litigation, including prevailing on motions to certify the Class and FLSA Collective, sustaining certification of the FLSA Collective through trial, surviving a motion for summary judgement, succeeding on all claims at trial, and prevailing on appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Holocaust Litig.,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

This settlement reflects a reasonable compromise and the 73% recovery percentage substantially exceeds the range of reasonableness that is routinely approved in other wage-and-hour

settlements within this Circuit.  *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Wang v. Masago Neo Asian Inc.*, No. 14-6249(DRH)(ARL), 2016 WL 7177514, at *2 (E.D.N.Y. Sept. 26, 2016) (approval of settlement that provided a 30% recovery of potential damages); *Griffin v. Aldi, Inc.*, No. 5:16-cv-00354-LEK-ATB, ECF Nos. 104-1 at 14; 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Surdu v. Madison Glob., LLC*, No. 15-CV-6567 (HBP), 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) (finding settlement reasonable where class members receive approximately 50% of economic damages, "in light of the risks of litigation[.]"); *Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531 (PAE), 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (finding a recovery figure of 24.95% to be reasonable "[i]n light of [] litigation risks[.]"); *Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15-cv-6848 (KBF), 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks); *Cohetero v. Stone & Tile, Inc*., No. 16-CV-4420 (KAM)(SMG), 2018 WL 565717, at *7 (E.D.N.Y. Jan. 25, 2018) (approval of settlement for "approximately two-thirds of [ ] claimed, actual unpaid wages, which is not unreasonable in light of the risks of litigation.").

Indeed, weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable and certainly warrants notice to the Class.  *See Elliot*, 2012 WL 6024572, at *4 (granting final approval of settlement and finding that "meaningful payment to class members [] is outweighed by the mere possibility of further relief.").

Thus, the nine *Grinnell* factors weigh heavily in favor of preliminary approval of the settlement.  If a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion'" (*Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*,

218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## III.   THE NOTICE PLAN, THE DISTRIBUTION PROCESS, AND THE RELEASES SHOULD BE APPROVED

The proposed Settlement Notice, which is attached to the Huot Decl. as Exhibit B, complies with

due process and Rule 23.  Notice must provide:

> [T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . .  The notice must clearly and concisely state in plain, easily understood language:
>
> (i)    the nature of the action;
>
> (ii)   the definition of the class certified;
>
> (iii)  the class claims, issues, or defenses;
>
> (iv)  that a class member may enter an appearance through an attorney if the member so desires;
>
> (v)   that the court will exclude from the class any member who requests exclusion;
>
> (vi)  the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B).

The Court is given broad power over which procedures to use for providing notice so long as

the procedures are consistent with the standards of reasonableness that the due process clauses in the

U.S. Constitution impose.  *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he

district court has virtually complete discretion as to the manner of giving notice to class members.").

"When a class settlement is proposed, the court 'must direct to class members the best notice

that is practicable under the circumstances.'" *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22,

26 (2d Cir. 2014) (quoting Fed. R. Civ. P. 23(c)(2)(B)).  Here, since Defendant has address records

for the Class, notice will be sent by first class mail.  Settlement Agreement § III(D).

The contents of the proposed Settlement Notice exceed the requirements of due process and

Rule 23. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The Settlement Notice describes the terms of the settlement, informs the Class Members about the allocation of attorneys' fees, details the specific claims they will be releasing, and provides specific information regarding the date, time, and place of the final approval hearing. *See* Ex. B.[7] This provides more than sufficient due process to Class Members and complies with Rule 23. *See Marroquin Alas*, 2016 WL 3406111, at *6 (approving similar settlement notices to workers in wage-and-hour class action).

## IV.     APPROVAL OF THE SETTLEMENT IS APPROPRIATE UNDER THE FLSA

Given that the proposed settlement satisfies Rule 23, it is necessarily appropriate under the FLSA as well. "Because 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Bryant v. Potbelly Sandwich Works, LLC*, No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020) (quoting *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996(CM), 2014 WL 2199427, at *7 (S.D.N.Y. May 23, 2014). For the reasons stated above, the proposed settlement between the Parties warrants approval under Rule 23. As a result, approval of the proposed settlement under the FLSA is also warranted.

## V.     THE COURT SHOULD SET A DATE FOR A FINAL APPROVAL HEARING

The proposed Preliminary Approval Order submitted in connection with this motion (*see* Ex. C) sets forth a proposed sequence of deadlines associated with the settlement. The Parties respectfully request that the Court enter the proposed Preliminary Approval Order and set a Fairness Hearing no earlier than 75 days from the entry of the Court's Preliminary Approval Order.

---

[7] Should the Court grant preliminary approval and schedule a fairness hearing, the date and time of the same will be incorporated into the Settlement Notices.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement, preliminarily certify the Class, designate Faruqi & Faruqi, LLP as Class Counsel, authorize the mailing of the proposed Settlement Notice and Claim Form, and issue an Order scheduling a fairness hearing.

Dated: October 25, 2021
      New York, New York

**FARUQI & FARUQI, LLP**

By:  _/s/ Innessa M. Huot_
    Innessa Melamed Huot
    Alex J. Hartzband
    Taylor J. Crabill

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com
tcrabill@faruqilaw.com

_Attorneys for Plaintiff, the proposed FLSA Collective, and the proposed Class_

26