UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
BURBRAN PIERRE, *on behalf of himself
and others similarly situated*,

                    Plaintiff,

    -against-

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, TD BANK N.A.,
DUANE READE INC., B&H PHOTO VIDEO
PRO AUDIO LLC, BLOOMBERG L.P.,
WHOLE FOODS MARKET GROUP, INC.,
TRIHOP 14TH STREET LLC, and
DOES NOS. 1-10,

                    Defendants.
-----------------------------------------------------X

**OPINION AND ORDER**

1:20-cv-05116 (ALC) (VF)

**VALERIE FIGUEREDO, United States Magistrate Judge**

      Plaintiff Burbran Pierre, along with 28 opt-in plaintiffs,[1] brings this action under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., against the City of New York (the

"City"), the New York City Police Department ("NYPD" and, together with the City, the "City

Defendants"), and T.D. Bank N.A. ("TD Bank"), Duane Reade Inc. ("Duane Reade"), B & H

Photo Video Pro Audio LLC ("B&H Photo"), Trihop 14th Street LLC,[2] Bloomberg L.P.

("Bloomberg" and collectively, the "Vendor Defendants").[3]

---

    [1] There were 23 opt-in plaintiffs at the time the instant motion was filed. Since then, five
additional plaintiffs have opted-in, for a total of 28 opt-in plaintiffs.

    [2] Trihop has not appeared in this action and a certificate of default has been entered by
the Clerk of Court. ECF No. 47.

    [3] Plaintiff also brings claims against the Vendor Defendants under the New York Labor
Law ("NYLL"), N.Y. Lab. Law §§ 1, *et seq*., and the Freelance Isn't Free Act ("FIFA"), N.Y.C.
Admin. Code §§ 20-297, *et seq*. Additionally, Plaintiff individually asserts a retaliation claim
against the NYPD under the FLSA, 29 U.S.C. §§ 201, *et seq*.

Plaintiff alleges that Defendants engaged in a common pattern and practice of violating the FLSA by failing to compensate NYPD officers for work they performed as part of the NYPD's Paid Detail Program ("PDP"). Plaintiff moves for conditional certification of a collective action under the FLSA and for approval of his proposed notice. ECF No. 101 at 2, 18. Plaintiff also requests equitable tolling. Id. at 22. The City Defendants do not oppose Plaintiff's certification motion; the Vendor Defendants do oppose it. See ECF Nos. 125-26.

For the reasons below, Plaintiff's motion for conditional certification is **GRANTED**.

## BACKGROUND

### A. Factual Background[4]

Plaintiff Burbran Pierre, along with 28 opt-in plaintiffs, are past and present NYPD officers, detectives, sergeants, and lieutenants ("Officers") who participated in the PDP, performing off-duty uniformed security work for the Vendor Defendants in exchange for hourly wages. Compl. ¶¶ 1, 68, 124, 162-65, 208. Officers are assigned to work at various businesses, which have been approved by the NYPD, including, for example, retail chains, department stores, banks, or other office buildings. Id. ¶¶ 72-75. The program allows participating businesses to have "a highly visible police presence." Id. ¶ 69.

#### 1. The NYPD's Paid Detail Program

The NYPD sets the parameters for both business and Officer participation in the PDP. Id. ¶¶ 76, 83. To qualify for the PDP, businesses are required to provide certain information to the

---

[4] The facts recounted herein are drawn from the Complaint (ECF No. 1) and the Declarations of Burbran Pierre (ECF No. 103), Angel Rivera (ECF No. 104), James Nonnon (ECF No. 105), Kyna Phillip (ECF No. 106), Carlos Guadalupe (ECF No. 107), Steven Singh (ECF No. 108), Ryan Loomis (ECF No. 109), Robinson Martinez (ECF No. 110), Wendy Earls (ECF No. 111), Joseph Rosario (ECF No. 112), Diony Reyna (ECF No. 113), Christopher Dozier (ECF No. 114), Alexandria Kirkland-Clarke (ECF No. 115), Luc Vaval (ECF No. 116), and Jean-Francois Pierre (ECF No. 117).

NYPD, and the NYPD conducts a general background and credit check of each business. Id. ¶¶ 75, 79-80. Participating businesses must also sign a "Participation Agreement" and submit a certificate of insurance. Id. ¶ 81. To participate in the PDP, an Officer must meet various criteria, including: having more than one year of service in the NYPD; maintaining full-duty status throughout the duration of the Officer's participation in the PDP; obtaining approval from an Officer's commander for participation in the program; submitting a written application and tax documentation; and undergoing a review of the Officer's work record. Id. ¶¶ 84, 87-88.

The NYPD maintains an online portal through which participating businesses may schedule Officers to perform off-duty uniformed security work. Id. ¶ 91. The NYPD controls when businesses may schedule Officers for a shift and requires that a shift last from four to 12 hours. Id. ¶ 92. The NYPD also evaluates each requested assignment and, based on its assessment of safety and security concerns, determines the minimum number of Officers necessary for the assignment and the number of Officers required to supervise. Id. ¶ 93. Additionally, the NYPD controls and determines when Officers may accept details, the number of hours per month an Officer may work as part of the PDP, and the dress code for Officers while working a shift in the PDP. Id. ¶¶ 94, 106-11.

As for wages, the NYPD establishes uniform hourly rates for PDP details based on each Officer's rank. Id. ¶¶ 124-25, 127, 129; see also ECF No. 102-1, Exs. B-C. The NYPD classifies Officers as independent contractors for PDP details and requires that payment be made to Officers on an IRS Form 1099, as opposed to an IRS Form W-2. Compl. ¶¶ 131-32. Businesses do not pay Officers directly; rather, the NYPD administers payment through the Paid Detail Unit. Id. ¶¶ 134-35. According to the program's guidelines, Officers participating in the PDP can

expect to get paid four-to-six weeks after a shift is completed, via a check from the vendor that is delivered through the Paid Detail Unit of the NYPD. ECF No 103-1 at 4.

The participating businesses coordinate with the NYPD to assess how many Officers the business needs and post solicitations for assignments on the PDP portal for Officers to view and accept. Compl. ¶¶ 136, 138. Participating businesses direct Officers to the exact location where they are to work during a shift, determine the meal and break policies for Officers, dictate how Officers interact with customers, and require Officers to report their work in activity logs at pre-determined intervals. Id. ¶¶ 141-43. While performing a PDP shift, Officers are required to comply with all NYPD policies as well as the rules and regulations of each Vendor Defendant. Decl. of Burbran Pierre ¶ 4, ECF No 103; Decls. of Angel Rivera, James Nonnon, Kyna Phillip, Carlos Guadalupe, Steven Singh, Ryan Loomis, Robinson Martinez, Wendy Earls, Joseph Rosario, Diony Reyna, Christopher Dozier, Alexandria Kirkland-Clark, Luc Vaval, and Jean-Francois Pierre (collectively, "Decls. of the Opt-In Plaintiffs") ¶ 4, ECF Nos. 104-117.

  2. *Alleged FLSA Violations*

The Complaint alleges that the NYPD and Vendor Defendants engaged in a common pattern and practice of (1) failing to compensate Officers for the work they performed through the PDP, and (2) denying them the federal minimum wage for all hours worked. Compl. ¶¶ 3-4, 7, 150-57, 209. Specifically, Plaintiff and the 14 opt-in plaintiffs who submitted declarations claim that Defendants routinely delayed payment of wages to Officers beyond their regularly scheduled paydays—routinely failing to pay Plaintiff and other Officers for PDP details for weeks, and even months, after the PDP shift was completed. Id. ¶¶ 3, 150-52, 209, 251-57; Decls. of Opt-In Plaintiffs ¶¶ 9-10, ECF Nos. 104-117. For example, Plaintiff cites to specific PDP shifts where he alleges that he was not compensated until several weeks after he completed

4

the shift. See Decl. of Burbran Pierre ¶¶ 17-21, ECF No. 103. The opt-in Plaintiffs similarly allege that Defendants routinely failed to pay them for weeks or even months after a completed PDP shift. See Decls. of the Opt-In Plaintiffs ¶ 9, ECF Nos. 104-117; Decls. of Angel Rivera, Carlos Guadalupe, and Steven Singh ¶¶ 12-13, ECF Nos. 104, 107-08; Decls. of James Nonnon and Kyna Phillip ¶ 13, ECF Nos. 105-06.

Additionally, Plaintiff alleges that Defendants had a common practice and policy of denying Officers who worked in the PDP the federal minimum wage for all hours worked. Compl. ¶¶ 4, 153-57, 209, 259-264. As Plaintiff explains, Defendants had a common policy and practice of not paying Officers for all of their hours worked on PDP shifts, resulting in a failure to pay the Officers at federal minimum wage. See Decl. of Burbran Pierre, ¶¶ 9-10.

### B. Procedural Background

On July 3, 2020, Plaintiff filed the Complaint in this action. ECF No. 1. Since that time, 28 NYPD Officers have filed "Consent to Join" forms, opting-in as plaintiffs. ECF Nos. 14, 16-19, 29, 33, 39, 59, 63, 68, 99, 122, 138, 143, 146, 171.

On September 18, 2020, the City Defendants answered the Complaint. ECF No. 41. On February 9, 2021, the Vendor Defendants moved to dismiss Plaintiff's Complaint. ECF No. 60. The motion to dismiss was denied on August 31, 2021. See ECF No. 72. TD Bank, B&H, and Bloomberg separately answered the Complaint on September 14, 2021. ECF Nos. 79, 81, 83. Duane Reade answered the Complaint on September 30, 2021. ECF No. 90. Whole Foods has not answered the complaint.[5]

---

[5] Plaintiff reached a settlement with Whole Foods on behalf of himself and other similarly situated NYPD Officers. ECF Nos. 96-98. Plaintiff is not pursuing collective certification against Whole Foods as part of this motion. Decl. of Innessa M. Hout ¶ 6, ECF No. 102.

On November 2, 2021, Plaintiff filed the instant motion, accompanied by Plaintiff's declaration and the declaration of 14 opt-in Plaintiffs. See ECF Nos. 100-117. The City Defendants do not oppose Plaintiff's request for conditional certification of a class defined as "all non-exempt current and former Police Officers, Detectives, Sergeants and Lieutenants employed by the NYPD who performed work through the Paid Detail Program for a Vendor Defendant from July 3, 2017 to present." ECF No. 125 at 1. Nor do the City Defendants oppose Plaintiff's request for equitable tolling, to the extent that it seeks to toll the statute of limitations for the FLSA Putative Class from November 2, 2021 (the date the instant motion was filed) until the date the Court decides the motion. Id. Additionally, the City Defendants and Plaintiff agreed on a proposed "Notice of Lawsuit" to disseminate to prospective class members. Id. at 1, App. A. The City Defendants do oppose some of Plaintiff's methods of dissemination of the notice. Id. at 2. The Vendor Defendants oppose conditional certification of the class and also oppose equitable tolling. See ECF No. 126.

## LEGAL STANDARDS

### A. The FLSA and Section 216(b)

FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To that end, the statute requires employers to pay employees a federal statutory minimum wage. Id. § 206. Section 216(b) of the FLSA confers a private right of action upon employees. 29 U.S.C. § 216(b).

The FLSA authorizes employees to file suit on behalf of "other employees similarly situated," but only if such employees "consent in writing." 29 U.S.C. § 216(b); see also Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 320 (S.D.N.Y. 2007) (noting that employees

6

can maintain a collective action against an employer where the employees are (1) "similarly situated," and (2) consent to become a party in writing). Thus, putative class members must "opt-in" to participate in a FLSA collective action. See Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003). "[O]nly by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled.'" Id. (citation omitted).

Unlike class actions brought under Federal Rule of Civil Procedure 23, FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, or representativeness. Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005); see also Fed. R. Civ. P. 23(a). In "appropriate cases," a district court has discretion to implement § 216(b) by facilitating notice of the pendency of the action and of a potential plaintiff's opportunity to opt-in as a represented plaintiff. Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010); see also Sanchez v. Salsa Con Fuego, Inc., No. 16-CV-473 (KJS) (BCM), 2016 WL 4533574, at *2 (S.D.N.Y. Aug. 24, 2016). Orders authorizing notice to potential plaintiffs are "often referred to as orders 'certifying' a collective action," though the FLSA does not contain an explicit certification provision. Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010).

## B. Conditional Certification of a FLSA Collective Action

The Second Circuit has approved a "two-step process" to certify a FLSA collective action. Mathew v. SMZ Impex, Inc., No. 17-CV-9870 (JPO), 2019 WL 4409442, at *3 (S.D.N.Y. Sept. 16, 2019). In the first step, the court determines whether "similarly situated" potential plaintiffs exist who should receive notice of the pending FLSA action. Myers, 624 F.3d at 555. "The court may send this notice after plaintiffs make a 'modest factual showing' that they

and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Id. (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

At this first step—often referred to as "conditional certification"—"the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Hypolite v. Health Care Servs. of New York Inc., 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017) (quoting Cunningham v. Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). Instead, a plaintiff need only make a showing that there are other employees "who are similarly situated with respect to their job requirements and . . . pay provisions." Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (quoting Myers, 624 F.3d at 555). "If the employees are similarly situated in these material respects, 'any factual variances that may exist between the plaintiff and the putative class [will] not defeat conditional certification.'" Id. (quoting Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007)) (alteration in original).

The modest factual showing standard is very low and "considerably less stringent than the requirements for class certification under Rule 23." Poplawski v. Metroplex on the Atl., LLC, No. 11-CV-3765, 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012) (citation and quotations omitted). Plaintiffs may make such a showing "by relying on their own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members." Hallissey v. Am. Online, Inc., No. 99-CV-3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) (citation omitted). A plaintiff "must provide actual evidence of a factual nexus" between her own experience and the experiences of those she "claim[s] are similarly situated rather than mere conclusory allegations." Qing Gu v. T.C. Chikurin, Inc., No. 13-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014). "[A]n FLSA collective action may be conditionally

certified upon even a single plaintiff's affidavit." <u>Mathew</u>, 2019 WL 4409442, at *3 (citation omitted). "This initial burden is limited, in part, because the determination that the parties are similarly situated is merely a preliminary one and may be modified or reversed" at the second stage of the inquiry. <u>Lynch</u>, 491 F.Supp.2d at 368 (quotation marks and citation omitted).

The second step of the collective-action certification process occurs after notice has been sent, the opt-in period has closed, and discovery has ended. <u>Mendoza v. Ashiya Sushi 5, Inc.</u>, No. 12-CV-8629 (KPF), 2013 WL 5211839, at *3 (S.D.N.Y. Sept. 16, 2013). At this stage, the district court will have a "fuller record" and then can determine whether a collective action "may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." <u>Myers</u>, 624 F.3d at 555. If the court determines that the opt-in plaintiffs are not similarly situated, the collective action may be decertified and "the opt-in plaintiffs' claims will be dismissed without prejudice." <u>Jackson</u>, 298 F.R.D. at 158 (citing <u>Myers</u>, 624 F.3d at 555).

## DISCUSSION

### A.  Conditional Certification of a Collective Action

Plaintiff seeks conditional certification of a collective action for a class defined as "all similarly situated NYPD Police Officers, Detectives, Sergeants, and Lieutenants (collectively "Officers") who performed work through the Paid Detail Program for any of the Vendor Defendants at any time from July 3, 2017 to the present." Decl. of Innessa Huot ¶ 5, ECF No. 102. Here, Plaintiff has made the "modest factual showing" necessary to establish that other potential plaintiffs exist who were subject to a common policy and practice by Defendants with regards to the payment of wages that allegedly violated the FLSA. And, tellingly, the City Defendants do not contend otherwise as they do not oppose conditional class certification.

In addition to the allegations in the complaint, Plaintiff submitted his own sworn declaration (ECF No. 103) and the sworn declaration of 14 other opt-in Plaintiffs (ECF Nos. 104-17)—all of whom attest to participating in the PDP, having been paid in the same manner, and performing work at the Vendors who participated in the PDP. See Decls. of Burbran Pierre and the Opt-In Plaintiffs ¶¶ 3, 5, 9, ECF No. 103-117. As those declarations demonstrate, Defendants routinely failed to pay Officers participating in the PDP for weeks or even months after they completed their PDP shifts, and long after scheduled paydays. See Decl. of Burbran Pierre ¶¶ 3, 17-21; Decls. of the Opt-in Plaintiffs ¶ 9, ECF Nos. 104-117; Decls. of Angel Rivera, Carlos Guadalupe, and Steven Singh ¶¶ 12-13, ECF Nos. 104, 107-08; Decls. of James Nonnon and Kyna Phillip ¶ 13, ECF Nos. 105-06. Moreover, the declarations indicate that, in other instances, Defendants did not pay Officers participating in the PDP for hours they actually worked. See Decls. of Burbran Pierre and the Opt-In Plaintiffs ¶¶ 9-10, ECF Nos. 103-117. The declarations of Plaintiff and the opt-in Plaintiffs thus demonstrate that all of these Officers participated in the PDP and were subject to the same types of FLSA violations. See id. ¶¶ 3, 5, 9.

Plaintiff also submitted documentary evidence, such as pay stubs and an excerpt of his Paid Detail Assignment Log. See Decl. of Burbran Pierre, Exs. D-F, ECF No. 103-4 to 103-6. Multiple opt-in Plaintiffs also attached documentation to their declarations, such as paystubs and paychecks, their Paid Detail Assignment Logs, and records showing the amounts and timing of the Vendor Defendants' payments. See, e.g., ECF Nos. 104-1, 105-1, 105-2, 106-1, 106-2, 107-1, 109-1. Additionally, both Plaintiff and the opt-in Plaintiffs recount that they have had numerous conversations with other Officers who also performed work for the Vendor Defendants through the PDP, and who confirmed that they were paid their wages late and sometimes were not paid their wages at all for shifts worked in the PDP. Decls. of Burbran Pierre

and the Opt-In Plaintiffs ¶ 10, ECF Nos. 103-117; see also Mendoza, 2013 WL 5211839, at *4 (relying on representation in declaration that plaintiff had spoken to other employees who were similarly not paid overtime wages, as evidence supporting modest factual showing for conditional certification); Lubas v. JLS Grp., Inc., No. 18-CV-6611, 2020 WL 4210754, at *7 (E.D.N.Y. July 22, 2020) ("[W]here there are declarations from multiple plaintiffs, with each plaintiff corroborating or supporting each other's statements, even if somewhat thin on details, such proof is sufficient to meet the low factual threshold for FLSA collective certification."); Garcia v. Spectrum of Creations, Inc., 102 F. Supp. 3d 541, 548-49 (S.D.N.Y. 2015) (certifying limited collective action where affidavits of two employees "corroborate[d] each others' personal treatment and observations of the treatment of other employees" despite noting that "[w]hile it would be helpful to have the time and dates of conversations, it is not surprising that plaintiffs would be unable to recall such specifics"). Finally, Plaintiff supports his motion with documentation of organization-wide guidelines and policies, providing a copy of the PDP Guidelines, which Plaintiff explains is communicated to all Officers and explains how and when participating Officers will get paid. See Decl. of Burbran Pierre, Ex. A, ECF No. 103-2.

Collectively, the pleadings and declarations demonstrate that Plaintiff and the opt-in Plaintiffs all participated in the PDP and were subjected to the same practice by Defendants concerning payment of their wages. See Sanchez v. Gansevoort Management Group, Inc., No. 12-CV-75 (KBF), 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013) ("Because the pleadings and the affidavit, taken together, suggest a common policy of failing to pay required overtime premiums, that showing suffices for conditional certification."). Courts "'often authorize notice based solely on the personal observations of one plaintiff's affidavit.'" Aleman-Valdivia v. Top Dog Plumbing & Heating Corp., No. 20-CV-421 (LDH) (MMH), 2021 WL 4502479, at *4

(E.D.N.Y. Sept. 30, 2021) (quoting Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014)). By contrast, Plaintiff has "marshaled a more significant record," with declarations from himself and 14 opt-in Plaintiffs, all of whom describe a similar personal experience in the PDP, including, as it specifically pertains, to payment of their wages for work performed in the program. Bethel v. BlueMercury, Inc., No. 21-CV-2743 (KPF), 2022 WL 3594575, at *5 (S.D.N.Y. Aug. 22, 2022) (conditionally certifying class where plaintiffs submitted four declarations describing their personal experience with their employer's policies); see also Lynch, 491 F. Supp. 2d at 369-370 (conditionally certifying class based on the deposition testimony of four opt-in plaintiffs and declarations of three opt-in plaintiffs); Sipas v. Sammy's Fishbox, Inc., No. 05-CV-10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditionally certifying class on basis of three affidavits and complaint's allegations); Masson v. Ecolab, Inc., No. 04-CV-4488 (MBM), 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (conditionally certifying class on basis of three opt-in plaintiffs). Taken together, Plaintiff has met his minimal burden, at this initial notice stage, to show that there exist other similarly situated opt-in plaintiffs that were subjected to the same policies by Defendants, allegedly in violation of the FLSA.

The Vendor Defendants nevertheless claim that Plaintiff's showing is insufficient, because Plaintiff has not established that he is similarly situated to *all* of the potential opt-in plaintiffs in the class, or to even a significant proportion of the FLSA collective. ECF No. 126 at 12-13. But the Vendor Defendants cite to no case that requires a plaintiff, at this initial stage, to establish that he was similarly situated to the entire FLSA class. To the contrary, courts in this Circuit "have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit." Hernandez v. Bare Burger Dio Inc., No. 12-CV-7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013). As discussed, Plaintiff has

supported his motion with the declarations of multiple opt-in plaintiffs, all of whom recount similar experiences with Defendants' wage-and-hour practices.

Nor is there any merit to the Vendor Defendants' argument that Plaintiff's allegations are "conclusory" and lack the requisite detail. ECF No. 126 at 13-14. That argument misconstrues the analysis at this stage, which is necessarily based on unproven allegations. See Fasanelli, 516 F. Supp. 2d at 322. Additionally, "where there are declarations from multiple plaintiffs, with each plaintiff corroborating or supporting each other's statements, even if somewhat thin on details, such proof is sufficient to meet the low factual threshold for FLSA collective certification." Lubas, 2020 WL 4210754, at *7; see also, Placinta v. Grazina Pilka, Inc., No. 16-CV-4272, 2018 WL 5024170, at *9, *14 (E.D.N.Y. Oct. 05, 2018) (granting motion for conditional certification where there were multiple affidavits corroborating each other's statements even though the factual record proffered was "ultimately quite thin on facts"). Plaintiff's submissions as a whole satisfy the modest factual showing necessary to support conditional certification of the FLSA class.

Additionally, the Vendor Defendants' arguments that a collective action in this case would lead to fact-specific inquiries and mini-trials across the collective, see, e.g., ECF No. 126 at 16, are premature at this stage. See Barrus v. Dick's Sporting Goods, Inc., 465 F. Supp. 2d 224, 231 (W.D.N.Y. 2006) (noting that where defendants argue at conditional certification stage that plaintiff's complaints are "inherently individualized, fact intensive determinations which do not lend themselves to collective inquiry," defendants "put the 'cart before the horse.'"). At this stage, all Plaintiff needs to show is that notice to potential opt-in plaintiffs is appropriate. Id.

Finally, to the extent that the Vendor Defendants make merit-based or credibility arguments—such as questioning the credibility of the opt-in plaintiffs' declarations, claiming

that there was no FLSA violation, or raising issues concerning joint-employment liability (ECF No. 126 at 15-26)—these arguments are inappropriate at this stage. At this first stage, courts do not examine "whether there has been an actual violation of law." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing Krueger v. N.Y. Tel. Co., 93-CV-1078 (LMM), 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists.")).

Accordingly, the Court approves conditional certification of the following class: all similarly situated NYPD Police Officers, Detectives, Sergeants, and Lieutenants who performed work through the Paid Detail Program for any of the Vendor Defendants at any time from July 3, 2017 to the present. See Decl. of Innessa Huot ¶ 5, ECF No. 102.

### B. Content and Method of Notice

Plaintiff asks the Court to authorize notice to all potential opt-in plaintiffs of their right to join the collective action. ECF No. 101 at 19. As to the content of the notice, the City Defendants and Plaintiff have agreed on a proposed notice. ECF No. 125-1, App. A. The Vendor Defendants contest both the content of the proposed notice and the method of its distribution. ECF No. 126 at 29-30.

A court may authorize the distribution of notice when the Plaintiff has demonstrated that she and potential plaintiffs are similarly situated. Gjurovich, 282 F. Supp. 2d at 104. "Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains 'broad discretion' over the form and content of the notice." Contrera v. Langer, 278 F. Supp. 3d 702, 721 (S.D.N.Y. 2017) (quoting Martin v. Sprint/United Mgmt. Co., No. 15-CV-5237, 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016)). "When exercising its broad discretion to craft appropriate notices in individual cases," the court considers "the overarching policies of the

collective suit provisions," including judicial efficiency and "the advantage of lower individual costs to vindicate rights by the pooling of resources." Fasanelli, 516 F. Supp. 2d at 323 (citations omitted); see also Gjurovich, 282 F. Supp. 2d at 105-06 ("No courts have specifically outlined what form court-authorized notice should take, or what provisions notice issued pursuant to § 216(b) should contain.").

In determining the form and content of the notice, "courts shall be 'guided by the goals of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants.'" Elmajdoub v. MDO Dev. Corp., No. 12-CV-5239 (NRB), 2013 WL 6620685, at *4 (S.D.N.Y. Dec. 11, 2013) (quoting Guzelgurgenli v. Prime Time Specials, Inc., 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012)). "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting Fasanelli, 516 F. Supp. 2d at 323). To that end, notice generally should contain "the purpose of the notice, the nature of the lawsuit, the proposed class composition, the legal effect of joining the lawsuit, the fact that the court has not taken any position regarding the merits of the lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and the legal effect of not joining the lawsuit, the prohibition against retaliation, and the relevant contact information for any inquiries." Jackson, 298 F.R.D. at 169-70.

1. *Method of Notice*

Plaintiff asks for distribution of the notice to the putative class via first class mail, email, text message, and workplace posting. ECF No. 130 at 1. To do so, Plaintiff asks that the Court

order the disclosure of all names, last known addresses, cell phone numbers, personal email addresses, and dates of employment for each putative member of the class. Id. The City Defendants have already agreed to provide Plaintiff with the names, last known addresses, and dates of employment for potential class members. ECF No. 125 at 2. And Defendants do not oppose dissemination of the notice via first class mail. See ECF No. 125 at 2; ECF No. 126 at 30. As such, the dispute with regards to the method of notification is limited to whether the notice should also be disseminated via email, text message, and workplace posting. Defendants argue that notification via first-class mail alone is sufficient. See ECF No. 125 at 3; ECF No. 126 at 30.

 Authorizing notice via electronic means is "[p]ractical" and "further[s] the purpose of notice of a collective action under the FLSA." Cabrera v. Stephens, No. 16-CV-3234 (ADS) (SIL), 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017). Indeed, "given the reality of communications today . . . the provision of email addresses and email notification in addition to notice by first class mail is entirely appropriate." Pippins v. KPMG LLP, No. 11-CV-0377 (CM) (JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012). It is thus standard practice in this Circuit to authorize notice via e-mail. See, e.g., Bethel, 2022 WL 3594575, at *15 (authorizing notice via U.S. mail, email, and workplace posting); Vasto v. Credico (USA) LLC, No. 15-CV-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (authorizing email distribution of notice).

Moreover, Plaintiff requests that notice be posted at each of the 77 NYPD precincts in the City, next to where Officers clock in and out of their shifts. ECF No. 130 at 9.[6] Courts "regularly approve plaintiffs' requests to post notices and consent forms in non-public areas where potential

---

[6] To the extent the Vendor Defendants suggest that Plaintiff is also requesting workplace posting at each Vendor location (ECF No. 126 at 30), Plaintiff's reply brief makes clear that Plaintiff is only seeking to post notices at the 77 NYPD patrol precincts (ECF No. 130 at 9).

collective members are likely to congregate, such as clock-in stations or break rooms." Castillo
v. Perfume Worldwide Inc., No. 17-CV-2972 (JS) (AKT), 2018 WL 1581975, at *17 (E.D.N.Y.
Mar. 30, 2018) (quotation marks and citation omitted); see also Whitehorn, 767 F. Supp. 2d at
449 (Courts "routinely approve requests to post notice on employee bulletin boards and in other
common areas."); Hernandez, 2013 WL 3199292, at *5 (authorizing workplace posting as
notice). And that is so even where, as here, other methods of notice, such as first-class mail or e-
mail, are also authorized. See, e.g., Bethel, 2022 WL 3594575, at *15 (authorizing notice via
mail, email, and workplace posting); Imbarrato v. Banta Mgmt. Servs., Inc., No. 18-CV-5422
(NSR), 2022 WL 1210868, at *6 (S.D.N.Y. Apr. 25, 2022) (same). Indeed, "[p]osting notice in
the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of
the litigation and consider whether to opt in." Mendoza, 2013 WL 5211839, at *9.

     Defendants contend that such posting would be unduly burdensome. See ECF 125 at 5;
ECF 126 at 30. But courts have authorized workplace postings in circumstances where the notice
would be posted in a far greater number of locations than the 77 police precincts at issue here.
See, e.g. Hart v. Crab Addison, Inc., No. 13-CV-6458 (CJS), 2015 WL 365785, at *5 (W.D.N.Y.
Jan. 27, 2015) (approving workplace posting in 136 restaurants across the United States).

     The Court thus grants Plaintiff's request to distribute the notice to potential class
members via first-class mail, email, and workplace posting in the 77 police precincts in New
York City. The City Defendants are directed to provide Plaintiff with the personal email
addresses of the members of the putative collective, in addition to names, last known addresses,
and dates of employment. See Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 488
(S.D.N.Y. 2016) ("Courts in this District commonly grant requests for the production of names,
mailing addresses, email addresses, telephone numbers, and dates of employment in connection

with the conditional certification of a FLSA collective action.") (quoting Martin, 2016 WL 30334, at *19-20). Plaintiff's request to disseminate notice via text message, however, is denied. Plaintiff has not demonstrated that the three other methods of notice would be insufficient to effectuate notice to potential plaintiffs in the class, such that notice via text message to the personal cell phone numbers of potential class members is also required.

    2.  *Content of Notice*

As to the contents of the notice, Plaintiff and the City Defendants have submitted an agreed-upon proposed notice. See ECF No. 125-1. The proposed notice appropriately: discusses the purpose of the notice, the nature of the lawsuit, the composition of the proposed class, and the legal effect of joining the lawsuit; explains that the court has not acted on the merits of the lawsuit; describes how to join the lawsuit; explains that joining the lawsuit is purely voluntary; details the legal effect of not joining the lawsuit; notes the prohibition against retaliation for joining the lawsuit; and provides the relevant contact information for any inquiries. See Jackson, 298 F.R.D. at 169-70 (discussing the appropriate contents of a notice).

The Vendor Defendants request that the Court make a number of changes to the proposed Notice. See ECF No. 127-2. In that regard, the Vendor Defendants ask that the Court add the Vendor Defendants' position regarding liability in various locations throughout the notice. See ECF No. 126 at 29. But the proposed notice already includes statements concerning the Vendor Defendants' position on liability. It recounts that "Defendants deny Plaintiff's allegations," that Defendants "assert that all Officers have been timely paid for their work," and that suit is meritless. ECF No. 125-1 at 2.

Moreover, contrary to the Vendor Defendants' request (ECF No. 126 at 30), the notice does not need to state that the Vendor Defendants plan to move to decertify the class. See

Hernandez v. City of New York, No. 16-CV-3445 (RA), 2017 WL 2829816, at *8 (S.D.N.Y. June 29, 2017) ("It is not necessary . . . to include details regarding the [defendant's] contemplated actions in this litigation, such as its 'plans' to request decertification or dismissal of this action."). As other courts have recognized, "including such information in the [n]otice may well end in confusion." Id. The purpose of the notice is to alert putative members of the existence of the suit and of their right to opt-in. Including an explanation about a defendant's plans to decertify the collective is confusing and premature at this stage. And, in any case, the proposed notice sufficiently explains that the outcome of the lawsuit is still uncertain and that a finding of liability is a prerequisite to recovery.

In sum, the content of proposed notice for distribution via first class mail is approved. None of the Defendants raise an objection to the content of the proposed email notice (ECF No. 102-3) or workplace posting (ECF No. 102-5). Because the contents of those notices are also adequate, they are approved.

## C. Equitable Tolling

Plaintiff also requests equitable tolling of the statute of limitations for the putative class from November 2, 2021 (the date that Plaintiff filed the instant motion) until the close of any Court-ordered opt-in period. ECF No. 101 at 22. The City Defendants do not oppose equitable tolling from November 2, 2021, until the date that the Court issues a decision on this conditional certification motion. ECF No. 125 at 1. The Vendor Defendants oppose any equitable tolling. ECF No. 126 at 28-29.

"The statute of limitations under the FLSA is ordinarily two years, but it may be extended to three years if the claim arises from a 'willful' violation." Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)). To satisfy the willfulness

19

requirement, a plaintiff must demonstrate that "the employer either acted knowingly or 'showed

reckless disregard for the matter of whether its conduct was prohibited by the statute.'" Id.

(quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). "Unlike Rule 23 class

actions, in a FLSA collective action the limitations period continues to run for each plaintiff until

he or she files written consent with the court to join the lawsuit," and "[t]he delay required to

decide a motion may warrant equitable tolling." Jackson, 298 F.R.D. at 170 (citing Yahraes v.

Rest. Assocs. Events Corp., No. 10-CV-935 (SLJ) 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8,

2011)).

Although equitable tolling is generally appropriate "only in rare and exceptional

circumstances," Vasto, 2016 WL 2658172, at *16 (quotation marks and citation omitted), "[a]

district court may toll the limitations period to avoid inequitable circumstances, giving due

consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their

claims and whether the circumstances are extraordinary enough to warrant equitable relief,"

Jackson, 298 F.R.D. at 170.  "The delay caused by the time required for a court to rule on a

motion, such as one for certification of a collective action in a FLSA case, may be deemed an

extraordinary circumstance justifying application of the equitable tolling doctrine." Mota v.

Intern Connection Electric, Inc., No. 20-CV-7530, 2021 WL 3188336, at *2 (S.D.N.Y July 28,

2021). In this District, courts "have found that the delay in ruling on a motion for conditional

approval, coupled with the plaintiffs' diligence and avoiding prejudice to potential plaintiffs, is

enough to grant equitable tolling." Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 528

(S.D.N.Y. 2015) (citing Flood v. Carlson Rests. Inc., No. 14-CV-2740 (AT), 2015 WL 260436,

at *6 (S.D.N.Y. Jan. 20, 2015) and McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445

(S.D.N.Y. 2012)).

Here, there has been a delay of approximately 10 months between the filing of the instant motion and the date of this Order, even though the motion has been fully briefed for about seven months. Courts have found delays of even shorter periods of time to justify equitable tolling. See, e.g., Santiago v. Info. Resources Inc., No. 20-CV-7688 (AT) (SN), 2022 WL 476091, at *6 (S.D.N.Y. Feb. 16, 2022) (granting equitable tolling where motion was fully briefed for more than five months); Gonzalez v. Hanover Ventures Marketplace LLC, No. 21-CV-1347 (ER), 2022 WL 193004, at *9 (S.D.N.Y. Jan. 21, 2022) (allowing equitable tolling where motion was fully briefed for over four months).

Plaintiff's request for equitable tolling is granted, and the statute of limitations will be tolled from November 2, 2021, the date on which Plaintiff filed his motion for conditional certification, to the date of this Order. Tolling of the limitations period is not extended throughout the notice period for opt-in plaintiffs, however, because Plaintiff has not demonstrated that extraordinary circumstances warrant tolling during that time. See Zhongle Chen v. Kicho Corp., 18-CV-7413 (PMH) (LMS), 2020 WL 1900582, at *13 (S.D.N.Y. Apr. 17, 2020) (declining to apply equitable tolling during a notice period and explaining that opt-in plaintiff delay is not an extraordinary concern, "rather, it is a common issue present in litigation").

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for conditional certification is granted as to all similarly situated NYPD Police Officers, Detectives, Sergeants, and Lieutenants who performed work through the Paid Detail Program for any of the Vendor Defendants at any time from July 3, 2017 to the present. The statute of limitations will be tolled from the date of the filing of Plaintiff's instant motion (November 2, 2021), until the date of this Order. Plaintiff's

proposed notice (see ECF No. 125-1) is approved. The Clerk of Court is respectfully directed to

terminate the motion at ECF No. 100.

DATED:        September 26, 2022
              New York, New York


                                        Respectfully submitted,

                                        _____
                                        VALERIE FIGUEREDO
                                        United States Magistrate Judge


cc: All Counsel of Record (via ECF)