# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BURBRAN PIERRE, on behalf of himself and others similarly situated, | Case No.: 1:20-cv-05116 (ALC)(VF) |
| Plaintiff, | |
| v. | |
| CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, TD BANK N.A., DUANE READE INC., B & H PHOTO VIDEO PRO AUDIO LLC, BLOOMBERG L.P., TRIHOP 14TH STREET LLC, DOES NOS. 1-10, SILVERSEAL CORPORATION d/b/a S.E.A.L. SECURITY LLC, and GARDAWORLD SECURITY CORPORATION d/b/a GARDWORLD, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE SETTLEMENT <u>AND AWARD OF ATTORNEYS' FEES AND COSTS</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.   BACKGROUND OF THE SETTLEMENT ................................................................. 2

    A.   Issuance of Settlement Notices and Response from Class Members ........................ 2

    B.   Discovery and Settlement Negotiations ................................................................... 4

    C.   The Plan of Allocation ............................................................................................. 5

ARGUMENT ...................................................................................................................... 6

I.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ......................... 6

    A.   The Settlement is Procedurally Fair ......................................................................... 7

    B.   The Settlement is Substantively Fair, Reasonable, and Adequate ........................... 8

        i.    Litigation Through Trial Would be Complex, Costly, and Long (#1) ............ 9

        ii.   The Reaction of the Class Has Been Positive (#2) ...................................... 10

        iii.  Discovery Has Advanced Far Enough for the Parties to Evaluate  the Strengths and Weaknesses of the Claims (#3) ................................................ 10

        iv.   Plaintiff Would Face Significant Risks if the Claims Proceeded (#4 & 5).... 12

        v.    Risks Involved in Maintaining the Class Through Trial (#6) ....................... 13

        vi.   Ability to Withstand a Greater Judgment is Not Determinative (#7)............. 14

        vii.  The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (#8 & 9) ............................ 14

II.  FINAL CERTIFICATION OF THE RULE 23 CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE ................................................................................. 16

    A.   Numerosity .............................................................................................................. 16

    B.   Commonality ........................................................................................................... 17

    C.   Predominance .......................................................................................................... 18

    D.   Typicality ................................................................................................................ 19

    E.   Adequacy ................................................................................................................. 20

    F.   Superiority ............................................................................................................... 21

III. APPROVAL OF THE SETTLEMENT IS APPROPRIATE UNDER THE FLSA ............. 23

IV.  PLAINTIFF'S FEE REQUEST SHOULD BE APPROVED ................................... 23

A.    The Fee Request Is Reasonable ...................................................................23

B.    The Court Should Use the Percentage Method to Evaluate this Fee Request ...........24

C.    The Requested Fee is Reasonable Under the Goldberger Factors ...........................26

    i.    The Time and Labor Expended by Counsel ...................................................27

    ii.    The Magnitude and Complexities of the Litigation ......................................28

    iii.    The Risk of the Litigation ..............................................................29

    iv.    Quality of Representation ...............................................................30

    v.    The Fee in Relation to the Settlement ................................................33

    vi.    Public Policy Considerations ..........................................................33

D.    The Fee is Also Reasonable Under a Lodestar Analysis ...........................................34

V.    CLASS COUNSEL'S EXPENSES IN THIS CASE SHOULD BE REIMBURSED ...........36

VI.    SERVICE AWARDS ARE APPROPRIATE IN THIS CASE ...............................................36

CONCLUSION ..........................................................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*A.H. Phillips, Inc. v. Walling*,
    324 U.S. 490 (1945) .................................................................................................. 34

*In re Am. Bank Note Holographics*, *Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..................................................................... 25

*Asare v. Change Grp. N.Y., Inc.*, No.,
    2 Civ. 3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ............................ 24, 33, 37

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ........................................................................................ 9, 14

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
    450 U.S. 728 (1981) .................................................................................................. 28

*Beckman v. KeyBank, N.A.*,
    No. 12 Civ. 7836(RLE), 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) ............... 24, 28, 33, 35

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
    No. 14 Civ. 4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015) .................... 24

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................................... 25

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) ..................................................................................... 18

*Bryant v. Potbelly Sandwich Works, LLC*,
    No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804 (S.D.N.Y. Feb. 4, 2020) ...................... 23

*Cabrera v. Rose Hill Asset Mgmt. Corp.*,
    No. 20 Civ. 2699 (AT), 2022 WL 3328086 (S.D.N.Y. July 5, 2022) ...................... 29, 35

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*
    *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ...........................................*passim*

*Clark v. Ecolab, Inc.*,
    No. 04 Civ. 4488(PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ........................... 6, 33

*Cohetero v. Stone & Tile, Inc.*,
    No. 16-CV-4420 (KAM)(SMG), 2018 WL 565717 (E.D.N.Y. Jan. 25, 2018) ...................... 16

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ..................................................................................................... 18

*Conte, et al. v. Metro. Transp. Auth., et al.*,
  21-cv-02516-VEC (S.D.N.Y. Sept. 14, 2023) ........................................................ 31

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ....................................................................................... 18

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) ..................................................... 10, 33, 35

*deMunecas v. Bold Food, LLC*,
  No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010)........................ 25, 34

*Deposit Guar. Nat'l Bank v. Roper*,
  445 U.S. 326 (1980) .................................................................................................. 34

*Dorn v. Eddington Sec., Inc.*,
  No. 08 Civ. 10271 LTS, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) .................... 12

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005) ...................................................................... 29

*Eldred v. Comforce Corp.*,
  No. 3:08–CV–1171, 2010 WL 812698 (N.D.N.Y. Mar. 2, 2010) .................... 17, 19

*Elliot v. Leatherstocking Corp.*,
  No. 3:10-CV-0934, 2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012).................... *passim*

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)................... 7

*Felix v. Breakroom Burgers & Tacos*,
  No. 15 Civ. 3531, 2016 WL 3791149 (S.D.N.Y. Mar. 8, 2016)............................. 15

*Flores v. Anjost Corp.*,
  No. 11 Civ. 1531(AT), 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ........... 24, 27, 36

*Fox v. Vice*,
  563 U.S. 826 (2011) .................................................................................................. 26

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................................... *passim*

*Gilliam v. Addicts Rehab. Ctr. Fund*,
  No. 05 Civ. 3452(RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008).................. 33

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004)..................................................................... 26, 29

*Goldberger v. Integrated Res. Inc.*,
    209 F.3d 43 (2d Cir. 2000) .............................................................................. *passim*

*Griffin, et al. v. Aldi, Inc.*,
    No. 5:16-cv-00354, ECF Nos. 104-1 (N.D.N.Y. Nov. 15, 2018) .................... 15, 32

*Guippone v. BH S & B Holdings, LL*,
    No. 09 Civ. 01029(CM), 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011)............... 37

*Hadel v. Gaucho, LLC*,
    No. 15 Civ. 3706 (RLE), 2016 WL 1060324 (S.D.N.Y. Mar. 14, 2016)............... 16

*Henry v. Little Mint, Inc.*,
    No. 12 Civ. 3996(CM), 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ........... 35, 37

*Hernandez v. Fresh Diet, Inc.*,
    No. 12–cv–4339 (ALC)(JLC), 2014 WL 5039431 (S.D.N.Y. Sept. 29, 2014) ..... 13

*Hernandez v. Immortal Rise, Inc.*,
    306 F.R.D. 91 (E.D.N.Y. 2015) ...................................................................... 10

*Hernandez v. Merrill Lynch & Co.*,
    No. 11 Civ. 8472(KBF)(DCF), 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ..... 33

*Hicks v. Stanley*,
    No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)............... 34

*Hill v. City of N.Y.*,
    No. 13-CV-6147 (PKC) (JO), 2019 WL 1900503 (E.D.N.Y. Apr. 29, 2019) ..... 17

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527(DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............... 26

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969) ................................................................. 12

*Jackson v. Bloomberg, L.P.*,
    298 F.R.D. 152 (S.D.N.Y. 2014)..................................................................... 18

*Jianmin Jin v. Shanghai Original, Inc.*,
    No. 16-cv-5633 (ARR) (JO), 2018 WL 1597389 (E.D.N.Y. Apr. 2, 2018) ........... 12

*Johnson v. Brennan*,
    No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ....... 10, 27, 28, 35

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381(ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .................... 33, 34, 39

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .............................. 35

*Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2017 WL 1155916 (S.D.N.Y.
  Mar. 27, 2017) ........................................................................................................... 39

*Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*,
  No. 5:15-cv-00441, 2016 WL 3406111 (N.D.N.Y. June 17, 2016) ................................ *passim*

*Martinek v. Amtrust Fin. Servs., Inc.*,
  No. 19 CIV. 8030 (KPF), 2022 WL 16960903 (S.D.N.Y. Nov. 16, 2022) .......................... 39

*Massiah v. MetroPlus Health Plan, Inc.*,
  No. 11-cv-05669 (BMC), 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) .......................... 24

*Mayhew v. KAS Direct, LLC*,
  No. 16 CV 6981 (VB), 2018 WL 3122059 (S.D.N.Y. June 26, 2018) ........................... 20, 21

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995) ........................................................................................... 6

*McDaniel v. Cnty. of Schenectady*,
  95 F.3d 411 (2d Cir. 2010) ...................................................................................... 24, 33

*McEarchen v. Urban Outfitters, Inc.*,
  No. 13-CV-3569 (RRM) (JO), 2017 WL 3912345 (E.D.N.Y. Sept. 6, 2017) ...................... 12

*McMahon v. Olivier Cheng Catering and Events, LL*,
   No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. March 3, 2010) ........................... 25, 28, 34

*Mercado v. Metro. Transp. Auth.*,
  No. 20 Civ. 6533, 2021 WL 2593462 (S.D.N.Y. June 24, 2021) ......................................... 16

*Molina, et al. v. Huaxcuaxtla Rest. Corp., et al.*,
  1:20-cv-02481-RWL (S.D.N.Y. Feb. 25, 2021) ................................................................... 31

*N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*,
  477 F. App'x 809 (2d Cir. 2012) ........................................................................................ 18

*Orme v. Burlington Coat Factory of Or., LLC*,
  No. CV 07-859-MO, 2010 WL 1838740 (D. Or. May 3, 2010) ........................................... 29

*In re Painewebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................. 12, 14

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
  No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .......... 28, 37, 38, 39

*Perdue v. Kenny A.*,
  559 U.S. 542 (2010) ........................................................................................... 29

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ........................................................................................... 34

*Pino v. Harris Water Main & Sewer Contractors Inc.*,
  No. 17-cv-5910 (KAM)(RER), 2021 WL 3675148 (E.D.N.Y. Aug. 19, 2021) ..................... 17

*In re Polaroid ERISA Litig.*,
  No. 03 Civ. 8335(WHP), 2007 WL 2116398 (S.D.N.Y. July 19, 2007) ............................. 25

*Quow v. Accurate Mech. Inc.*,
  No. 1:15-CV-09852(KHP), 2018 WL 3368673 (S.D.N.Y. July 10, 2018)........................... 10

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
  No. 11 Civ. 0520(JLC), 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) .................................. 35

*In re Ramp Corp. Sec. Litig.*,
  No. 05 Civ. 6521, 2008 WL 58938(DLC), (S.D.N.Y. Jan. 3, 2008) ........................ 24, 25, 26

*Raniere v. Citigroup Inc.*,
  310 F.R.D. 211 (S.D.N.Y. 2015)........................................................................... 15

*Reeves, et al. v. La Pecora Bianca, Inc, et al.*,
  Index No. 151153/2018 (N.Y. Sup. Ct., June 11, 2020) ...................................... 32

*Reyes v. Altamarea Grp., LLC,*,
  No. 10–CV–6451 (RLE), 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011)........................... 39

*Rivas v. Dinex Grp., LLC*,
  No. 20-cv-03117, 2021 WL 2850627 (S.D.N.Y. July 8, 2021) ................................ 8

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997)........................................................................ 37

*Rodriguez-Hernandez v. K Bread & Co., Inc.*,
  No. 15-cv-6848 (KBF), 2017 WL 2266874 (S.D.N.Y. May 23, 2017) ................................ 15

*Ruiz v. Citibank, N.A.*,
  93 F. Supp. 3d 279 (S.D.N.Y. 2015)..................................................................... 13

*Sand v. Greenberg*,
  No. 08 Civ. 7840(PAC), 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)........................ 34

*Savoie v. Merchs. Bank*, ,
    166 F.3d 456 (2d Cir. 1999) ............................................................................ 26

*Scott v. Chipotle Mexican Grill, Inc.*,
    No. 12-CV-8333 (ALC)(SN), 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) ...................... 12

*Seekamp v. It's Huge, Inc.*,
    No. 1:09-CV-0018, 2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014) ........................... 24, 26, 27

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548(RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ......................... *passim*

*Smith v. Voorhees Coll.*, ,
    No. 5:05-1911-RBH, 2008 WL 2627471 (D.S.C. June 27, 2008) .......................................... 29

*Spicer v. Pier Sixty LLC*,
    No. 08 Civ.10240(PAE), 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ............................ 33

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) ...................................................................... 25

*Surdu v. Madison Glob., LLC*,
    No. 15-CV-6567, 2017 WL 3842859 (S.D.N.Y. Sept. 1, 2017) ............................................ 15

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ................................................................................ 20

*Taft v. Ackermans*,
    No. 02 Civ. 7951(PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................................... 30

*Torres v. Gristede's Operating Corp.*,
    519 Fed. Appx. 1 (2d Cir. 2013) ........................................................................ 24

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783 (S.D.N.Y. June 25, 2007) .......... 12, 25, 26

*Vogel v. City of N.Y.*,
    No. 14 Civ. 9171, 2017 WL 4712791 (S.D.N.Y. Sept. 19, 2017) ......................................... 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................... 6, 24, 25, 33

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................................... 6

*Wenping Wang v. Masago Neo Asian Inc.*,
    No. CV 14-6249(DRH)(ARL), 2016 WL 7177514 (E.D.N.Y. Sept. 26, 2016) .................... 15

*Willix v. Healthfirst Inc.*,
   No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ....................... 33

**Statutes**

29 U.S.C. § 216(b) ................................................................................................................. 16

FIFA ............................................................................................................................. 1, 13, 17

FLSA ................................................................................................................................ *passim*

NYLL ................................................................................................................................ *passim*

**Other Authorities**

Rule 23 ............................................................................................................................. *passim*

Plaintiff Burbran Pierre ("Plaintiff"), on behalf of himself and the proposed Class, and with the consent of Defendants Duane Reade Inc. ("Duane Reade"), the New York City Police Department ("NYPD"), and the City of New York (together with the NYPD, the "City Defendants")[1] (together with Plaintiff, the "Parties"), hereby submits this memorandum of law in support of his unopposed motion for final approval of the Settlement and award of attorneys' fees, litigation expenses, and service awards.[2]

## INTRODUCTION[3]

This Settlement seeks to resolve class and collective claims brought by Plaintiff on behalf of himself and all similarly situated New York City Police Officers, Detectives, Sergeants, and Lieutenants ("Officers") who performed uniformed security work at Duane Reade through the NYPD's Paid Detail Program ("PDP"). Plaintiff alleges that Defendants engaged in a common policy and practice of denying Officers timely payment of wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").[4]

The Parties exchanged substantial discovery and Class Counsel was able to calculate precise alleged damages for every single Officer. Thereafter, the Parties engaged in extensive arm's-length settlement negotiations that lasted several months, including a full-day mediation with Martin Scheinman. The Parties vigorously represented their positions and eventually agreed to resolve all claims against Duane Reade and the City Defendants, specifically related to PDP shifts[5] worked by Class Members only at Duane Reade locations in New York, for $7,225,000.00, which according to

---

[1] Duane Reade and the City Defendants are together referred to as "Defendants."
[2] A copy of the Settlement Agreement (referred to as "Agreement") is attached as Exhibit 1 to the Declaration of Innessa M. Huot ("Huot Decl.") in Support of Plaintiff's Unopposed Motion for Final Approval of the Settlement and Award of Attorneys' Fees and Costs.
[3] Unless otherwise noted, all internal citations are omitted.
[4] Plaintiff also brings analogous claims in the alternative under the NYC Freelance Isn't Free Act ("FIFA").
[5] Duane Reade prefers to refer to PDP shifts as PDP details.

Class Counsel's calculations, represents an outstanding 65.73% recovery of the entire Class's potential wage damages, and as to which percentage Duane Reade has not taken any position. Huot Decl. ¶ 28.

On May 15, 2025, the Court granted preliminary approval of the Settlement, conditionally certifying the Rule 23 Class, appointing Plaintiff to represent the Class, and authorizing the issuance of Settlement Notices and Claim Forms ("Notices"). ECF No. 533 ("PA Order"). The Court found that the Settlement fell "within the range of reasonableness" and set a Fairness Hearing, which was subsequently rescheduled to December 2, 2025. *See* PA Order; ECF No. 560. Nothing has transpired since the Court granted preliminary approval that would alter the Court's conclusion concerning the merits of the Settlement and Class Certification.

After preliminary approval, Notices were mailed to all 3,536 Officers advising them of their rights to participate in the Settlement, object to the Settlement, or opt-out of the Settlement. These Officers claimed an impressively high 79.7% of the total funds available under the Settlement – while ___*zero*___ Officers objected to, or requested to be excluded from, the Settlement. Grayson Decl. ¶¶ 23-26.[6] As a result of the Settlement, all Fully Participating Claimants stand to receive a significant percentage (65.73%) of their potential wage damages. Plaintiff now asks the Court to grant final approval of the Settlement, final certification of the Class for settlement purposes only, an award of attorneys' fees and costs, and service awards to Plaintiff and certain opt-in plaintiffs ("Service Award Recipients").

## I.     BACKGROUND OF THE SETTLEMENT

### A.     Issuance of Settlement Notices and Response from Class Members

The Court-authorized Notices were sent to 3,536 current and former Officers who worked at

---

[6] The Declaration of Settlement Administrator Shari Lynne Grayson from Analytics Consulting, LLC ("Analytics") is referred to herein as "Grayson Decl.".

a Duane Reade location in New York State through the PDP at any time during the statutory period, who together comprise the Settlement Class covered by the Settlement (the "Class" or "Class Members"). The Notices were specifically tailored to each Class Member, specifying the amount they would receive if they participated in the Settlement. ECF Nos. 488-2, 488-3. The Notices clearly and unambiguously explained the terms and conditions of the Settlement and expressly identified the total Settlement amount, the precise amount requested for attorneys' fees, and the additional payments to be made to Service Award Recipients, in recognition of the services they provided on behalf of the Class Members. *Id.* Only 57 Notices were returned as undelivered. Grayson Decl. ¶ 9. Updated addresses were located, and Notices were re-mailed to 23 of these Officers. *Id.* ¶ 10. Notices were successfully delivered to 99.04% of the Class Members (3,502 out of 3,536) – an "exceptionally" well-noticed Class. *Id.* ¶¶ 12-13.

As of this filing, there have been no objections or requests for exclusion from the Settlement. *Id.* ¶¶ 25-26. Together with the 11 Service Award Recipients, a total of 2,179 Class Members returned timely Claim Forms and are deemed Fully Participating Claimants. *Id.* ¶ 19. Thereafter, 19 additional Officers submitted Claim Forms after the deadline. *Id.* ¶ 20. The Parties conferred and agreed to include the 19 late Officers as Fully Participating Claimants in the Settlement, with their payments being made from the Reserve Fund as provided for under the Settlement. *Id.*

Altogether, a total of 2,198 Officers opted into the Settlement and became Fully Participating Claimants – an impressively high 62.16% participation rate. *Id.* ¶¶ 21, 24. These Officers claimed a notably high 79.7% of the total funds available under the Settlement. *Id.* ¶ 23. This settlement participation rate is considered "very high" and "is two to three times higher than the typical rates seen in the industry for class action settlements." *Id.* ¶ 24.

B.    <u>Discovery and Settlement Negotiations</u>

Plaintiff initiated this lawsuit on July 3, 2020.  ECF No. 1 ("Complaint").  Thereafter, Duane Reade and other defendants moved to dismiss certain of Plaintiff's claims against them.  ECF No. 60. On August 31, 2021, the Court denied the motion to dismiss in its entirety.  ECF No. 72.  On November 11, 2021, Plaintiff moved for conditional certification of the collective, which was granted on September 27, 2022.  ECF Nos. 100, 184.

Subsequently, the Parties exchanged discovery to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the claims of all other Officers who worked PDP shifts at Duane Reade, and Defendants' defenses relating to same.  Huot Decl. ¶ 16.  The Parties responded to multiple rounds of written discovery requests, exchanged over 40,000 pages of documents, searched for and produced voluminous ESI records, provided numerous rounds of interrogatory responses, and produced detailed time records and compensation data related to all Class Members.  *Id*.  Class Counsel also conducted multiple full days of on-site inspections of Duane Reade's records to obtain detailed class-based discovery for the Class Members.  *Id.* ¶ 17.

Plaintiff sat for a two-day deposition, providing extensive testimony relating to his class and collective claims.  *Id.* ¶ 18.  The Parties then undertook ten additional depositions of other Officers, including lengthy depositions of each of the Service Award Recipients, who provided testimony about their PDP work and their claims, as well as Defendants' 30(b)(6) designees and Defendants' multiple witnesses.  *Id.* ¶ 19.  The Parties then exchanged further written discovery and document production relating to the deponents and the issues raised in the numerous depositions.  *Id.* ¶ 20.  Indeed, the Parties exchanged and analyzed discovery concerning every single Officer who worked at a Duane Reade location through the PDP at any time throughout the statutory period, who together comprise the Class that Plaintiff seeks to represent.  *Id.* ¶ 21.

After a detailed review of the comprehensive discovery exchanged in this case, Class Counsel was able to calculate the precise alleged damages for each Officer. *Id*. ¶ 22. The Parties then engaged in substantial and arm's length settlement discussions, exchanging numerous settlement proposals, damage calculations, case law analysis, and additional records. *Id*. ¶ 23. Over the next several months, the Parties continued to actively negotiate but were unable to resolve the case on their own. *Id*. ¶ 24. The Parties agreed to retain widely reputable mediator, Martin Scheinman, to assist them in attempting to resolve the case. *Id*. On July 6, 2023, the Parties participated in a full-day mediation with Mr. Scheinman and made tremendous progress towards a resolution of the case. *Id*. ¶ 25. Over the next several weeks, the Parties continued to actively negotiate through Mr. Scheinman. *Id*. After months of rigorous negotiations, the Parties reached a settlement of Plaintiff's class and collective claims against Duane Reade and the City Defendants and are pleased to present it to the Court for final approval. *Id*. ¶ 26; Exhibit 1 ("Settlement Agreement").

The Parties agreed to resolve all claims against Duane Reade and the City Defendants, specifically related to PDP shifts worked by Class Members only at Duane Reade locations in New York, for an aggregate of $7,225,000.00, which according to Class Counsel's calculations represents an outstanding 65.73% recovery of the entire Class's potential wage damages, and as to which percentage Duane Reade has not taken any position. Huot Decl. ¶ 28. The settlement payment also covers attorneys' fees and litigation expenses, as well as service awards to Service Award Recipients for all the time and effort they each expended in the prosecution of this Action and in securing the Settlement, including specifically by being subjected to extensive discovery and lengthy depositions, and otherwise benefiting the Class. *Id*. ¶¶ 29-30; Settlement Agreement § 3.1(C)-(D).

### C.    The Plan of Allocation

After deducting all fees, costs, service awards, and the Reserve Fund (which will be

redistributed as described in the Settlement Agreement at § 3.1 (E)) from the Gross Settlement Fund ("GSF"), the remaining amount of $4,546,666.67 becomes the Total Net Allocation Fund from which Settlement Payments are allocated based on Officers' actual damages, as calculated from their specific time and compensation data. *Id.* §§ 1.40, 3.1(F). Each Officers' pro-rata share of the Net Allocation Fund is calculated by dividing their specific damages amount by the total damages allegedly owed to all Class Members. The resulting percentage is multiplied by the Net Allocation Fund to determine the Total Net Payment to each Class Member. The formula is based on actual time and compensation data for each individual Class Member. *Id.*; Huot Decl. ¶ 32.

## ARGUMENT

### I.     FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law strongly favors compromise and settlement of class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (discussing the "strong judicial policy in favor of settlements, particularly in the class action context"); *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 5:15-cv-00441 (MAD/TWD), 2016 WL 3406111, at *4 (N.D.N.Y. June 17, 2016) ("Generally, class actions are complex and consume a tremendous amount of time and resources."); *Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934, 2012 WL 6024572, at *3 (N.D.N.Y. Dec. 4, 2012) (stating in the wage-and-hour context, "[c]lass actions are generally complex and preparing and putting evidence to support plaintiffs' position would consume tremendous time and financial resources."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

The approval of a proposed class action settlement is a matter of discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation[.]" *Clark v.*

*Ecolab, Inc.*, No. 04 Civ. 4488(PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009).  Further, "[f]airness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 CIV 10240(CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, as detailed below, the Settlement is procedurally fair, substantively fair, and satisfies each of the nine factors delineated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Accordingly, the Court should grant final approval.

A.    **The Settlement is Procedurally Fair**

The Parties' Settlement is procedurally fair, thus warranting final approval.  To make this determination, "courts examine the settlement's terms and the negotiating process leading to settlement." *Elliot*, 2012 WL 6024572, at *3.  Here, Plaintiff engaged in a thorough investigation, with the assistance of Class Counsel, even before filing his claims against Defendants.  *See* Huot Decl. ¶¶ 6-23.  The Settlement was the result of a full-day mediation with a reputable mediator, followed by weeks of continued rigorous negotiations through the mediator – all of which took place after several months of extensive settlement discussions wherein the Parties exchanged numerous settlement proposals, damage calculations, case law analysis, and additional discovery.  *Id.* ¶¶ 23-26.

More importantly, prior to the exchange of any settlement proposals, the Parties engaged in over three years of hard-fought litigation, motion practice, document production, ESI exchange, on-site inspections, written discovery, numerous depositions, and comprehensive discovery for every single Class Member, including the production of their individual time records and compensation data.  *Id.* ¶¶ 5-23.  The substantial discovery allowed Class Counsel to calculate precise alleged

damages for every single Class Member and negotiate vigorously on their behalf to secure a settlement that represents a 65.73% recovery of their potential wage damages. *Id.* ¶¶ 22-28.

Under these circumstances, a presumption in favor of procedural fairness arises. *See Rivas v. Dinex Grp., LLC*, No. 20-cv-03117, 2021 WL 2850627, at *2 (S.D.N.Y. July 8, 2021) (finding that the proposed settlement was procedurally fair "because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims through factual and legal investigation.") (citing *Wal-mart*, 396 F.3d at 117); *see also Elliot*, 2012 WL 6024572, at *3 (finding procedural fairness where the parties exchanged discovery). In addition to the reasons detailed *infra* § I(B), the Settlement terms themselves support a finding of procedural fairness because the Settlement is for a reasonable and substantial sum, allocation thereof is based on Class Members' actual damages, and the Settlement procedure provides Class Members with an opportunity to opt out of or object to the terms. *See* Settlement Agreement §§ 1.40, 2.9-2.10.

**B.    <u>The Settlement is Substantively Fair, Reasonable, and Adequate</u>**

The Settlement satisfies the nine factors set forth in *Grinnell*, which courts in the Second Circuit apply to evaluate class settlements. *See, e.g., Marroquin,* 2016 WL 3406111, at *4 (reviewing *Grinnell* factors and approving wage and hour settlement).

The *Grinnell* factors are: (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining the class action through the trial; (vii) the ability of the defendant to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. The *Grinnell* factors weigh in favor of approval of the Settlement, and certainly in favor of final approval.

### i.    Litigation Through Trial Would be Complex, Costly, and Long (#1)

By reaching a favorable settlement prior to summary judgment motions or trial, the Parties avoid significant expense and delay.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Marroquin*, 2016 WL 3406111, at *4 (approving $282,500 settlement and stating "[h]ere, significant discovery and statistical experts would be required followed by a fact-intensive trial.  Preparing and presenting evidence to support [p]laintiffs' position would consume tremendous time and resources."); *Frank*, 228 F.R.D. at 184-85 (finding a $75,000 wage-and-hour matter complex, noting that "the costs of continued litigation will be substantial and will quickly outweigh the recovery that could be achieved.").

This case is no exception, with a $ 7,225,000 fund and 3,536 Class Members with both federal and State law claims, further litigation here would cause substantial expenses and delay.  Indeed, additional pre-class certification and potential post-certification discovery would need to be completed.  Plaintiff would file a motion for class certification under Rule 23, which Duane Reade would likely oppose.  Defendants would also likely move to decertify the conditionally certified FLSA Collective, which Plaintiff would certainly oppose.  In addition, the Parties would need to complete document discovery, including the search for and production of additional ESI, and numerous additional depositions, after which the Parties would likely file competing motions for summary judgment.  If the Court denied the Parties' summary judgment motions, a fact-intensive trial would necessarily follow.  A trial would be lengthy and complex and would consume significant time and resources from both the Parties and the Court.  Any judgment might also be appealed, further extending the litigation.  The Settlement, on the other hand, makes significant monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor

weighs in favor of approval.

### ii.    The Reaction of the Class Has Been Positive (#2)

The response from Class Members has been overwhelmingly positive. Notices were successfully delivered to 99.04% of the 3,536 Class Members (3,502 out of 3,536) – an "exceptionally" well-noticed Class. Grayson Decl. ¶¶ 12-13. Thereafter, nearly all of the available funds – 79.7% available under the Settlement were claimed. *Id.* ¶ 23. This participation rate is considered "very high" and "is two to three times higher than the typical rates seen in the industry for class action settlements." *Id.* ¶ 24; *see also*, *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (a 20% participation rate is "well above average in class action settlements"); Joseph M. McLaughlin, McLaughlin on Class Actions § 6:24 (22nd ed. 2025) (". . . settlements typically have a participation rate in the 10–15 percent range.").

As of this filing, there have been no objections or requests for exclusion from the Settlement. Grayson Decl. ¶¶ 25-26. The lack of objections to the Settlement, including Class Counsel's fee request, is an indication of the reasonableness of the Settlement and the requested awards and weighs in favor of approving the Settlement. *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183 (W.D.N.Y. 2011); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *9 (S.D.N.Y. Sept. 16, 2011). Accordingly, the reaction of the Class favors approval.

### iii.    Discovery Has Advanced Far Enough for the Parties to Evaluate the Strengths and Weaknesses of the Claims (#3)

The Parties completed extensive enough discovery to recommend settlement. Huot Decl. ¶¶ 5-23. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Quow v. Accurate Mech. Inc.*, No. 1:15-CV-09852(KHP), 2018 WL 3368673, at *3 (S.D.N.Y. July 10, 2018) (quoting *In re Warfarin*, 391 F.3d at 537). The Parties' discovery here

meets this standard.

Prior to filing the lawsuit, Class Counsel conducted a thorough investigation and legal research on the underlying merits of the potential class claims, the likelihood of obtaining liquidated damages, and the proper measure of damages.  Huot Decl. ¶¶ 5-7.  They also researched Defendants' likely affirmative defenses.  *Id.*  After filing, Class Counsel conducted further investigations including, but not limited to, interviewing Plaintiff and certain Class Members, some of whom joined this Action as opt-in plaintiffs.  *Id.* ¶ 10.  The Parties subsequently exchanged voluminous discovery to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the claims of every single Class Member, and Defendants' defenses relating to the same.  *Id.* ¶ 16.  As referenced above, the Parties responded to multiple rounds of written discovery requests, exchanged over 40,000 pages of document production, searched for and produced voluminous ESI records, provided numerous rounds of interrogatory responses, and exchanged comprehensive discovery for every single Class Member, including the production of their individual time records and compensation data. *Id.*  Class Counsel also conducted multiple full days of on-site inspections of Duane Reade's records to obtain detailed class-based discovery for the Class Members.  *Id.* ¶ 17.

Plaintiff sat for a two-day deposition, answering questions from Defendants' attorneys and providing extensive testimony relating to his class and collective claims that was invaluable to the prosecution and resolution of this Action.  *Id.* ¶ 18.  The Parties then undertook ten additional depositions of other Officers, including lengthy depositions of each of the Service Award Recipients, who provided testimony about their PDP work and their claims, as well as Defendants' 30(b)(6) designees and Defendants' multiple witnesses.  *Id.* ¶ 19.  Further written discovery and documents were then exchanged relating to the deponents, including detailed information concerning their tax returns and cell phone records, as well as other issues raised in the numerous depositions.  *Id.* ¶ 20.

Before any negotiations took place, Class Counsel analyzed the comprehensive discovery exchanged in the case, including time records and compensation data related to all Class Members, and prepared detailed damage calculations for each individual Class Member. *Id.* ¶¶ 21-22. Armed with such extensive discovery, data, and analysis, Class Counsel was able to vigorously negotiate on behalf of the Class Members to secure a settlement that represents a 65.73% recovery of their best-case scenario wage damages. *Id.* ¶¶ 23-28. These facts strongly favor final approval. *See Marroquin*, 2016 WL 3406111, at *4 (sampling of pay records, employee handbooks, and company policies sufficient to evaluate settlement); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271 LTS, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "[p]laintiff's [c]ounsel did substantial work identifying, investigating, prosecuting, and settling [p]laintiff's and the class members' claims.").

### iv. Plaintiff Would Face Significant Risks if the Claims Proceeded (#4 & 5)

"Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Although Plaintiff believes his case is strong, it is subject to considerable risk, particularly in light of some decisions in the Second Circuit in which courts have declined to grant Rule 23 class certification or have decertified FLSA collectives. *See, e.g., Jianmin Jin v. Shanghai Original, Inc.*, No. 16-cv-5633 (ARR) (JO), 2018 WL 1597389, at *1 (E.D.N.Y. Apr. 2, 2018) (decertifying collective action); *McEarchen v. Urban Outfitters, Inc.*, No. 13-CV-3569 (RRM) (JO), 2017 WL 3912345, at *3 (E.D.N.Y. Sept. 6, 2017) (adopting report recommending decertification of collective action due to need for individualized determinations as to class members' exempt or non-exempt statuses); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-8333 (ALC)(SN), 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017) (decertifying FLSA class of management trainees

and denying class certification); *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 282, 299 (S.D.N.Y. 2015) (decertifying FLSA class of personal bankers and denying class certification); *Hernandez v. Fresh Diet, Inc.*, No. 12–cv–4339 (ALC)(JLC), 2014 WL 5039431, at *2, *9 (S.D.N.Y. Sept. 29, 2014) (decertifying FLSA class of allegedly misclassified workers and denying class certification).

Even if successful on his anticipated motion for class certification, as well as in opposing Defendants' likely motion for decertification of the FLSA Collective, further litigation would present significant risks to Plaintiff and Class Members. This is true even if this case proceeded to a trial on the merits. To the extent a class is certified under Rule 23, the Class will be comprised of former and presently employed Officers, a number of whom may not wish to participate in pre-trial discovery and a trial of this Action. Moreover, Plaintiff would have to overcome Defendants' defenses, including their contentions that Class Members are not entitled to protections under the FLSA and NYLL because Defendants contend they were not Duane Reade's employees, that Plaintiff and Class Members do not qualify as "freelancer workers" under FIFA, and that Duane Reade does not qualify as a "hiring party" under FIFA. While Class Counsel believe that they could ultimately establish both liability and damages, Defendants are equally confident in their defenses. Proceeding to trial would require significant additional factual development and perhaps expert testimony. *See, e.g.*, *Marroquin*, 2016 WL 3406111, at *5 (noting that "establishing liability would be a time-consuming and costly process," and approving settlement). Class Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The Settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

### v. Risks Involved in Maintaining the Class Through Trial (#6)

Should the case proceed, Duane Reade would likely oppose Plaintiff's application for Rule 23 class certification of the NYLL claims and Defendants would likely move to decertify the FLSA

Collective and seek summary judgment on at least certain claims. If Defendants' efforts were unsuccessful, they would likely appeal the Court's determinations where feasible. *See Frank*, 228 F.R.D. at 186 ("If settlement were disapproved, it is likely that [defendant] would challenge the class certification. While plaintiffs might indeed prevail, the risk that the case might not be certified is not illusory and weighs in favor of the Class Settlement."); *Elliot*, 2012 WL 6024572, at *4 (risk of maintaining certification weighs in favor of settlement approval where plaintiff would otherwise face vigorous opposition). This Settlement eliminates the risks and delay inherent in this process. Thus, this factor weighs in favor of approval.

### vi.    Ability to Withstand a Greater Judgment is Not Determinative (#7)

Defendants are the City of New York and a large company, which could both likely withstand a greater judgment. However, Defendants' ability to withstand a greater judgment, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Holocaust Litig*, 80 F. Supp. 2d at 178 n.9). As the Honorable Sidney H. Stein explained in *Painewebber*:

> [E]vidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, since the prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures. However, the converse is not necessarily true; *i.e.*, the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate. . . . PaineWebber has the ability to withstand a judgment in this action of greater than [the settlement amount]. Accordingly, this element of the *Grinnell* test weighs neither for nor against approval of the Settlement.

171 F.R.D. at 129, *aff'd by* 117 F.3d 721 (2d Cir. 1997). Thus, this factor is neutral and does not weigh against granting final approval.

### vii.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (#8 & 9)

Here, Class Counsel has calculated the total best case scenario wage damages, for all 3,536 Class Members, to be $10,991,999.93. Huot Decl. ¶ 28. The Parties have agreed to settle this case

14

for $7,225,000.00, which is a 65.73% recovery of all such damages, and as to which percentage Duane Reade has not taken any position. *Id.*; *see also* Settlement Agreement § 3.1. The Settlement represents substantial value for Class Members' best case scenario damages, especially given the attendant risks of litigation, including prevailing on motions to certify the Class, sustaining certification of the FLSA Collective through trial, surviving a motion for summary judgment, succeeding on all claims at trial, and prevailing on appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Holocaust Litig.,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

This Settlement reflects a reasonable compromise, and the 65.73% recovery percentage substantially exceeds the range of reasonableness that is routinely approved in other wage-and-hour settlements within this Circuit. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Wenping Wang v. Masago Neo Asian Inc.*, No. CV 14-6249(DRH)(ARL), 2016 WL 7177514, at *2 (E.D.N.Y. Sept. 26, 2016) (approving a 30% recovery of potential damages); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-00354 (LEK/ATB), ECF Nos. 104-1 at 14, 109 (N.D.N.Y. Nov. 15, 2018) (approving a 28% recovery of maximum damages); *Surdu v. Madison Glob., LLC*, No. 15-CV-6567, 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) (50% recovery of economic damages is reasonable, "in light of the risks of litigation"); *Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (24.95% recovery is reasonable "in light of [ ] litigation risks"); *Rodriguez-*

*Hernandez v. K Bread & Co., Inc.*, No. 15-cv-6848 (KBF), 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a 26% recovery of potential damages given "bona fide disputes" and litigation risks); *Cohetero v. Stone & Tile, Inc.*, No. 16-CV-4420 (KAM)(SMG), 2018 WL 565717, at *7 (E.D.N.Y. Jan. 25, 2018) (approval of settlement for "approximately two-thirds of [ ] claimed, actual unpaid wages, which is not unreasonable in light of the risks of litigation.").

In assessing the benefits of the Settlement against the risks associated with proceeding in the litigation, this Court previously found that this Settlement "falls within the range of reasonableness" and ordered preliminary approval of the Settlement.  PA Order at 2.  Indeed, this Settlement provides Officers with substantial payments and a considerable recovery of their wage damages.  *See Elliot*, 2012 WL 6024572, at *4 (granting final approval of settlement and finding that "meaningful payment to class members [] is outweighed by the mere possibility of further relief.").  Thus, the nine *Grinnell* factors weigh heavily in favor of final approval of the Settlement.

## II.  FINAL CERTIFICATION OF THE RULE 23 CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Plaintiff respectfully requests that the Court finally certify the Rule 23 Class for settlement purposes.  As detailed below, all requirements of Rule 23 are satisfied.[7]  For settlement purposes only, Defendants do not oppose Plaintiff's request for class certification.

### A.  Numerosity

The Class is comprised of 3,536 members, which is more than sufficient to satisfy numerosity.

---

[7] In addition to meeting the criteria to proceed as a class action under Rule 23, Plaintiff has also satisfied the criteria to proceed as a collective action under the FLSA.  For a collective action to proceed under 29 U.S.C. § 216(b), two requirements must be met: (i) all members must affirmatively consent to join, and (ii) all members must be "similarly situated."  *Mercado v. Metro. Transp. Auth.*, No. 20 Civ. 6533, 2021 WL 2593462, at *1 (S.D.N.Y. June 24, 2021).  Because the requirements of Rule 23 are more stringent than FLSA § 216(b), Plaintiff has also met the criteria for certification of the FLSA Collective as "similarly situated" under 29 U.S.C. § 216(b).  *See Hadel v. Gaucho, LLC*, No. 15 Civ. 3706 (RLE), 2016 WL 1060324, at *4 (S.D.N.Y. Mar. 14, 2016) (certifying the FLSA collective "[b]ecause the standard for conditional certification as an FLSA collective is less stringent than the standard for certification of a class action pursuant to Rule 23[.]") (citing *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *12 (S.D.N.Y. Sept. 11, 2015)).

*See* Rule 23(a)(1). Courts in the Second Circuit have consistently held that "numerosity is presumed at a level of 40 members[.]" *Eldred v. Comforce Corp.*, No. 3:08–CV–1171 (LEK/DEP), 2010 WL 812698, at *15 (N.D.N.Y. Mar. 2, 2010) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). With a proposed Class of 3,536 members, numerosity is satisfied.

### B.   <u>Commonality</u>

The Court should certify the Class for settlement purposes because common questions of law and fact predominate over questions affecting only individual members. *See* Rule 23(a)(2). This element is easily met because the commonality requirement may be satisfied by a single common issue. *Hill v. City of N.Y.*, No. 13-CV-6147 (PKC) (JO), 2019 WL 1900503, at *6 (E.D.N.Y. Apr. 29, 2019) ("Even a single common legal or factual question will suffice to prove commonality."). Here, Plaintiff alleges against Defendants that he and his fellow Officers should have been paid timely wages. *See generally* Complaint. These claims also raise legal and factual questions regarding Duane Reade's status as an "employer" under the FLSA and NYLL. *See id.* Plaintiff's alternative claims under FIFA raise similar factual and legal questions—specifically, whether he and other Officers qualify as "freelance workers" and whether Duane Reade qualifies as a "hiring part[y]." *See id.* ¶¶ 312-22. Accordingly, common questions in this case include: (i) whether Duane Reade employed the Class Members; (ii) whether Duane Reade was a "hiring party" with respect to the Class Members; (iii) whether Class Members were "freelance workers;" and (iv) whether Defendants timely paid Class Members their earned wages.

Given that this Action necessitates several common factual and legal questions, as opposed to the requisite single common question, commonality under Rule 23(a)(2) is satisfied. *See Pino v. Harris Water Main & Sewer Contractors Inc.*, No. 17-cv-5910 (KAM)(RER), 2021 WL 3675148, at *6 (E.D.N.Y. Aug. 19, 2021) (finding commonality where "[p]laintiffs and the [c]lass members share common questions as to whether they received accurate pay rate notices and wage statements and

whether any wage notices received were compliant with the NYLL"); *Marroquin*, 2016 WL 3406111, at *2 (commonality in wage-and-hour settlement); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162-63 (S.D.N.Y. 2014) (commonality where workers claim they were not paid proper overtime); *Elliot*, 2012 WL 6024572, at *2 (commonality where "class members raise common issues concerning defendant's failure to pay overtime, minimum wages and properly distribute service charges.").

**C.**   **Predominance**

Overlapping with Rule 23(a)(2)'s commonality standard, Rule 23(b)(3) requires, *inter alia*, that "the questions of law or fact common to class members predominate over any questions affecting only individual members[.]"  "The predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, … predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007).  Rule 23(b)(3) "scarcely demands commonality as to all questions.  In particular, when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." *Comcast Corp. v. Behrend*, 569 U.S. 27, 41 (2013). Rule 23(b)(3) requires only "a sufficient constellation of common issues [that] bind class members together" and may be satisfied despite "variations in the sources and application of a defense." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010).

Here, "[c]lass-wide issues predominate [because] resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [ ] these particular issues are more substantial than the issues subject only to individualized proof." *N.J. Carpenters Health Fund v. Rali Series 2006-QO1 Tr.*, 477 F. App'x 809, 812 (2d Cir. 2012) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). Indeed, the core issues in this case focus on Defendants' policies and practices with respect to Officers

who worked PDP shifts at Duane Reade. Plaintiff contends that the Officers perform similar tasks and have similar responsibilities. *See generally* Complaint. In addition, Plaintiff alleges that Defendants do not timely pay Officers all wages earned on their regularly scheduled paydays. *See id.* Each of these core issues involve a common nucleus of operative facts based on Defendants' alleged common policies and procedures that Plaintiffs claim applied to all Class Members. *See, e.g.*, *Marroquin*, 2016 WL 3406111, at *3 (finding predominance in wage-and-hour case where questions concerning overtime pay were "universal" to workers); *Eldred*, 2010 WL 812698, at *19 (certifying litigation class and finding "[t]he predominant question raised is whether such a policy existed, and not whether any individual suffered its consequences on a particular job"). Also, alleged damages in this case have been calculated by applying the same mechanical formula based on each Class Members' actual work time and compensation data. Because common issues in this action predominate over individualized issues (if any) and damages are, in fact, provable in the aggregate, predominance has been established.

### D.    Typicality

Plaintiff's claims are typical to the Class Members' claims. Rule 23(a)(3). "Typicality 'does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Vogel v. City of N.Y.*, No. 14 Civ. 9171, 2017 WL 4712791, at *4 (S.D.N.Y. Sept. 19, 2017) (quoting *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 508 (S.D.N.Y. 2011)). Plaintiff and the Class Members are all current and former Officers who worked at Duane Reade through the PDP, were subject to Defendants' alleged uniform policies, and who were allegedly harmed by Defendants in the same manner in that they were allegedly not paid timely wages. *Marroquin*, 2016 WL 3406111, at *2 (typicality satisfied as plaintiffs' claims were based on the same factual and legal theories as the class

members).  Since Plaintiff's claims are identical to those of the Class Members' he seeks to represent, typicality is easily satisfied.

### E.     Adequacy

"Under Rule 23(a)(4) . . . adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class."  *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 90 (2d Cir. 2015).  "Plaintiffs must also have attorneys who are qualified, experienced, and generally able to conduct the litigation."  *Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059, at *5 (S.D.N.Y. June 26, 2018).

In this case, Plaintiff does not have any interests that conflict with his fellow Officers.  *See* Declaration of Burbran Pierre ("Pierre Decl.") ¶¶ 33-46; *Elliot*, 2012 WL 6024572, at *2 (adequacy satisfied where there was "no evidence that plaintiffs' and the class members' interests are at odds"). In addition, Plaintiff worked extensively on behalf of the Class to achieve this Settlement.  Pierre Decl. ¶¶ 3-42.  For example, Plaintiff searched for and provided documents in response to extensive discovery demands, spent many hours with Class Counsel reviewing filings, records, and Defendants' documents, explaining his experiences working for Defendants, provided responses to numerous interrogatory requests, submitted multiple declarations in opposition to Duane Reade's motion to dismiss (ECF No. 66-8) and in support of Plaintiff's motion for collective certification (ECF No. 103), responded to inquiries from his colleagues, and assisted with this litigation in myriad other ways.  Pierre Decl. ¶¶ 3-42; Huot Decl. ¶¶ 5-30.  Plaintiff also participated in multiple deposition preparation sessions and then sat for ***two*** full-day depositions, where he provided critical testimony about his claims and the claims of the other Class Members.  Pierre Decl. ¶¶ 24-25.  Plaintiff then responded to extensive post-deposition discovery demands, including detailed information relating to his tax returns and his cell phone records.  Pierre Decl. ¶¶ 27-28.  Plaintiff assisted Class Counsel in preparing damage calculations and was instrumental in securing the Settlement on behalf of the Class.

*Id.* ¶¶ 29-42; Huot Decl. ¶ 30.

Next, Class Counsel are "qualified, experienced, and generally able to conduct the litigation." *Mayhew,* 2018 WL 3122059, at *5. Class Counsel have extensive experience representing employees against the nation's largest institutions and top defense firms and have served as lead counsel in numerous class and collective actions across the country. Huot Decl. ¶¶ 3-4. Some of Class Counsel's more recent public recoveries are detailed on pages 30-32, *infra* § IV(C)(iv). *Id.* ¶ 4.

When granting preliminary approval of this Settlement, this Court assessed Class Counsel's experience and their work in this matter and found that "Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and class action law." PA Order at 3. The Court went on to note that "[t]he work Class Counsel has performed both in litigating and settling this case demonstrates their skill and commitment to representing the Class's interests." *Id.*

Indeed, Class Counsel are well qualified to prosecute this action and have successfully done so, as evidenced by the firm successfully opposing Duane Reade's motion to dismiss (*see* ECF No. 72), successful motion for collective certification (ECF No. 184), engaging in extensive discovery and vigorous litigation of this case, and securing a favorable settlement with Defendants, which Plaintiff now seeks to be approved by this Court. Therefore, adequacy has been satisfied and the Court should appoint Faruqi & Faruqi, LLP as Class Counsel for final certification of the Class.

### F.    Superiority

In addition to imposing a predominance standard (*see supra* § II(C)), Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy." In assessing superiority, the Court must consider: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the

desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Rule 23(b)(3). Here, each of these factors weigh in favor of finding superiority.

First, the number of Officers who joined the litigation as opt-in plaintiffs (879 of the total potential 3,536 Officers) demonstrates that Class Members do not have a strong interest in conducting separate actions. *See* Huot Decl. ¶ 13. Second, despite this Action being well-known among Class Members, no similar actions have been filed by individual Officers. *Id.* ¶ 15. Accordingly, settlement on a class basis is superior to other available methods for the fair and efficient resolution of this Action. The alternative would be the potential filing of hundreds of individual actions, which is neither an effective means by which to accomplish justice, nor an economical use of the Court's or the Parties' time and resources. *See Elliot*, 2012 WL 6024572, at *2 (finding settlement in wage-and-hour case would conserve judicial resources and is more efficient for class members). Indeed, certification of the Class and a settlement of these claims against Defendants would avoid the possibility of conflicting determinations and the imposition of different and perhaps incompatible standards of conduct on Defendants.

Third, most of the Class Members, the City Defendants, and Duane Reade are all located in this District, so venue is appropriate. The PDP exists only within the confines of New York City—and largely in Manhattan—making the Southern District of New York the most sensible, convenient, and appropriate venue for this dispute and approval of this Settlement. *See* Complaint ¶¶ 1, 38.

Fourth, because this Action is being settled as to the claims against Duane Reade and the City Defendants involving work performed at Duane Reade locations in New York State, there will be no difficulties in managing this case as a class action. Moreover, the Parties have formulated a thorough and detailed procedure for the administration of the Settlement and have selected a competent

Settlement Administrator to assist with the same.  *See supra* at 2-5; Settlement Agreement § 2.

Class treatment will create uniform resolution of the issues and achieve judicial economy, convenience, and fairness to all Parties.  Accordingly, Plaintiff respectfully requests that the Court order final certification of the Class, for settlement purposes only, pursuant to Rule 23 in order to effectuate this Settlement.

## III.    APPROVAL OF THE SETTLEMENT IS APPROPRIATE UNDER THE FLSA

Given that the Settlement satisfies Rule 23, it is necessarily appropriate under the FLSA as well.  "Because 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement."  *Bryant v. Potbelly Sandwich Works, LLC*, No. 1:17-cv-07638 (CM) (HBP), 2020 WL 563804, at *2 (S.D.N.Y. Feb. 4, 2020) (quoting *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996(CM), 2014 WL 2199427, at *7 (S.D.N.Y. May 23, 2014).  For the reasons stated above, the Settlement between the Parties warrants approval under Rule 23.  As a result, approval of the Settlement under the FLSA is also warranted.

## IV.    PLAINTIFF'S FEE REQUEST SHOULD BE APPROVED

### A.    The Fee Request Is Reasonable

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of the Class.  The Settlement Agreement, which has been preliminarily approved by the Court, provides that Class Counsel may request attorneys' fees in the amount of $2,408,333.33 from the GSF.  *See* Settlement Agreement § 3.1(C).

The requested fees amount to one-third (1/3) of the GSF and are imminently reasonable, especially in light of the complex nature of this class action and the 100% contingency fee basis of Class Counsel's retention.  *See* Huot Decl. ¶ 52.  This percentage has been found to be reasonable

and within the typical range approved by courts in similar cases. *See Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *4 (S.D.N.Y. Jan. 29, 2014) (finding one-third award "consistent with the norms of class litigation in this circuit" and collecting cases where one-third was awarded in FLSA cases); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *7  (E.D.N.Y. Nov. 20, 2012) (to same effect and collecting cases); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382 (LGS), 2015 WL 4210906, at *3 (S.D.N.Y. July 9, 2015) (class counsel awarded fees of 33% of settlement fund); *Asare v. Change Grp. N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *21 (S.D.N.Y. Nov. 18, 2013) (citing FLSA cases).[8]

Here, the requested fees amount to the standard one-third of the GSF and should be approved.

**B.      The Court Should Use the Percentage Method to Evaluate this Fee Request**

There are two ways to determine appropriate compensation for attorneys for successful prosecution of wage and hour claims – the lodestar method and the percentage of the fund method. *Seekamp,* 2014 WL 7272960, at *3-4; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  The trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wal-Mart*, 396 F.3d at 121; *Sewell*, 2012 WL 1320124, at *10; *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836(RLE), 2013 WL 1803736, at *8 (S.D.N.Y. Apr. 29, 2013); *Flores*, 2014 WL 321831, at *8.

There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart*, 396 F.3d at 121; *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521,

---

[8] Courts have awarded fees greater than one-third as well.  *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-0018 (LEK/CFH), 2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014) (greater than 45%); *Frank*, 228 F.R.D. at 189 (40% of the fund); *Torres v. Gristede's Operating Corp.*, 519 Fed. Appx. 1, 5-6 (2d Cir. 2013) (implying 52% percentage award in wage and hour case would not have been abuse of discretion).

2008 WL 58938(DLC), at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335(WHP), 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez*, 2007 WL 7232783, at *7.

Second, the percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."); *In re Am. Bank Note Holographics*, *Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order."). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association. v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 522 F.3d 182, 191 (2d Cir. 2008). While *Arbor Hill* is not controlling since it does not address a common fund fee petition, it supports the use of the percentage of the fund method. *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *8 (S.D.N.Y. March 3, 2010); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

Third, the percentage of the fund method promotes early resolution, and removes the incentive for Plaintiff's lawyers to engage in wasteful litigation in order to increase their billable hours. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 121; *see also In re Ramp Corp.*, 2008 WL 58938, at *2 n.2; *In re Polaroid*, 2007

WL 2116398, at *2; *Velez*, 2007 WL 7232783, at *7.  The percentage method discourages lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *See Seekamp*, 2014 WL 7272960, at *5; *see also Savoie v. Merchs. Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527(DLC), 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Fourth, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *In re Interpublic,* 2004 WL 2397190, at *11 (quoting *Savoie*, 166 F.3d at 461 n.4).  The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits."  *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp*, 2008 WL 58938, at *2 n.2.  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously.  *Goldberger,* 209 F.3d at 50; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *cf. Fox v. Vice*, 563 U.S. 826, 838 (2011) (in context of a civil rights case, the goal of fee shifting is "rough justice," not auditing perfection and trial courts should not become "green-eyeshade accounts").

## C. The Requested Fee is Reasonable Under the Goldberger Factors

The Second Circuit has set forth six factors to apply when using the percentage method in a common fund case:

(1)  the time and labor expended by counsel;

(2)  the magnitude and complexities of the litigation;

(3)    the risk of the litigation;

(4)    the quality of representation;

(5)    the requested fee in relation to the settlement; and

(6)    public policy considerations.

*Goldberger*, 209 F.3d at 50.  *See Seekamp,* 2014 WL 7272960, at *4 (applying *Goldberger* factors). The *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### i.    The Time and Labor Expended by Counsel

Even though the use of the percentage method is appropriate here, the first *Goldberger* factor requires consideration of the lodestar.  Class Counsel has spent 4,766.5 hours litigating and resolving this case against Duane Reade.  *See* Huot Decl. ¶ 37.  Class Counsel relied on their customary hourly rates to calculate the lodestar, which are $600 to $700 for partners, $450 to $575 for associates, and $195 for paralegals.  *Id.* ¶¶ 39-49.  The resulting lodestar amounts to $2,765,895.  *Id.* ¶ 37.

Under the lodestar analysis, the requested fee award of $2,408,333.33 represents a ***negative*** multiplier of 0.87 times of Class Counsel's lodestar.  *Id.* ¶ 38.  Indeed, the requested fee award amounts to only 87% of the actual market value of the hourly work that Class Counsel has invested in bringing these claims to resolution.  *Id.*  As such, the requested attorneys' fees are reasonable.

The requested fee award will also compensate Class Counsel for the considerable time that will need to be spent administering the Settlement in the future.  *See Flores*, 2014 WL 321831, at *9 ("In wage and hour cases, Class Counsel are often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Johnson*, 2011 WL 4357376, at *15 (noting that future work covered in settlement award supports fee application).

Class Counsel has already responded to literally hundreds (well over 1,500) inquiries from

Class Members asking about the Settlement. Huot Decl. ¶¶ 35-36. In Class Counsel's experience, based on the thousands of Class Members, Class Counsel expects to respond to hundreds of additional such inquiries regarding the Settlement, requiring a substantial and ongoing commitment. *Id.*; *see also Beckman*, 2013 WL 1803736, at *14 ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund"); *McMahon*, 2010 WL 2399328, at *8 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (awarding a 1.55 multiplier in a wage and hour case and noting, "as class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time.").

### ii.    The Magnitude and Complexities of the Litigation

The magnitude and complexities of the litigation also support the fee request. The United States Supreme Court has stated that "FLSA claims typically involve complex mixed questions of fact and law . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). Of course, since *Barrentine* was decided, there has been another four decades of interpretation and regulation. In addition, among FLSA cases, the most complex type is the "hybrid" action, like this one, where state law claims are brought as well. *Johnson*, 2011 WL 4357376, at *17. Accordingly, this factor supports the fee request.

### iii.    The Risk of the Litigation

The risk of the litigation strongly favors the requested fee award.  At least one court, in evaluating the *Goldberger* factors, has called the risk of litigation "perhaps the foremost factor to be considered in determining [the] award [of appropriate attorneys' fees]."  *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005).

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk.  Huot Decl. ¶ 52; *see In re Glob.*, 225 F.R.D. at 467 (contingent nature of litigation is a key factor in determining reasonable attorneys' fees).  Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Any lawyer undertaking the representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *See Orme v. Burlington Coat Factory of Or., LLC,* No. CV 07-859-MO, 2010 WL 1838740, at *8 (D. Or. May 3, 2010) (finding that this factor favored fee application and noting "employment cases are undesirable to the bar due to their factual and legal complexity."); *Smith v. Voorhees Coll.*, No. 5:05-1911-RBH, 2008 WL 2627471, at *5 (D.S.C. June 27, 2008) ("Many attorneys consider employment cases to be undesirable due to the fact that they require special expertise and have many risks."); *Cabrera v. Rose Hill Asset Mgmt. Corp.*, No. 20 Civ. 2699 (AT), 2022 WL 3328086, at *3 (S.D.N.Y. July 5, 2022) ("A multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.").  Class Counsel stood to gain nothing in the event the case was unsuccessful.  In addition to hundreds of hours of attorney time, Class Counsel risked $106,865 in expenses.  Huot Decl. ¶ 55; *see, e.g., Perdue v. Kenny A.*, 559 U.S. 542, 543 (2010) (outlay of expenses supports fee award).

With respect to the case-specific risks, Plaintiff faced significant challenges on class certification, merits, and damages.  With respect to certification, Defendants would have undoubtedly moved for decertification of the FLSA Collective and would have vigorously opposed the certification of the Class.  On the merits, the major risk was that the finder of fact might conclude that the Officers were not employees of Duane Reade and therefore not entitled to protections under the wage and hour laws.  It is far from certain that a finder of fact would award Officers a greater amount than they are recovering in this Settlement.

Accordingly, the risks Class Counsel assumed in this litigation support the fee request.

### iv.    Quality of Representation

The "quality of representation" factor under *Goldberger* conflates the recovery obtained and the backgrounds of the lawyers in the case.  *Taft v. Ackermans*, No. 02 Civ. 7951(PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007).  The recovery for Officers is excellent.  Class Members will receive a remarkable 65.73% of their potential wage damages.  Given the risks of continued litigation, this is an outstanding result.

Moreover, Class Counsel has extensive experience representing employees in complex class action litigation and enjoys a very good reputation in the plaintiffs' and the legal community.  *See* Huot Decl. ¶¶ 3-4; 50.  Indeed, in its Order to preliminarily approve the Settlement, this Court explicitly held that "Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the Class's claims."  PA Order at 3.  The Court further held that "Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and class action law."  *Id.*  Finally, this Court concluded that "[t]he work Class Counsel has performed both in litigating and settling this case demonstrates their skill and commitment to representing the Class's interest."  *Id.*

Class Counsel has served as lead counsel in numerous class and collective actions across the

county.  Some of Class Counsel's more recent public recoveries include, *inter alia*: *Mazzochi, et al. v. Gold Medal Env't of NJ Inc.*, No. 1:24-cv-08046-CPO-SAK, ECF No. 56 (D.N.J. Sept. 18, 2025) ($4 million settlement on behalf of drivers for unpaid wages and overtime); *Almazo, et al. v. 44 Street F&B LLC d/b/a The Lambs Club, et al.*, No. 1:24-cv-00096-JPO (S.D.N.Y. July 28, 2025) ($1,200,000 class action settlement for unpaid minimum and overtime wages, as well as withheld gratuities on behalf of restaurant workers); *Dawn Hall, et al. v. City of N.Y.*, No. 22-CV-10193 (BCM), ECF No. 111 (S.D.N.Y. June 30, 2025) ($800,575.25 collective settlement for unpaid wages and overtime on behalf of construction project managers); *Pierre v. City of N.Y., et al.* (B&H Foto), No. 20-cv-05116-ALC, ECF No. 516 (S.D.N.Y. Nov. 15, 2024) ($650,000 class and collective action settlement of FLSA and NYLL claims); *Pierre v. City of N.Y., et al.* (TD Bank), No. 20-cv-05116-ALC, ECF No. 499 (S.D.N.Y. Oct. 15, 2024) ($8,930,186.41 class and collective action settlement of FLSA and NYLL claims); *Ruderman v. Law Office of Yuriy Prakhin, et al.*, 19-CV-2987-CBA-LB, ECF No. 220 (E.D.N.Y, Feb. 24, 2024) ($1,735,000, plus interest, jury verdict for the Plaintiff after a two-week trial against employer); *Conte, et al. v. Metro. Transp. Auth., et al.*, 21-cv-02516-VEC (S.D.N.Y. Sept. 14, 2023) ($2.9 million collective action settlement for late payment of wages and overtime); *Mercado, et al. v. Metro. Transp. Auth., et al.*, 20-cv-06533-AT (S.D.N.Y. July 5, 2023) ($7.25 million settlement on behalf of officers for late payment of wages and overtime); *Goins v. BB&T Sec., LLC*, et al., 1:20-cv-09891-PGG-JLC (S.D.N.Y. Jan. 6, 2022) ($500,000 settlement of FLSA, NYLL, NYCHRL, and NYSHRL claims); *Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18-cv-00026-VSB (S.D.N.Y. May 6, 2020) ($5.4 million settlement on behalf of sergeants and lieutenants for late payment of wages and overtime); *Hall v. J. Caiazzo Plumbing & Heating Corp. et al.*, 1:21-cv-05416-ENV-SJB (E.D.N.Y. Sept. 28, 2021) ($110,000 collective action settlement for wage and hour claims); *Molina, et al. v. Huaxcuaxtla Rest. Corp., et al*., 1:20-cv-02481-RWL

(S.D.N.Y. Feb. 25, 2021) ($160,000 collective action settlement of minimum wage and overtime claims); *Sanchez, et al. v. Stonehouse Rest LLC, et al.*, 1:18-cv-01397-ST (E.D.N.Y. Feb. 4, 2021) ($425,000 settlement for unpaid wages and overtime on behalf of restaurant workers); *Stubits v. Denville Line Painting, Inc.*, No. 2:18-cv-00649-CCC-MF (D.N.J. July 2, 2020) ($1,751,904.00 class action settlement of prevailing wage claims on behalf of line painters working on public roads); *Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*, 1:20-cv-00726-LB (E.D.N.Y. Dec. 23, 2020) ($135,000 settlement of FLSA and NYLL overtime claims); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, 702965/2013, NYSCEF Nos. 70 at 1-3; 80 (N.Y. Sup. Queens Cty. June 24, 2020) (approving a $550,000 class action settlement for unpaid wages and noting plaintiffs' counsels' substantial experience in wage and hour litigation and their skill and commitment to representing the settlement class's interests); *Reeves, et al. v. La Pecora Bianca, Inc, et al.*, 151153/2018 (N.Y. Sup. Ct., June 11, 2020) ($462,500 class action settlement for wage-and-hour claims); *Porrini v. McRizz, LLC, et al.*, 2:19-cv-03979(ARR)(RML) (E.D.N.Y. Aug. 16, 2022) ($260,000 settlement of minimum wage and overtime claims); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, 1:18-cv-00918-PKC-VMS (E.D.N.Y. May 8, 2019) ($700,000 class and collective settlement for unpaid wages and overtime); *Izzio, et al. v. Century Golf Partners Mgmt., L.P.*, 3:14-cv-03194-M (N.D. Tex. Feb. 13, 2019) ($1.425 million class and collective settlement for unpaid wages and overtime); *Griffin, et al. v. Aldi, Inc.*, 5:16-cv-354 (LEK/ATB) (N.D.N.Y. Nov. 15, 2018) ($9.8 million class and collective action settlement for unpaid wages and overtime); *Run Them Sweet, LLC v. CPA Glob. LTD, et al.*, 1:16-cv-1347-TSE-TCB (E.D. Va. Oct. 6, 2017) ($5.6 million class settlement); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, 6:15-cv-03519-BCW (W.D. Mo. July 7, 2017) ($51 million class settlement); *Strong, et al. v. Safe Auto Ins. Grp., Inc., et al.*, 2:16-cv-765 (S.D. Ohio Aug. 28, 2017) ($250,000 class action settlement for unpaid overtime and statutory damages).  Huot Decl. ¶ 4.

### v. The Fee in Relation to the Settlement

Class Counsel's fee request of one-third is the standard percentage fee typically awarded in this Circuit. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452(RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (a fee request of 33% is "consistent with the norms of class litigation in this circuit."); *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472(KBF)(DCF), 2013 WL 1209563, at *810 (S.D.N.Y. Mar. 21, 2013) (awarding 33% of a $7 million settlement in a FLSA and NYLL misclassification case); *Spicer v. Pier Sixty LLC,* No. 08 Civ.10240(PAE), 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) (awarding 33% fee in $8.5 million settlement; lodestar multiplier of 3.36 approved); *Davis,* 827 F. Supp. 2d at 178, 187 (awarding 33% fee in $42 million settlement; lodestar multiplier of 5.3 approved); *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour action); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381(ALC), 2010 WL 2025106, at *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and state wage and hour case); *Clark*, 2010 WL 1948198, at *8-9 (awarding 33% of $6 million settlement fund in FLSA and state wage and hour case).

### vi. Public Policy Considerations

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *McDaniel*, 595 F.3d at 417; *Wal-Mart*, 396 F.3d at 121; *Beckman*, 2013 WL 1803736, at *8. "The Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *Asare,* 2013 WL 6144764, at *22 (citing *In re Sumitomo*, 74 F. Supp. 2d at 399). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Id.* at *16; *see also Sewell*, 2012 WL 1320124, at *13 (same).

Importantly, the FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work"). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.").

In addition, courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *McMahon*, 2010 WL 2399328, at *7; *Khait*, 2010 WL 2025106, at *8. Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *deMunecas*, 2010 WL 3322580, at *8; *Sand v. Greenberg*, No. 08 Civ. 7840(PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

Public policy considerations therefore weigh strongly in favor of the fee request.

### D.    The Fee is Also Reasonable Under a Lodestar Analysis

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005). Here, the hours spent are multiplied by the hourly rates for partners, associates, and paralegals. In calculating the lodestar for cross check purposes, the

"hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.  Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . ."  *Id.*  Class Counsel spent 4,766.5 hours litigating and resolving this case against Duane Reade.  *See* Huot Decl. ¶ 37.  Here, Class Counsel's request for $2,408,333.33 of the Fund for fees represents only 87% of Class Counsel's lodestar – a ***negative*** multiplier of 0.87. *Id.* ¶ 38.  This is well within the range awarded by courts in this Circuit.

Indeed, courts in the Second Circuit regularly award lodestar multipliers from two to six times lodestar, and sometimes even greater than six times lodestar.  *See Beckman*, 2013 WL 1803736, at *13 ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."); *Johnson*, 2011 WL 4357376, at *20 ("Courts regularly award lodestar multipliers from two to six times lodestar" and collecting cases); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) ("[A] multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit."); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 0520(JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting fees equal to 6.8 times lodestar); *Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3 in wage and hour class action); *Maley*, 186 F. Supp. 2d at 371 ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *Little Mint, Inc.*, 2014 WL 2199427, at *16 ("In fact, the [1.9] multiplier is at the lower end of the range routinely granted by courts . . ."); *Cabrera*, 2022 WL 3328086, at *3 ("A multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.").  Here, Class Counsel requests fees that represent a ***negative*** multiplier to their lodestar.

Moreover, because "'class counsel will be required to spend significant additional time on this

litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower' because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 WL 1320124, at *13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010)).

## V.    <u>CLASS COUNSEL'S EXPENSES IN THIS CASE SHOULD BE REIMBURSED</u>

In total, Class Counsel incurred $106,865 in litigation expenses. The bulk of the expenses were filing fees, service fees, docket fees, postage fees, claims administration costs, data analysts/accounting fees, mediation fees, court reporting fees, deposition costs, ESI costs, and other discovery related costs. *See* Huot Decl. ¶¶ 55-56. All of these expenses were necessary to the litigation. Pursuant to the Settlement Agreement, Class Counsel agreed to cap their request for expense reimbursement at $100,000. *See* Settlement Agreement § 3.1(C). As such Class Counsel respectfully requests that the Court approve the parties' agreement to reimburse litigation expenses to Class Counsel in the amount of $100,000. Huot Decl. ¶ 57

## VI.    <u>SERVICE AWARDS ARE APPROPRIATE IN THIS CASE</u>

Class Counsel requests that the Court grant service awards to Service Award Recipients who took leadership roles in the litigation and contributed to the success of the case, for the time and effort they expended in furtherance of this Action and in securing the Settlement, including by being subject to extensive discovery and lengthy depositions. The requested awards are: $10,000 to Burbran Pierre, Luc Vaval, Angel Rivera, Jean Francois-Pierre, and Wendy Earls; $8,000 to Albert Piney; $7,000 to Ryan Loomis, Mostayen Faysal, and Kenneth Walls; and $3,000 to Kyna Phillip and Robinson Martinez. Defendants do not oppose this application. *See* Settlement Agreement §§ 1.39, 3.1(D).

"Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take. *Flores*, 2014 WL 321831, at *10 (citing *Massiah*, 2012 WL 5874655,

at *8).  In examining the reasonableness of a requested service award, courts consider: (1) the personal risk incurred by the recipients; (2) the time and effort expended by recipients in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights.  *Frank*, 228 F.R.D. at 187; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

First, the Service Award Recipients undertook significant risks to serve their fellow Officers. *See* Pierre Decl. ¶ 36; SAR Declarations ¶ 22.[9]   Service awards are especially important in employment cases, where employees have assumed risks of future retaliation and losing future employment opportunities: "Here, Class Representatives faced the risks that new employers would learn that they were class representatives in a lawsuit … and take adverse action against them. Moreover, each time they change jobs, they will risk retaliation in the hiring process."  *Asare*, 2013 WL 6144764, at *15; *see also Sewell*, 2012 WL 1320124, at *14 (recognizing that plaintiffs in a wage and hour case "fac[e] potential risks of being blacklisted as 'problem' employees"); *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 01029(CM), 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").  Service awards "provide an incentive to seek enforcement of the law despite these dangers."  *Parker*, 2010 WL 532960, at *1; *Henry*, 2014 WL 2199427, at *10 (when an individual assumes responsibility for prosecuting a wage and hour action, "[service] awards are singularly appropriate.").

Second, Service Award Recipients contributed a significant amount of time and effort to the case.  *See* Pierre Decl. ¶¶ 3-42; SAR Declarations ¶¶ 4-21.  Indeed, Service Award Recipients provided Class Counsel with detailed factual information regarding the PDP, their job duties,

---

[9] Declarations of Luc Vaval, Angel Rivera, Jean-Francois Pierre, Wendy Earls, Albert Piney, Ryan Loomis, Mostayen Faysal, Kenneth Walls, Kyna Phillip, and Robinson Martinez are together referred to as "SAR Declarations."

Defendants' policies, and other information relevant to the Class claims.  Pierre Decl. ¶¶ 3-8; SAR Declarations ¶¶ 4-8.  Service Award Recipients also provided Class Counsel with documents and assisted them in reviewing and analyzing records pertinent to the case.  *Id.*  Service Award Recipients responded to written discovery demands and also searched for and produced documents in response to Defendants' requests. Pierre Decl. ¶¶ 20-22; SAR Declarations ¶¶ 8-10.  Service Award Recipients spent many hours with Class Counsel reviewing filings, records, and Defendants' documents, explaining their experiences working for Defendants, responding to inquiries from their colleagues, and assisting with this litigation in myriad other ways, including by submitting declarations in opposition to Duane Reade's motion to dismiss and in support of Plaintiff's motion for collective certification.  Pierre Decl. ¶¶ 3-42; SAR Declarations ¶¶ 4-21; Huot Decl. ¶ 30.

Service Award Recipients participated in multiple deposition preparation sessions with Class Counsel and then sat for lengthy full day depositions (Plaintiff sat for ***two*** full-day depositions), where they provided extensive testimony about their claims and the claims of the other Class Members. Pierre Decl. ¶¶ 24-25; SAR Declarations ¶¶ 12-13.  After their depositions, Service Award Recipients each meticulously reviewed their voluminous deposition transcripts and made notations and corrections to the transcripts.  Pierre Decl. ¶ 26; SAR Declarations ¶ 14.  Service Award Recipients then responded to extensive post-deposition discovery demands, including detailed information about their tax returns and their cell phone records.  Pierre Decl. ¶¶ 27-28; SAR Declarations ¶¶ 15-16. Service Award Recipients regularly made themselves available to communicate with Class Counsel and to strategize about the litigation and subsequent settlement negotiations.  Pierre Decl. ¶¶ 3-42; SAR Declarations ¶¶ 4-21.  Service Award Recipients also assisted Class Counsel in preparing damage calculations and were instrumental in securing the Settlement on behalf of the Class.  *Id.*; Huot Decl. ¶ 30; *Parker*, 2010 WL 532960, at *1 (recognizing plaintiffs' efforts in meeting with

counsel, reviewing records, formulating case theories, identifying and locating other class members, and assisting in the investigation of the merits of the class claims); *Frank*, 228 F.R.D. at 187 (recognizing critical role plaintiffs play as "primary source[s] of information concerning the claims," including by responding to counsel's questions and reviewing documents).

Third, the Settlement has vindicated the statutory rights of the Officers under both the FLSA and the NYLL, which supports the request for the Service Awards.

The requested Service Awards of $10,000 to Burbran Pierre, Luc Vaval, Angel Rivera, Jean Francois-Pierre, and Wendy Earls; $8,000 to Albert Piney; $7,000 to Ryan Loomis, Mostayen Faysal, and Kenneth Walls; and $3,000 to Kyna Phillip and Robinson Martinez each range from 0.14% to 0.04% – and collectively add up to 1.18% – of the Settlement, which is far below what other courts have held to be a reasonable percentage. *See Reyes v. Altamarea Grp., LLC*, No. 10–CV–6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards representing approximately 16.6% of the settlement); *Parker*, 2010 WL 532960, at *2 (finding service awards of 11% of the settlement to be reasonable).

In absolute dollar terms, courts routinely approve service awards equal to or greater than the awards requested here. *See Sewell*, 2012 WL 1320124, at *15 (approving $15,000 and $10,000 service awards in FLSA case); *Reyes*, 2011 WL 4599822, at *9 ($15,000 award); *Khait*, 2010 WL 2025106, at *9 (awards of $15,000 and $10,000); *Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693 (HBP), 2017 WL 1155916, at *13 (S.D.N.Y. Mar. 27, 2017) ($15,000 award); *Martinek v. Amtrust Fin. Servs., Inc.*, No. 19 CIV. 8030 (KPF), 2022 WL 16960903, at *2-3 (S.D.N.Y. Nov. 16, 2022) ($15,000 award). Accordingly, the requested service awards are reasonable and should be approved.

## CONCLUSION

As such, Plaintiff respectfully requests that the Court grant final approval of the Settlement,

certify the Class, and approve attorneys' fees and costs as well as the requested service awards.

Dated: November 17, 2025  
      New York, New York

**FARUQI & FARUQI, LLP**

By: _/s/ Innessa M. Huot_  
    Innessa Melamed Huot

685 Third Avenue, 26th Floor  
New York, New York 10017  
Tel: 212-983-9330  
Fax: 212-983-9331  
ihuot@faruqilaw.com

*Attorneys for Plaintiff, the FLSA Collective, and the Proposed Class*